**WILLIAM D. MINER, OSB #043636**
billminer@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1300 S.W. Fifth Avenue, Suite 2300
Portland, Oregon 97201
Telephone: (503) 241-2300
Facsimile: (503) 778-5299

Attorneys for Plaintiff, Oregon LNG

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## AT PORTLAND

| | |
|---|---|
| **LNG DEVELOPMENT COMPANY, LLC d/b/a OREGON LNG,**<br><br>                **PLAINTIFF,**<br><br>v.<br><br>**PORT OF ASTORIA,**<br><br>                **DEFENDANT.** | Case No.<br><br>**COMPLAINT**<br><br>**Breach of Contract/Specific Performance, Damages, Declaratory Judgment, 28 U.S.C. §2201 and Injunctive Relief, 28 U.S.C. § 2202** |

For its Complaint, plaintiff LNG Development Company, LLC, doing business as Oregon LNG ("Plaintiff") alleges as follows:

### NATURE OF ACTION

1.

Plaintiff seeks declaratory and injunctive relief to require defendant Port of Astoria ("the Port") to renew a master lease with the Oregon Department of State Lands based on a sublease entered into between Plaintiff and the Port. Additionally, Plaintiff seeks consequential damages against the Port for breach of contract.

Page 1 - COMPLAINT
DWT 12923379v2 0083275-000006

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon 97201 · (503) 241-2300

C:\NRPORTBL\DWT\QUIRM\12923379_2.DOC
Portland

## THE PARTIES

2.

Plaintiff is a limited liability company duly organized and existing under the laws of Delaware with its principal place of business in Vancouver, Washington.

3.

The Port is an Oregon Port organized under the laws of Oregon and located in Astoria, Oregon.

4.

The Port is governed by a Board of Commissioners ("the Commissioners") elected by the public pursuant to ORS 777.005 *et. al.*

## BACKGROUND ALLEGATIONS

5.

On or about November 1, 2004, the Port entered into a lease agreement with the State of Oregon, acting by and through its Department of State Lands ("DSL"). A copy of the November 1, 2004 lease agreement between the Port and DSL is attached as Exhibit 1 to this Complaint and incorporated by this reference (hereinafter "Master Lease").

6.

Under the Master Lease, DSL leases to the Port certain land located in Clatsop County, Oregon and described in Exhibit A to the Master Lease ("the Premises").

7.

On or about November 5, 2004, the Port entered into a sublease agreement with Plaintiff's predecessor where the Port agreed to lease the Premises to Plaintiff's predecessor ("the Sublease"). The Sublease is attached as Exhibit 2 to this Complaint and incorporated by this reference.

8.

On or about January 24, 2007, the Sublease was assigned to Plaintiff.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon  97201 · (503) 241-2300

9.

The term of the Master Lease is for five (5) years.  Under the Master Lease, the Port has consecutive options to extend the Master Lease for two (2) additional terms of thirty (30) years; provided that the Port gives DSL notice, in writing, not less than 180 days before the expiration of the then-current term of the Master Lease.

10.

The term of the Sublease is also for five (5) years.  As with the Master Lease, under the Sublease, Plaintiff has consecutive options to extend the Sublease for two (2) additional terms of thirty (30) years each; provided that Plaintiff gives the Port notice, in writing, not less than 180 days before the expiration of the then-current term of the Sublease.

11.

Pursuant to the Sublease, on or about April 24, 2009, Plaintiff gave notice to the Port of its intention to extend the Sublease for the first thirty (30) year term.

12.

The Master Lease will expire on or about October 31, 2009.

13.

DSL and the Port have twice extended the time for the Port to deliver its notice of renewal to DSL of the Master Lease.  The first extension was no later than May 31, 2009.  The second extension is no later than August 31, 2009.

14.

DSL has indicated to Plaintiff that it will grant no further extensions.

15.

On or about May 28, 2009, the Port held a public hearing regarding the issue of extending the Master Lease.  After receiving public comment, the Port, through a vote of the Commissioners, voted to postpone its decision on whether or not to give notice to DSL to renew the Master Lease.

DWT 12923379v2 0083275-000006                                DAVIS WRIGHT TREMAINE LLP        C:\NRPORTBL\DWT\QUIRM\12923379_2.DOC
                                                                    1300 S.W. Fifth Avenue · Suite 2300                          Portland
                                                              Portland, Oregon  97201 · (503) 241-2300

16.

On or about July 21, 2009, the Port again voted to postpone its decision on whether or not to give notice to DSL to renew the Master Lease to August 18, 2009.

## JURISDICTION AND VENUE

17.

The amount in controversy in this matter exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states. Diversity jurisdiction therefore exists pursuant to 28 U.S.C. § 1332.

18.

A substantial part of the events or omissions giving rise to this claim occurred within Oregon, and venue is therefore appropriate in this court pursuant to 28 U.S.C. § 1391(a).

## FIRST CLAIM FOR RELIEF

(Breach of Contract – Specific Performance)

19.

Plaintiff incorporates by reference all preceding paragraphs.

20.

At all material times herein, Plaintiff has been ready, willing and able to continue with its obligations under the Sublease, and remains ready, willing and able to do so. Plaintiff has performed all conditions required to be performed under the Sublease.

21

The Port has breached the Sublease by failing to timely exercise its option to renew under the Master Lease, by requesting and receiving two extensions and by postponing the decision to August 18, 2009.

22.

Plaintiff has no adequate remedy at law.

/ / /

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon  97201 · (503) 241-2300

C:\NRPORTBL\DWT\QUIRM\12923379_2.DOC
Portland

23

Plaintiff is entitled to a decree of specific performance requiring the Port to exercise its option to renew under the Master Lease in order for the Port to meet its obligations under the Sublease.

## SECOND CLAIM FOR RELIEF

(Breach of Contract – Damages)

24.

Plaintiff incorporates by reference all preceding paragraphs.

25.

Paragraph 21.7 of the Sublease requires the Port to act reasonably and requires that the Port's approval or consent in execution of its duties under the Sublease shall not be unreasonably delayed.

26

The Port has breached the Sublease by failing to timely exercise its option to renew under the Master Lease, by requesting and receiving two extensions from DSL and by postponing the decision to August 18, 2009.

27.

As a result of the Port's breach, Plaintiff has been damaged in an amount to be proven at trial that exceeds $75,000. Such damages include consequential damages.

28.

Plaintiff reserves its right to amend its claim for direct damages in the event specific performance is not granted and the Port does not renew the Master Lease.

## THIRD CLAIM FOR RELIEF

(Declaratory Relief 28 U.S.C. §2201)

29.

Plaintiff incorporates by reference all preceding paragraphs.

DWT 12923379v2 0083275-000006

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon 97201 · (503) 241-2300

C:\NRPORTBL\DWT\QUIRM\12923379_2.DOC
Portland

30.

In accordance with 28 U.S.C. §2201, Plaintiff is entitled to a declaratory judgment that the Port has breached its obligations under the Sublease by failing to exercise its option to renew under the Master Lease.

## FOURTH CLAIM FOR RELIEF

(Injunctive Relief, 28 U.S.C. § 2202)

31

Plaintiff incorporates by reference all preceding paragraphs.

32.

Plaintiff is entitled to an injunction requiring the Port to exercise its option to renew under the Master Lease in order for the Port to meet its obligations under the Sublease.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Oregon LNG prays for judgment as follows:

1.    On its first claim for relief, for a decree of specific performance requiring the Port to exercise its option to renew under the Master Lease in order for the Port to meet its obligations under the Sublease;

2.    On its second claim for relief, for damages in an amount to be proven at trial but exceeding $75,000;

3.    On its third claim for relief, for a declaratory judgment that the Port is in breach of the Sublease by failing to exercise its option to renew under the Master Lease;

4.    On its fourth claim for relief, for an injunction requiring the Port to exercise its option to renew under the Master Lease in order for the Port to meet its obligations under the Sublease; and

/ / /

/ / /

/ / /

DWT 12923379v2 0083275-000006

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon  97201 · (503) 241-2300

C:\NRPORTBL\DWT\QUIRM\12923379_2.DOC
Portland

5.      For such other relief as the Court deems just and proper.

DATED this 22nd day of July, 2009.

**DAVIS WRIGHT TREMAINE LLP**

By _____
      WILLIAM D. MINER, OSB #04363
      Telephone:  503 241-2300
      Facsimile:  503 778-5477
      Email:  billminer@dwt.com

      Attorneys for Plaintiff

DWT 12923379v2 0083275-000006             DAVIS WRIGHT TREMAINE LLP        C:\NRPORTBL\DWT\QUIRM\12923379_2.DOC
                         1300 S.W. Fifth Avenue · Suite 2300                   Portland
                        Portland, Oregon  97201 · (503) 241-2300

# STATE OF OREGON
# DEPARTMENT OF STATE LANDS
# UPLAND LEASE AGREEMENT

## 26311-LE

THIS LEASE AGREEMENT (the "Lease") is made and executed as of the 1st day of November 2004, by and between the STATE OF OREGON, acting by and through its **Department of State Lands** ("Landlord"), and **Port of Astoria**, an Oregon Port ("Tenant").

## ARTICLE 1
## Definitions

**Anniversary Date** means the date which occurs annually each year during the Term of the Lease on the anniversary of the Commencement Date.

**Approved Sublease Form.** "Approved Sublease Form" means a sublease agreement in a form that is from time to time throughout the Term hereof provided by Landlord, to be used by Tenant in connection with subleasing all or any part of the Premises or space in the Improvements. There may be more than one Approved Sublease Form. Tenant may submit a tenant sublease form for approval by Landlord which approval shall not be unreasonably withheld.

**Approved Use.** "Approved Use" or "Approved Uses" means a use of the Premises described in Section 5.1 or to which Landlord has given written consent.

**Cancellation Notice.** "Cancellation Notice" means written confirmation of cancellation of the Lease.

**Commencement Date.** "Commencement Date" means the date as of which this Lease is made and executed.

**Construction Work.** "Construction Work" means any grading or excavating for, or the building or demolition of, an Improvement on the Premises performed by or for Tenant.

**Contractor.** "Contractor" means a licensed, bondable, reputable contractor selected by Tenant or any Subtenant in accordance with the terms of this Lease or an approved Sublease under Section 7.2.

**Design Professional.** "Design Professional" means a suitably qualified and experienced architect or engineer licensed to practice as such in the State of Oregon.

**Estoppel Certificate.** "Estoppel Certificate" means a statement from Landlord or Tenant certifying that this Lease is unmodified and in full force and effect without default, or, if there have been modifications or defaults, that this Lease is in full force and effect as modified or subject to such claims as are set forth in the statement. The statement shall also state the dates to which the rent and any other charges of general application by any public authority which shall

LEASE:  STATE OF OREGON TO PORT OF ASTORIA

Exhibit 1
Page 1 of 38
OLNG

during the Term of this Lease be assessed, levied, charged, confirmed or imposed by public authority upon or accrue or become due or payable on account of or become a lien on or against the Premises and Improvements or any portion thereof, and any interest in the Premises, including the fee estate or any leasehold estate, or any Improvements, personal property or other property in or on the Premises, during the Term of this Lease by any Governmental Authority having jurisdiction, whether belonging to or chargeable against, Tenant, Subtenant, Landlord, or a subsequent owner of the fee interest.

**Golf Course.** "Golf Course" means an 18 hole golf course and related golf course amenities such as pro shop, golf course maintenance facilities and driving range developed on the Premises.

**Governmental Authority.** "Governmental Authority" means any Federal, State or local jurisdiction that exercises authority over the Premises or the activities of Tenant.

**Hazardous Materials.** "Hazardous Materials" means any material regulated by federal or state environmental protection laws or any material that may pose a threat to human health or the environment, including without limitation, hazardous substances, pesticides, herbicides, or petroleum products.

**Impositions.** "Impositions" means all taxes, assessments, fees and other special or general charges assessed against the Land by a taxing body or regulatory authority.

**Improvements.** "Improvements" means all buildings, structures, fixtures, fences, interior roads, garages, parking lots, fountains, utility installations, excavations, surfacing, water banks or channels, landscaping, grading and plantings which are currently located on the Premises and, following completion, all Construction Work to be performed on the Premises by Tenant or at Tenant's direction or under Tenant's authority in accordance with this Lease, and applicable codes and ordinances.

**Institutional Lender.** "Institutional Lender" means a commercial provider of financing in the form of mortgages or loans secured by one or more deeds of trust.

**Insurance Trustee.** "Insurance Trustee" means a neutral third party appointed by Landlord and Tenant for the purpose of holding and disbursing insurance proceeds following a casualty loss.

**Land.** "Land" means the Landlord-owned real property situated in the County of Clatsop, State of Oregon, more particularly described in Exhibit A, attached hereto, that is the subject of the Lease, and all real property added thereto pursuant to an approved fill permit obtained by Tenant or its subtenants.

**Landlord.** "Landlord" means the State of Oregon, acting by and through its Department of State Lands, or its successors and assigns.

**Late Payment Rate.** The "Late Payment Rate" means the maximum rate of interest permitted by applicable law after a default, such rate not to exceed nine (9) percent annually.

LEASE: STATE OF OREGON TO PORT OF ASTORIA

Exhibit 1
Page 2 of 38
OLNG

**Lease.** "Lease" means this Lease Agreement together with all Exhibits attached hereto. This Lease is subject to:

    a) all applicable state and federal statutes, rules, and regulations in effect on the Commencement Date of this Lease, and insofar as is constitutionally permissible, and

    b) all statutes, rules, and regulations which become effective after the Commencement Date of this Lease.

**Lease Year.** "Lease Year" means a year of 365 days (366 days in a leap year) commencing on the Commencement Date and each subsequent Anniversary Date.

**Leasehold Mortgage.** "Leasehold Mortgage" means any mortgage, deed of trust, or other security instrument encumbering Tenant's leasehold estate created hereby and which is in favor of an Institutional Lender.

**Leasehold Mortgagee.** "Leasehold Mortgagee" means the holder, trustee or beneficiary of a Leasehold Mortgage who is an Institutional Lender.

**Master Development Plan.** "Master Development Plan" means the plan developed by Tenant for construction of a Golf Course and Marine Industrial Facilities on the Premises, as described in Section 5.2 below.

**Marine Industrial Purposes.** "Marine Industrial Purposes" means the construction and operation of a liquified natural gas (LNG) importing, shipping, berthing, storage, and regasification facility.

**Marine Industrial Facilities.** "Marine Industrial Facilities" means those facilities and structures associated with Marine Industrial Purposes.

**Person.** "Person" means any entity, whether an individual, trustee, corporation, partnership, trust, unincorporated organization or otherwise.

**Premises.** "Premises" means Tenant's leasehold interest in the Land and any Improvements situated thereon.

**Rent.** "Rent" means the annual payment specified in Sections 4.1 and 4.2 that is due from Tenant in consideration for the possession and use of the Premises.

**Sublease.** "Sublease" means a subsidiary lease from Tenant to a Subtenant, approved by the Landlord, of all or any portion of the Premises or the Improvements in which the interest so transferred is less than Tenant's entire interest hereunder.

**Subtenant.** "Subtenant" means any person or entity occupying space in the Premises under a Sublease approved by the Landlord.

**Tenant.** "Tenant" means Port of Astoria, an Oregon Port and Tenant's successors and assigns hereunder.

LEASE: STATE OF OREGON TO PORT OF ASTORIA

**Term.** "Term" means the period of time during which the Lease shall be in effect, as described in Sections 3.1 and 3.2 hereof.

**Unavoidable Delay.** "Unavoidable Delay" means delay due to strikes, lockouts, acts of God, unavailability of labor or material, embargoes, war, enemy action, civil commotion, fire, windstorm, flood, explosion, earthquake, unavoidable casualties, building or use moratorium imposed by applicable Governmental Authority, activities necessary to remediate any environmental condition of the Premises not caused by Tenant, or other similar causes beyond the reasonable control of Tenant, including any delay caused by the act or omission of Landlord.

**Utilities.** "Utilities" means all services and public utilities delivered to, provided for, or consumed on the Premises, including, without limitation, such services as janitorial and garbage pick-up and such utilities as natural and propane gas, water, sewer, storm sewer, electricity, cable television, and telephone and telefacsimile services.

**Work.** "Work" means all construction work, development and improvements to the Premises to be performed by or on behalf of Tenant or Subtenant.

## ARTICLE 2
## Lease of the Premises

2.1    **Demise.** Landlord hereby leases to Tenant and Tenant hereby hires from Landlord, the Premises located at Township 8 North, Range 10 West, Section 14, Clatsop County, Oregon more particularly described in Exhibit A.
    PROVIDED, HOWEVER, that the Premises shall at all times during the Term of this Lease be subject to the rights of Landlord and to the limitations on uses set out in this Lease. Landlord also specifically reserves the right to use all access roads and easements serving Landlord's adjacent real property, and to use the Premises as necessary to access such real property that is not subject to this Lease.

2.2    **Sale of Premises.** Landlord reserves the right to sell Landlord's Fee Interest in all or any part of the Land at any time during the term of this Lease. Any such sale or sales of the Land shall be made subject to Tenant's rights under this Lease.

2.3    **Encumbrances; Reservation of Rights.** This Lease is subject to the following matters to the extent that they affect the Premises:
        a)  Any lien, charge, claim or other encumbrance whether of record or not, to the extent valid and subsisting and affecting the Premises;
        b)  The effect of all present building restrictions and regulations and present and future zoning laws, ordinances, resolutions and regulations and all present ordinances, regulations and orders of all boards, bureaus, commissions and bodies and any county, state or federal agency, now having, or hereafter having acquired, jurisdiction of the Premises and the use and improvement thereof, including, but not limited to, the Clatsop County Comprehensive Plan and Revised Code (including Zoning Ordinance);
        c)  The condition of the Premises on the Commencement Date;

LEASE:  STATE OF OREGON TO PORT OF ASTORIA

Exhibit 1
Page 4 of 38
OLNG

d) All taxes (including local improvement rates), duties, assessments, special assessments, water charges and sewer rents and any other Impositions, accrued or unaccrued, fixed or not fixed;

e) Any facts and any current violations of law, ordinances, orders or requirements that might be disclosed by an accurate physical survey, or an examination and physical inspection or search of the Premises by any Governmental Authorities, as the same may exist on the Commencement Date; and

f) Landlord's reserved right to locate, construct, install, and maintain sewers, utility lines, dredge pipes, transit tubes, telecommunications lines, and similar installations or facilities in, on, under, over or across the Premises, and, further, Landlord's right to grant to third parties, rights of way, easements, or other rights to come on, move under, over, or across, gain access to, or otherwise use the Premises during the term of this Lease provided, that said Landlord's reserved right shall not unreasonably interfere with the right of quiet enjoyment of the Tenant and any Subtenant, and that Landlord shall provide reasonable prior notice in the event Landlord intends to exercise said reserved right.

2.4     **Tenant's Waiver of Claims and Indemnification.**

a) Tenant hereby acknowledges that it has had the opportunity to undertake all inspections and investigations of the Premises as it deems necessary; has requested of Landlord, and has reviewed, all reports, studies and investigations of the Premises as it deems necessary, and has otherwise undertaken such due diligence as it deems appropriate with respect to the Premises. Tenant acknowledges that it is leasing and accepts the Premises and the Improvements on an "As Is" and "Where Is" basis. Tenant acknowledges and agrees that Landlord has not made nor is Tenant relying upon any representations or warranties made with respect to the Premises, including but not limited to, the condition of the Premises, the use(s) to which the Premises may be put or for which the Premises may be developed.

b) Tenant hereby releases and waives claims against Landlord, its officers, public officials, employees, agents or contractors for injury or damage to person, property, or business sustained in or about the Premises by Tenant, its agents, employees, invitees, customers, Subtenants or other occupants or users of the premises, which injury or damage results from any act, neglect, occurrence, or condition (including pre-existing conditions) in or about any Improvement or the Premises, unless such damage is caused by Landlord, its officers, public officials, employees, agents or contractors.

c) Tenant shall defend, indemnify and hold Landlord and Landlord's Fee Interest under this Lease free and harmless from and against any and all liability, claims, loss, damages, penalties, fines, causes of action and expenses resulting from Tenant's occupation and use of the Premises prior to or during or after the Term of this Lease, and from the use and occupancy of the Premises by any Person on or after the Commencement Date, specifically including, without limitation, any liability, claim, loss, damage, penalties, fines, causes of action and expense incurred or suffered by Landlord and arising by reason of:

i.      The death or injury of any person, including any person who is an officer, employee, or agent of Tenant, by reason of the condition of the Premises, damage to or destruction of any property, including property owned by Tenant or by any Person who is an employee or agent of Tenant, from any cause whatsoever (other than any act or omission of Landlord, its officers,

Exhibit 1
Page 5 of 38
OLNG

employees, or agents) while such person or property is in or on the Premises or any of the Improvements;

    ii.  Tenant's failure to perform any provision of the Lease or, subject to any rights to contest provided Tenant herein, to comply with any requirement of law or any requirement imposed on Tenant in connection with the Improvements thereon, or the Premises, by any duly authorized governmental agency or political subdivision; or

    iii.  Any occurrences for which Tenant's waiver set out in Section 2.4(b) applies.

    2.5    **Landlord's Waiver of Claims.**  Landlord hereby waives and releases Tenant, its officers, employees, agents or contractors from any and all liability, claims and damages of any type or kind that are caused by or are the proximate result of the acts or omissions of Landlord, its officers, employees or agents, except to the extent that the liability, claims or damages are related to or arise out of activities or omissions by Tenant, its agents, employees, contractors, or Subtenants.

## ARTICLE 3
## Term

    3.1    **Term.**  The Term of this Lease shall commence on the Commencement Date and shall expire on the **Fifth (5)** Anniversary Date of the Commencement Date.

    3.2    **Options to Renew Lease.**  Tenant shall have consecutive options to extend the Lease for **two (2)** additional Terms of **thirty (30)** years each, provided that at the time the option is exercised Tenant is a tenant in good standing and is not in material default of the Lease. Each option shall be exercised by Tenant by providing notice to Landlord in writing not less than 180 days before the expiration of the then-current Term of the Lease.

## ARTICLE 4
## Rent

    4.1    **Payment of Annual Rent.**  Commencing on the Commencement Date and on each Anniversary Date thereafter, except as may otherwise be provided herein, Tenant shall pay to Landlord Annual Rent in advance for the twelve month period then beginning, without any abatement or deduction, but with an offset for mutually agreed upon cost of initial land appraisal and survey to determine Fair Market Value. The annual Rent for the first five (5) years of the Lease, shall be $38,400 per year. Rent thereafter shall be determined as provided in Section 4.2 below.

    4.2    **Rent Redetermination.**  On each fifth (5th) year anniversary of the Commencement Date the Annual Rent shall be adjusted based on the then current fair market value of the bare Land as determined by the parties' agreement and if no such agreement can be reached then by a State certified appraiser selected by Tenant and approved by Landlord. Selection of an appraiser shall occur not later than six (6) months prior to the end of each five (5) year anniversary of the Commencement Date of this Lease. If the Tenant and Landlord cannot

LEASE:  STATE OF OREGON TO PORT OF ASTORIA

agree on the selection within three (3) months prior to the expiration of each five (5) year anniversary, Landlord shall select a qualified and certified appraiser to conduct the appraisal. In any event, the costs of the appraisal shall be shared equally by Tenant and Landlord.

4.3    **Payment Bond.**  To ensure payment of all Rent due under the Lease, Tenant shall furnish to Landlord, prior to the Commencement Date, a bond, security instrument or secured account in an amount of not less than $38,400, which bond (or other instrument or account) shall be conditioned upon the prompt and faithful payment of all sums due under the Lease.  Any such bond or instrument shall be issued by a surety reasonably acceptable to Landlord and shall be renewed annually during the Term of the Lease.

4.4    **Place for Payment of Rent.**  All Annual Rent due and payable under this Lease shall be paid to Landlord at the Department of State Lands, 775 Summer Street NE, Suite 100, Salem, OR 97301-1279, Attention: Accounting Unit, or such other place as Landlord may from time to time designate by written notice given to Tenant.

4.5    **No Partnership and No Principal-Agent Relationship.**  Nothing in this Lease shall be construed to render Landlord in any way or for any purpose a partner, joint venturer, or associate in any relationship with Tenant other than that of Landlord and Tenant, nor shall the Lease be construed to authorize either to act as agent for the other except as expressly provided to the contrary herein. Further, Tenant is not an "officer," "employee," or "agent" of Landlord, as those terms are used in ORS 30.265.

4.6    **Rental Increase Due to Fill Permit.**   In the event that Tenant or its Subtenats apply for and obtain the right to add fill to the Land thereby creating additional acreage, Landlord agrees to rent such acreage to Tenant and Tenant's rent shall be increased proportionally based on the proportional increase in the size of the Land resulting from such fill.

## ARTICLE 5
## Uses of the Premises

5.1    **Approved Uses.**  The Premises shall be improved, used and maintained by Tenant for the construction and development of the Golf Course and Marine Industrial Facilities and for no other purpose.  Use and development of the Premises shall be stated in the "Memorandum of Lease" between Tenant and Landlord attached hereto and made a part of this Lease as Exhibit B.  In the event of conflict between the "Memorandum of Lease" and the Lease, the Lease shall be the controlling document.
     Tenant shall ensure that its use of the Premises complies at all times during the Term with all applicable laws and regulations, including but not limited to all building restrictions and regulations and zoning laws, ordinances, resolutions and regulations and all ordinances, regulations and orders of all boards, bureaus, commissions and bodies and any county, state or federal agency, now having, or hereafter having acquired, jurisdiction of the Premises and the use and improvement thereof.

5.2    **Master Development Plan for Golf Course and Marine Industrial Purposes.**
Within two (2) years after the Commencement Date and prior to any Construction Work Tenant will develop and submit to Landlord for Landlord's approval a Master Development Plan to govern Tenant's construction and development of the Golf Course and Marine Industrial Facilites

LEASE:  STATE OF OREGON TO PORT OF ASTORIA

Exhibit 1
Page 7 of 38
OLNG

on the Premises. Tenant shall make no material change in the Master Development Plan without the prior written consent of Landlord. Tenant shall comply at all times with the Master Development Plan, and failure to comply with the terms and conditions of the Plan will be a material breach of the Lease.

5.3 **No Impairment of Reversionary Rights.** Tenant shall not suffer or permit the Premises, or any portion thereof, to be used by the public, as such, in a manner which would permit a claim or claims of:

    a) adverse usage or adverse possession by the public, as such, or

    b) implied dedication of the Premises or any portion thereof to the public, as such. Any easements, dedications or other similar rights or obligations created or granted by Tenant shall affect only Tenant's leasehold estate in the Premises and shall not encumber or affect the Landlord's Fee Interest without Landlord's prior written consent.

5.4 **No Use in Violation of Law; No Dangerous Conditions or Nuisance.** Tenant will not use or allow the Premises or any part thereof to be used or occupied for any purpose other than the use authorized in Section 5.1 or, notwithstanding Section 5.1, for any unlawful purpose or in violation of any certificate of occupancy or certificate of compliance covering or affecting the Premises, or any part thereof, and Tenant will not suffer any dangerous condition to exist on the Premises or any part thereof unless appropriately safeguarded, and Tenant will not do or suffer to be done any act on the Premises which, in law, constitutes a nuisance, public or private, or which may make void or voidable any insurance then in force with respect thereto. Tenant shall not be deemed to be in violation of the terms and provisions of this Section 5.4 as the result of acts or omissions of a Subtenant so long as Tenant is proceeding in good faith and with due diligence to correct or remedy such acts or omissions or to terminate the defaulting Subtenant's Sublease and regain possession of the Subtenant's premises.

## ARTICLE 6
## Taxes and Utilities

6.1 **Payment of Impositions.** In addition to the annual Rent required to be paid under this Lease, Tenant shall pay or cause to be paid, and Tenant hereby agrees to pay, Tenant's share of all Impositions falling due or applicable during the Term of the Lease and any extended Term, if applicable. Tenant's share shall be a prorated share of any such Impositions equal to the ratio of the amount of land Tenant leases to the total leaseable land owned by Landlord. Any and all Impositions and installments of Impositions required to be paid by Tenant under this Lease shall be paid by Tenant before each such Imposition or installment becomes delinquent and a true and correct copy of the official receipt for the payment of such Impositions shall be delivered to Landlord within fifteen (15) calendar days after the date such Impositions would be delinquent as provided by law. The payment of Impositions and all other sums required to be paid by Tenant under this Lease shall constitute additional rent.

6.2 **Change in Method of Taxation.** If at any time during the Term the methods of taxation in effect on the Commencement Date shall be altered so that the whole or any part of the Impositions commonly considered as real estate taxes now levied, assessed or imposed on real estate and the improvements thereon shall be discontinued and as a substitute therefor, or in addition thereto, taxes on the rent derived from the Premises shall be imposed upon Landlord

LEASE: STATE OF OREGON TO PORT OF ASTORIA

26311-LE
PAGE 8 OF 37

Exhibit 1
Page 8 of 38
OLNG

and the purpose of the new tax is more closely akin to that of an ad valorem or use tax than to an income or franchise tax on Landlord's income, then all such substitute taxes, assessments, levies, impositions or charges, to the extent that they are so measured or based, shall be deemed to be included within the term "Impositions" for the purposes hereof, to the extent that such substitute taxes would be payable if the Premises were the only property of Landlord subject to such tax. Tenant shall pay and discharge the substitute tax or additional tax, as the case may be, upon receipt from Landlord of a statement setting forth in reasonable detail the basis on which the substitute tax constitutes an "Imposition" hereunder and the calculation of the amount due.

6.3    **Impositions Payable in Installments.** If, by law, any Imposition levied on or assessed against the Premises, and/or Tenant's interest therein, may, at the option of the taxpayer, be paid in installments, then Tenant shall have the option of paying such Imposition or special or general assessment in installments as the same become due. The fact that the exercise of the option to pay the Imposition or assessment in installments will cause interest to accrue on the Imposition or assessment is immaterial and shall not interfere with the free exercise of the option by Tenant. Landlord shall cooperate with Tenant and on written request of Tenant execute or join with Tenant in executing any instruments required to permit any such tax or special or general assessment to be paid in installments.

6.4    **Impounds.** At any time during the Term hereof, if an Event of Default of a nature or kind that has previously occurred and been cured, reoccurs, Landlord, at Landlord's option, shall have the right to require Tenant to deposit monthly with a commercial banking institution selected by Landlord (the Depository), to be held in a separate account (the Deposit Account), bearing interest at rates then prevailing for such type account:

a)  one-twelfth (1/12th) of the annual Impositions, and insurance premiums required hereunder, and

b)  an additional sum which when added to the monthly deposits thereafter to be made will be sufficient to pay such Impositions and insurance premiums when they become due. The agreement with the Depository establishing the Deposit Account shall provide that checks drawn thereon may be signed by either a representative of Landlord or a representative of Tenant if drawn to the order of the Governmental Authority to whom Impositions are payable or to the broker or insurer to whom insurance premiums are payable, and that checks drawn thereon shall be signed by a representative of Landlord and a representative of Tenant if drawn to the order of any other person or entity.

In the event that the amount of Impositions or insurance premiums shall not have been fixed at the time when any such monthly deposit is required to be made, Tenant shall make such deposit based upon the amount of the Impositions levied or assessed and the amount of insurance premiums paid for the immediately preceding calendar year, subject to adjustment as and when the amount of such Impositions and insurance premiums are ascertained. All sums deposited in the Deposit Account shall be applied to the payment of Impositions and insurance premiums in the months during which such Impositions become due and payable each year. The interest earned on the Deposit Account shall be credited against the next monthly deposit installment coming due. All costs and expenses of the Depository in maintaining the Deposit Account shall be paid by Tenant.

Nothing herein contained shall relieve or release Tenant from the absolute obligation to pay directly to the tax officials or authorities all Impositions when due, in the event Tenant shall

LEASE: STATE OF OREGON TO PORT OF ASTORIA

Exhibit 1
Page 9 of 38
OLNG

fail to furnish Landlord with the bills, and deposits, if any, required to be furnished pursuant to the foregoing.

6.5    **Right to Contest Impositions.**  Tenant shall have the right to contest, oppose, or object to the amount or validity of any Imposition levied on or assessed against the Premises, Improvements, and/or Tenant's interest therein, or any part thereof.  Tenant shall give written notice of the contest, opposition, or objection to Landlord within a reasonable time prior to the time such contest is filed.  Unless Landlord's joinder is required as a jurisdictional matter or by any law, rule or regulation in order to make such action or proceeding effective (and in such event Landlord shall join solely for the purpose of allowing Tenant to proceed with its contest and Tenant shall pay the costs incurred by Landlord in connection with such joinder; provided, however, no such joinder shall preclude Landlord from supporting any valuation of the Premises made for the purposes of assessing taxes thereon which valuation Tenant has elected to contest), Landlord shall not be required to join in or cooperate in any such contest, opposition or objection, nor shall Landlord be required to expend any monies in this connection, nor shall Landlord be liable for any costs or expenses incurred or awarded in the proceeding.  Further, no such contest, opposition, or objection shall be commenced, continued or maintained after the date on which the Imposition, assessment, or other charge being contested becomes delinquent unless Tenant has either:

    a)  Paid such Imposition, or other charge under protest prior to delinquency; or
    b)  Obtained and maintained a stay of all proceedings for enforcement and collection of the tax, assessment, or other charge by posting such bond or other security required by law for such a stay; or
    c)  Delivered to Landlord good and sufficient security in an amount specified by Landlord for the payment by Tenant of the Imposition, assessment, or charge together with the amount of any fines, interest, penalties, costs, and expenses that may have accrued or been imposed thereon in connection with Tenant's contest, opposition, or objection to such Imposition, or other charge. Any rebate or refund of Impositions by reason of such contest shall be paid to Tenant.

6.6    **Tax Returns and Statements.**  Tenant shall, as between Landlord and Tenant, have the duty of preparing, making, and filing any statement, return, report, or other instrument required or permitted by law in connection with the determination, equalization, reduction, or payment of any taxes, special or general assessments, or other charges that are or may be levied on or assessed against the Premises, any portion of the Premises, any interest in the Premises, any Improvements or other property on the Premises.

6.7    **Tax Indemnification and Hold Harmless Clause.**  Tenant shall indemnify and hold Landlord and the Premises free and harmless from any liability, loss, cost or expense incurred by Landlord as a result of Tenant's failure to pay the Impositions or other charges as required by this Lease to be paid by Tenant and from all interest, penalties, and other sums imposed thereon and from any sale or other proceeding to enforce collection of the Impositions or other charges.

6.8    **Utilities.**  Tenant shall pay or cause to be paid and hold Landlord and the Premises, free and harmless from all charges for the furnishing of Utilities to the Premises and Improvements during the Term of the Lease and for the removal of garbage and rubbish from the Premises and Improvements during the Term of the Lease.

LEASE:  STATE OF OREGON TO PORT OF ASTORIA

Exhibit 1
Page 10 of 38
OLNG

6.9    **Payment by Landlord.**  Should Tenant fail to pay within the time specified in this Lease any Impositions, charges for Utilities or other charges required by this Lease to be paid by Tenant, or should Tenant fail to commence to contest such taxes, assessments, or other charges pursuant to this Article 6 hereof, then Landlord may, after prior written notice to Tenant and all Leasehold Mortgagees advising Tenant of its intention to do so (except that no prior written notice shall be required if an emergency exists or if, during the time required to give such notice, additional penalties would be incurred), pay, discharge, or adjust such Impositions, Utilities or other charges for the benefit of Tenant. In such event, Tenant shall promptly on written demand of Landlord reimburse Landlord for the full amount paid by Landlord in discharging or adjusting such tax, assessment, Utilities or other charge together with interest thereon at the Late Payment Rate from the date of payment by Landlord until the date of repayment by Tenant. Where no time within which any charge required by the Lease to be paid by Tenant is specified in this Lease, such charge must be paid by Tenant before it becomes delinquent.

# ARTICLE 7
## Construction

7.1    **Conditions to Construction.**  Prior to commencement of any Construction Work, including excavation work, for the Golf Course or Marine Industrial Facilities or any other Improvements started after the Commencement Date of the Lease, and before any building materials have been delivered to the Premises by Tenant or under Tenant's direction or authority, Tenant shall comply with all the following conditions or obtain Landlord's written waiver of the condition or conditions specified in the waiver:

a)    **Preliminary Plans.**  Tenant shall deliver to Landlord for Landlord's reasonable approval, which approval will not unreasonably or in an untimely manner be withheld, one (1) set of preliminary construction plans and specifications (Preliminary Plans) at least sixty (60) calendar days prior to the proposed date for commencing the Construction Work.

The Preliminary Plans shall be prepared by a design professional or engineer licensed to practice as such in Oregon. The Preliminary Plans shall include, as applicable, preliminary grading and drainage plans, plant layouts, visual simulations, preliminary foundation designs, soil tests, utilities, sewer and service connections, locations of ingress and egress to and from public thoroughfares and the curbs, gutters, street lighting, storage areas, plazas, public areas and landscaping.

b)    **Final Plans.**  Upon approval of Landlord, which approval shall not be unreasonably withheld, the Preliminary Plans shall be used as the basis for Tenant's "Final Plans," copies of which will be provided to Landlord. Tenant shall consider in good faith any comments Landlord may have on such Final Plans prior to submitting such plans to any governmental agency.

c)    **Building Permit.**  Tenant shall, at its own cost and expense:
　　　i.    cause the Final Plans, or such appropriate parts thereof as may be necessary, to be filed with the appropriate governmental agencies ("Building Department"); and
　　　ii.    as a condition to commencing any phase of construction for which a permit is necessary, obtain such permits.

LEASE: STATE OF OREGON TO PORT OF ASTORIA

Promptly after issuance, a copy of each permit shall be delivered to Landlord. After such permit or permits are issued based upon the plans previously approved by Landlord, Tenant shall, at Tenant's sole cost and expense, proceed with diligence and continuity to carry out the Construction Work in accordance with the Final Plans and the requirements of all applicable governmental agencies. Landlord agrees, if requested by Tenant, to join in any request for authorization or application in connection with Tenant's performance of the Construction Work on the Premises or conducting business thereon at no cost to Landlord. Tenant may deliver working drawings and plans to any governmental body, or Institutional Lender, in connection with its application for a building permit or other permits provided that the same are first delivered to Landlord for approval as herein provided.

    7.2   **Contractor.** All Construction Work shall be performed by licensed, bondable, reputable Contractors registered with the Construction Contractors Board as required in ORS Chapter 701.

    7.3   **Compliance With Law and Quality.** The Construction Work shall be performed in accordance with all statutes, ordinances, regulations, and orders of all federal, state, county, or local governmental agencies or entities having jurisdiction over Construction Work, the Premises, and the Improvements. All Construction Work performed on the Premises pursuant to this Lease, or authorized by this Lease, shall be done in a good and workmanlike manner, and only with materials of good and durable quality.

    7.4   **Completion.** Tenant shall cause all Construction Work to be diligently pursued without unnecessary interruption.

    7.5   **Inspection.** Landlord shall have the right, but not the obligation, to inspect the Premises in relation to the Construction Work at all reasonable times during normal business hours, upon reasonable prior notice to Tenant. Landlord's inspections shall not unreasonably interfere with the progress of such Construction Work. This Section shall in no way control any right of governmental inspection necessary and permitted under applicable codes and ordinances.

    7.6   **Tenant's Construction Indemnity.** Tenant hereby assumes entire responsibility and liability for any and all damages or injury of any kind or nature whatever to all persons, whether employees or otherwise, and to all property, arising from the performance of the Construction Work whether on the Premises, on adjacent property or on surrounding or nearby public streets, and shall defend, indemnify and hold harmless Landlord, and its officers, employees, and agents from and against any and all loss, costs and expenses, including reasonable attorneys, fees, damages or injury, incurred or suffered by Landlord and arising from, relating to, or occurring in connection with the Construction Work, excluding any gross negligence or willful misconduct of Landlord or Landlord's officers, employees, or agents.

    7.7   **Construction by Subtenants.** Tenant agrees that in the event it elects to allow a Subtenant to perform any Construction Work on the Premises, the provisions of this Article 7 will be included in the Sublease and the Construction Work shall comply with this Article. Further, Tenant shall remain fully liable and responsible for Completion of the Construction Work in compliance with all the provisions of this Lease.

LEASE: STATE OF OREGON TO PORT OF ASTORIA

Exhibit 1
Page 12 of 38

## ARTICLE 8
## Liens and Mortgages

8.1    **No Liens Permitted On Reversion.** Tenant will not create or permit to be created by its acts or omissions or the acts or omissions of its Subtenants, contractors or subcontractors or to remain, and will discharge, any lien, encumbrance or charge which might be or become a lien, charge, or encumbrance on the fee interest of Landlord or any part thereof and will also discharge any lien levied on account of any Imposition or any mechanic's, laborer's or materialman's lien, mortgage, conditional sale, title retention agreement, security agreement or otherwise which might be or become a lien, encumbrance or charge upon the fee interest of Landlord or any part thereof and which has any priority or preference over or ranks on a parity with the estate, rights and interest of Landlord in the Land or any part thereof; provided, however, nothing herein shall require payment by Tenant of any lien or encumbrance on the Premises created by Landlord's acts or omissions or which is imposed upon Landlord by reason of Landlord's ownership of the fee estate (other than the Impositions) regardless of the tenancy of Tenant and not caused by the acts or omissions of Tenant. Tenant further agrees that Tenant will not, except as in this Lease provided, suffer or create any other matter or thing whereby the reversionary estate, rights and interest of Landlord in the Premises or any part thereof might be impaired; and any Imposition shall, after the same becomes a lien on the Premises, be paid (or contested) by Tenant in accordance with Article 6 hereof, and any mechanic's, laborer's or materialman's lien incurred by Tenant shall be discharged (or contested) in accordance with Section 8.2 below.

8.2    **Mechanic's Liens.** If any mechanic's, laborer's or materialman's lien shall at any time be recorded against the Premises or any part thereof, Tenant shall immediately provide a copy of such claim of lien to Landlord and within twenty (20) business days after notice to Tenant of such lien or claim of lien, will cause the same to be discharged of record by payment, deposit, bond, order of a court of competent jurisdiction or otherwise. If Tenant shall fail to cause such lien to be discharged as herein provided within the period aforesaid, then, in addition to any other right or remedy which Landlord may have under this Lease or otherwise, Landlord may, but shall not be obligated to, discharge the same either by paying the amount claimed to be due or by procuring the discharge of such lien by deposit or by bonding proceedings, and in any such event Landlord shall be entitled, if Landlord so elects, to defend the prosecution of an action for the foreclosure of such lien by the lienor and to pay the amount of any judgment in favor of the lienor with interest, costs and allowances included in such judgment, and recover such sums plus interest from Tenant.

8.3    **No Implied Consent.** Nothing contained in this Lease shall be deemed or construed in any way as constituting the consent or request of Landlord, express or implied by inference or otherwise, to any contractor, subcontractor, laborer or materialman for the performance of any labor or the furnishing of any materials for any specific improvement, alteration to or repair of the Premises or any part thereof, nor as giving Tenant any right, power or authority to contract for or permit the rendering of any services or the furnishing of any materials that would give rise to the filing of any lien against the Landlord's Fee Interest or any part thereof if not paid.

LEASE: STATE OF OREGON TO PORT OF ASTORIA

Exhibit 1
Page 13 of 38
OLNG

**8.4    No Encumbrance of Leasehold Interest Without Prior Consent.**  Tenant, its successors and assigns shall not encumber the Leasehold interest of Tenant, nor mortgage or grant a security interest in Tenant's interest in this Lease or the Premises or in any Subleases without the prior written consent of the Landlord, which consent shall not be unreasonably withheld.

# ARTICLE 9
## Maintenance and Repairs

**9.1    Maintenance by Tenant.**  Throughout the Term of this Lease, Tenant, at its sole cost and expense, will take good care of the Premises and appurtenances thereto and every part of and portion thereof and any sidewalks, parking lots, garages, driveways, walls, concrete aprons, utility systems, piers, curbs and vaults adjoining and/or appurtenant to the Premises and will keep the same in good order and condition, and will make all necessary repairs and environmental remediation, as required by Article 16, thereto, interior and exterior, structural and non-structural, ordinary and extraordinary, and unforeseen and foreseen, all to the effect that the Premises shall throughout the Term of this Lease be maintained in good condition, less normal wear and tear, suitable for their intended use.

**9.2    Requirements of Governmental Authorities.**  At all times during the Term of the Lease, Tenant, at Tenant's own cost and expense, shall:
   a)  Make all alterations, additions, or repairs to the Premises and/or the Improvements required by the terms of any applicable law, ordinance, statute, order, or regulation now or hereafter made or issued by any Governmental Authority; including, without limitation, Title III of the Americans with Disabilities Act of 1990, all regulations issued thereunder and the Accessibility Guidelines for Buildings and Facilities issued pursuant thereto, as the same are in effect on the Commencement Date of this Lease and as may be hereafter modified, amended or supplemented.
   b)  Observe and comply with all applicable laws, ordinances, statutes, orders, and regulations now or hereafter made or issued respecting the Premises and/or the Improvements by any Governmental Authority;
   c)  Defend, indemnify and hold Landlord and the Premises free and harmless from any and all liability, costs, damages, fines, penalties, claims, and actions resulting from Tenant's failure to comply with or perform the requirements of this Section 9.2.

**9.3    No Duties on Landlord.**  Landlord shall not be required to furnish any services or facilities whatsoever or to make any repairs or alterations in or to the Premises or the Improvements.  Tenant hereby assumes the full and sole responsibility for the condition, operation, repair, replacement, maintenance, development and management of the Premises and the Improvements throughout the entire Term of this Lease.

# ARTICLE 10
## Ownership of Improvements

**10.1    Ownership of Improvements During Term.**  All Improvements at any time constructed on the Premises by Tenant shall be owned by Tenant or Subtenants until expiration

LEASE:  STATE OF OREGON TO PORT OF ASTORIA

Exhibit 1
Page 14 of 38
OLNG

of the Term hereof or sooner termination of this Lease as herein provided. Tenant or Subtenants or any successors to their rights shall not remove any Improvements from the Premises nor waste, destroy, or modify any Improvements except as permitted by this Lease. Tenant may place fixtures, partitions, personal property, and the like in the Premises and may make improvements and alterations to the Premises at its own cost and expense without approval from Landlord.

10.2   **Ownership at Termination.**  Upon expiration or termination of this Lease, Landlord shall have the option of acquiring all Real Property Improvements added to the Premises by Tenant upon paying Tenant the current fair market value for such Improvements, which fair market value is to be determined by a licensed appraiser selected by Tenant and approved by Landlord; or, with the consent of Landlord, which consent shall not be unreasonably withheld, Tenant may sell such Improvements to future leaseholders, remove any Improvements that Landlord declines to buy, or leave such Improvements. When any Improvements are removed, Tenant shall restore the Premises to as good a condition as the same were when first occupied by Tenant less normal wear and tear. Any Improvements not removed by Tenant upon the termination of this Lease shall become and remain the property of Landlord. The cost for an appraisal shall be shared equally by the parties.


## ARTICLE 11
### Insurance

11.1   **Commercial General Liability Insurance.**  Concurrent with the execution of this Lease, Tenant, at Tenant's sole expense, shall procure and shall thereafter maintain in full force and effect throughout the entire Term of the Lease, Commercial General Liability insurance against claims for injury or death to persons or damage to property occurring on or about the Premises with minimum limits of liability of $10,000,000 combined single limit for each occurrence. Such insurance shall include, but not be limited to, Bodily Injury Liability, Personal Injury Liability, Property Damage Liability, Broad Form Property Damage Liability, Sudden and Accidental Pollution, Fire Legal Liability, Contractual Liability, Products/Completed Operations Liability, and Liability for Property of Others in the care, custody, and control of Tenant.
The liability insurance shall cover all operations and activities of Tenant including, but not limited to, Tenant's own direct activities on and off the Premises, all construction, repair and improvement activities on and off the Premises and all explosion, collapse, and underground exposures associated with these activities.

11.2   **Property Insurance.**  Concurrent with the execution of this Lease, Tenant, at Tenant's sole cost and expense, shall procure and shall thereafter maintain in full force and effect throughout the entire Term of the lease, property insurance for those buildings and structures constructed before and after the Commencement Date of this Lease, for the perils of all risks of direct physical loss covering all such property for its full replacement cost. Such coverage shall be written on an agreed amount basis equal to one hundred percent (100%) of the full replacement costs and without a coinsurance clause.
The property insurance required under Section 11.2 shall include coverage for all demolition, contingent liability, and increased costs of construction as a result of the enforcement of any law, regulation, or ordinance that is in force at the time of the insured loss that requires

LEASE:  STATE OF OREGON TO PORT OF ASTORIA

Exhibit 1
Page 15 of 38
OLNG

the demolition of parts of the undamaged real property, or regulates the construction or repair of damaged real property.

The property insurance required under Section 11.2 shall provide a waiver of subrogation in favor of Landlord.

For the purposes of this Section 11.2 "full insurable value" shall mean the actual replacement cost of the Improvements. Such full insurable value shall be determined from time to time at the request of Landlord by an appraiser, engineer, design professional or contractor designated by Landlord and approved in writing by Landlord and paid for by Landlord or Tenant (at the discretion of Landlord), but Landlord's failure to request a determination or redetermination of full insurable value shall not relieve Landlord or Tenant of its obligation to maintain the insurance required by the terms hereof.

For the purposes of this Section 11.2 the property insurance shall insure all of the Improvements constructed on or placed on the Premises after the Commencement Date, as well as any and all additions thereto, against loss or destruction by windstorm, cyclone, tornado, hail, explosion, riot, riot attending a strike, civil commotion, malicious mischief, vandalism, aircraft, fire, smoke damage, boiler and machinery damage and sprinkler leakage. Further, during construction, or demolition, or reconstruction, the property insurance shall include "all risks" builders' risk insurance, with course of construction, vandalism, and malicious mischief clauses attached insuring the Improvements and all materials and equipment delivered to the site of said Improvements for their full insurable value, except in the event Tenant demonstrates to Landlord's reasonable satisfaction that the contractor for such work carries such "all risks" builder's risk insurance.

11.3    <u>Insurance Requirements.</u>  All insurance policies required under this Lease shall include these additional provisions, conditions, and requirements:

a)   The Landlord shall be named as additional insured on all policies.

b)   Tenant shall provide Landlord written notice of any cancellation or material modification to the policies purchased by Tenant at least thirty (30) days prior to the effective date of such cancellation or change.

c)   Tenant shall provide properly executed Certificates of Insurance to the Landlord at least ten (10) days prior to occupancy of the Premises and prior to commencement of any Construction Work, and thereafter, at least thirty (30) days prior to the effective date of any renewal or replacement policy.

d)   At its sole discretion, Landlord may require that true and certified copies of one or more insurance policies be provided to Landlord for its review and retention in its files.

e)   All policies of insurance shall be issued by companies licensed or authorized to provide insurance in the State of Oregon and reasonably acceptable to Landlord.

f)   If Tenant shall fail or refuse to procure, pay for or keep in force the policies of insurance set forth herein, or to deliver evidence of such insurance to Landlord, Landlord may, at its election, place in force and/or from time to time renew such insurance. All amounts expended for such insurance, together with interest thereon at an annual rate of ten percent (10%) per annum, shall be additional rent due from Tenant to Landlord payable within fifteen (15) days after invoices are delivered to Tenant.

g)   Tenant may purchase an Umbrella Liability Policy to provide the limits of coverage specified for Sections 11.1 and 11.2 so long as such policy provides coverage at least as broad as specified for the individual policies, is equivalent or in excess of the limits specified for each individual policy, and the policy applies directly above (without gap in limit of liability) the individual underlying policy.

LEASE:  STATE OF OREGON TO PORT OF ASTORIA

h) Unless otherwise specifically agreed in writing by the Landlord prior to the effective date of the policy(ies):

    i.   All liability insurance policies shall be written on an occurrence coverage basis;

    ii.   All insurance policies shall be non assessable;

    iii.   All property insurance policies purchased by Tenant shall contain or be endorsed acknowledging that the insurer waives its rights of subrogation against Landlord; and

    iv.   All insurance policies procured by Tenant shall be primary and non contributing with any insurance that may be carried by Landlord.

    i)     At the termination of this Lease for whatever reason, in the event Tenant is able to assign to Landlord its right, title, and interest in the insurance policies required to be maintained hereunder, and provided Landlord agrees to such assignment, Landlord shall reimburse Tenant pro rata for all advanced premiums paid on such insurance.

    j)     All property insurance shall be specifically acknowledged and endorsed by the insurer whereby the insurer agrees to make any and all payments as applicable under said policies payable to Tenant and Landlord jointly.

    11.4   **Tenant's Duty to Repair and Restore.**  If any casualty results in damage or destruction to the Improvements and/or the Premises, Tenant will promptly give written notice thereof to Landlord. Tenant, at its sole cost and expense, using available insurance proceeds, settlement funds and other funds at Tenants disposal, shall restore, repair, replace or rebuild the same as nearly as possible to its condition and character immediately prior to such damage or destruction, including temporary repairs and work necessary to protect the Premises and the Improvements from further injury, and/or with such changes or alterations as may be made at Tenant's election in conformity with and subject to the conditions of Article 7 of this Lease (all of the foregoing collectively being referred to as "Restoration").

Restoration shall be commenced promptly (giving due regard to the length of time required to adjust any loss with insurer) and prosecuted with reasonable diligence, Unavoidable Delays excepted. If, as a result of Property Insurance provided pursuant to Section 11.2, Landlord receives any payment for the casualty that resulted in the damage or destruction ("Insurance Proceeds"), Landlord shall make such Insurance Proceeds available to Tenant for use in the Restoration.

The Insurance Proceeds that are payable to Tenant shall be held in trust by Tenant to pay for the cost of Restoration. Upon completion of the Restoration, Tenant shall promptly deliver to Landlord a statement setting forth a concise description of the Restoration performed and proof of payment therefore. Any excess Insurance Proceeds (except those received by Landlord as a result of Property Insurance provided pursuant to Section 11.2) shall be retained by Tenant or paid to any Leasehold Mortgagee if permitted or required under any Leasehold Mortgage.

The Insurance Proceeds payable to the Insurance Trustee shall be held in trust to be applied to the payment of the cost of the Restoration and shall be paid out upon such terms and conditions (which terms and conditions shall include, as a minimum, the requirements of subsections (a) and (d) below) as may be established by any Leasehold Mortgagee, or if no Leasehold Mortgage is then in effect, then from time to time as such Restoration progresses within twenty (20) days after written request of Tenant which shall be accompanied by a certificate signed by Tenant or Tenant's duly authorized representative and the Design Professional in charge of the Restoration, dated not more than thirty (30) calendar days prior to such request, setting forth the following:

LEASE: STATE OF OREGON TO PORT OF ASTORIA

Exhibit 1
Page 17 of 38
OLNG

a) That the sum then requested either has been paid by Tenant, or is justly due to contractors, subcontractors, materialmen, engineers, design professionals or other persons who have rendered services or furnished materials for the Restoration, and giving a brief description of such services and materials and the several amounts paid or due to each of said persons in respect thereof, and state that nor part of such expenditures has been or is being made the basis in any previous or then pending request for the withdrawal of Insurance Proceeds and that the sum then requested does not exceed the value of the services and materials described in the certificate;

b) That except for the amount, if any, stated pursuant to the foregoing subsection (a) in such certificate to be due for services or materials to the particular supplier, there is no outstanding indebtedness of Tenant to the particular supplier known to persons signing such certificate which is then due for labor, wages, materials, supplies or services in connection with such Restoration, which, if unpaid, might become the basis of a vendor's, mechanic's, laborer's or materialman's statutory or similar lien upon such restoration or upon the Premises;

c) That the costs, as estimated by the persons signing such certificate, of the Restoration required to be done subsequent to the date of such certificate in order to complete the same, do not exceed the Insurance Proceeds, plus any amount deposited by Tenant to defray such cost and remaining in the hands of the Insurance Trustee after payment of the sum requested in such certificate. If there is a deficiency, Tenant shall forthwith deposit with the Insurance Trustee the amount needed to be segregated from the Insurance Proceeds and expended only after the Insurance Proceeds shall have been exhausted; and

d) That there has not been filed with respect to the Premises or any part thereof any vendor's, mechanic's, laborer's, materialman's or other claim of lien which has not been discharged of record, except such as will be discharged by payment of the amount then requested subject to Tenant's right to contest as provided in Section 8.2.

Upon compliance with the foregoing provisions of this Section 11.4, the Insurance Trustee shall, out of the monies held by the Insurance Trustee as aforesaid, pay or cause to be paid to Tenant or the persons named in the certificate referenced above, the respective amounts stated therein to have been paid by Tenant or to be due to them, as the case may be.

Upon receipt by the Insurance Trustee of satisfactory evidence of the character required by this Section 11.4 that the Restoration has been completed in the manner required under the terms of this Lease and has been paid for in full and that there are no liens of the character referred to therein, any balance of the Insurance Proceeds at the time held by the Insurance Trustee shall be paid to Tenant or to any Leasehold Mortgagee.

11.5    **Destruction Near End of Term.**  If any Improvements are substantially or totally destroyed by fire or other casualty of any kind or nature and the estimated cost of the restoration is fifty percent (50%) or more of the value of the replacement cost of the Improvement(s) so damaged or destroyed, then notwithstanding any requirement to the contrary in this Article, Tenant shall not be required to restore the Improvement(s) if to do so would not be commercially viable, provided that, within one hundred twenty (120) calendar days after such destruction or damage, Tenant provides Landlord written notice of Tenant's intent not to restore, and provided further that, simultaneously with the giving of such notice, Tenant shall first pay in full any Leasehold Mortgage that is secured by Tenant's interest in this Lease or the Improvement(s) and then restore the Premises on which the Improvement(s) were situated to as good a condition as the same were when first occupied by Tenant less normal wear and tear. If any Insurance

LEASE: STATE OF OREGON TO PORT OF ASTORIA

Exhibit 1
Page 18 of 38
OLNG

Proceeds remain after (1) paying in full any Leasehold Mortgage that is secured by Tenant's interest in this Lease or the Improvements(s); (2) restoring the Premises on which the Improvement(s) were situated to as good as condition as the same were first occupied by Tenant less normal wear and tear; and (3) compensating Tenant for its investment in the Improvement(s) in an amount not to exceed the fair market value of the Improvement(s); all such remaining proceeds will be payable to Landlord and Tenant in proportion to their interests.

## ARTICLE 12
## Mortgaging and Subleasing

**12.1    Leasehold Mortgage.**  If Tenant is not then in default under this Lease, Tenant may, with the prior written consent of Landlord and subject to the terms and conditions as may reasonably be imposed, dispose of all or any portion of Tenant's interest under this Lease and the leasehold estate hereby created to any trustee by way of a deed of trust in favor of any Leasehold Mortgagee, for the purpose of creating an encumbrance on such interest.  No other assignment of Tenant's interest under this Lease is permitted.

**12.2    Subleases.**
a)  Except for Tenant's use of the Premises for the purpose of developing and maintaining the Premises for uses under third party Subleases and for managing third party Subleases of the Premises, all uses of the Premises must be Approved Uses and must be documented by an Approved Sublease Form."
b)  With Landlord's prior written consent, which consent shall not be unreasonably withheld, Tenant may Sublease all or any portion of the Premises for use in accordance with the Approved Uses and may extend or renew any Sublease with Landlord's prior written consent.  No Sublease shall release Tenant from any obligation or liability under this Lease.  All such Subleases shall be subject and subordinate to Landlord's rights under this Lease, and shall be for Approved Uses under this Lease.  All Subleases shall be for a term or terms that shall expire before the expiration of the Term of this Lease.
c)  All Subleases shall be in writing, shall be on an Approved Sublease Form and shall contain such provisions as the Landlord may in its sole discretion require, including but not limited to:
i.    a clause stating the uses permitted to be made of the Premises covered by the Sublease;
ii.   clauses setting out commercially reasonable terms as of the date of execution;
iii.  a provision for payment of rent that is equal to or greater than the reasonable commercial rental value of the subleased premises over the term of the Sublease and given the terms of the Sublease;
iv.   a clause prohibiting assignment or transfer of all or any portion of the Sublease without the prior written consent of the Tenant; and
v.    clauses requiring such insurance or bonding as the Landlord, in its sole discretion, determines to be advisable.
d)    Every Sublease shall contain a term requiring the termination of the Sublease upon the expiration or earlier termination of the Lease and provide that Tenant shall provide to the subtenant prior notice and an opportunity to cure any default of the Tenant under this Lease that might result in termination of the Lease.

LEASE:  STATE OF OREGON TO PORT OF ASTORIA

Exhibit 1
Page 19 of 38
OLNG

e)    Tenant shall deliver to Landlord true copies of each Sublease not later than ten (10) days after the same has been executed and delivered by the parties.

f)    Tenant shall first obtain the express written consent of Landlord, which consent shall not be unreasonably withheld, according to the procedure set forth in this section, before subleasing all or any portion of Premises. Without the prior written consent of Landlord, Tenant shall not sublet or in any manner transfer any of Tenant's interest in this Lease, in any Sublease or in the Premises.

g)    Twenty (20) calendar days before the proposed commencement date of a proposed Sublease, Tenant shall submit to Landlord an accurate and complete copy of the proposed Sublease and any information that the Tenant possesses, or the Landlord requests, regarding the proposed Subtenant. Following Landlord's receipt of the proposed Sublease and all relevant information regarding the proposed Subtenant, Landlord shall have twenty (20) calendar days in which to:

i.    review the proposed Sublease and all relevant information; and

ii.    request clarifications of and modifications to the terms and conditions of the proposed Sublease and such further or additional information as Landlord deems necessary. If Landlord requests supplementary information concerning the proposed Sublease or the proposed Subtenant, Landlord shall have an additional ten (10) calendar days, following receipt of this information, in which to review Tenant's proposal.

h)    In reviewing and approving or disapproving a proposed Sublease and the suitability of a proposed Subtenant, Landlord may consider any factor that Landlord believes to be reasonably relevant to its decision, including but not limited to such factors as environmental, economic, cultural, and political concerns, anticipated financial benefit to the Common School Fund, and whether the proposed sublease offers the best means of obtaining from the Premises the greatest benefit for the people of Oregon.

i)    Without in any way limiting the generality of the foregoing factors that Landlord may consider, Landlord may in particular inquire into each prospective Subtenant's:

i.    business status, (that is), exactly what entities, corporate or otherwise, comprise the proposed Subtenant;

ii.    the exact business form of each such Subtenant entity and the identity of all principals and officers in each entity, with identification of the person or persons having signature authority for each entity;

iii.    each Subtenant entity's experience in carrying out similar commercial activities;

iv.    the capitalization of each proposed Subtenant and certified copies of all pertinent financial information for the last three (3) years, (for example, balance sheets, income statements, tax returns, etc.);

v.    the bonding capacity, if any, of each proposed Subtenant;

vi.    references for each proposed Subtenant and each proposed Subtenant's principals, i.e., parties with whom the proposed Subtenant has been transacting business over the last three (3) to five (5) years and the opinion of such business associates/acquaintances regarding the proposed Subtenant and its principals;

vii.    a Dun and Bradstreet or other credit company report on each proposed Subtenant;

viii.    personal financial information on each proposed Subtenant's principals, including copies of tax returns for the last three (3) years and information

LEASE:  STATE OF OREGON TO PORT OF ASTORIA

26311-LE
PAGE 20 OF 37

Exhibit 1
Page 20 of 38
OLNG

regarding whether such principals have filed for bankruptcy protection at any time during the past seven (7) years; and

    ix.  criminal records check for each proposed Subtenant and its principals, particularly for any environmental crimes and anything else which would tend to cast an unfavorable light on the integrity or business ethics of the principals of each proposed Subtenant.

    j)    As a result of its review of the proposed sublease and the proposed Subtenant, Landlord shall, within the time periods set forth above, approve or disapprove Tenant's proposal. If Landlord approves a proposed Sublease, Landlord shall provide Tenant with a written consent. Unless and until Tenant obtains such written consent from Landlord, any proposed Sublease shall not be effective and any Sublease entered into by Tenant without first obtaining Landlord's express prior written consent shall be null, void, and of no effect. Notwithstanding Landlords approval of Tenant's proposed Sublease, Tenant shall remain ultimately responsible for performance of all of Tenant's obligations and duties under this Lease.


## ARTICLE 13
## Tenant's Default

13.1   **Events of Default/Cure and Termination.**  The occurrence of any of the following events shall be an "Event of Default" hereunder:

    a)  If Tenant fails to pay any installment of Annual Rent or additional rent when and as the same shall become due and payable and, as to any other sums required to be paid by Tenant under this Lease, when and as the same shall become due and payable, and such failure continues for a period of ten (10) calendar days after written notice given by Landlord to Tenant;

    b)  If Tenant fails to perform or comply with any of the covenants, agreements, terms or conditions contained in this Lease and such failure continues for a period of thirty (30) calendar days, after written notice given by Landlord to Tenant;

    c)  The subjection of any right or interest of Tenant under this Lease to attachment, execution, or other levy, or to seizure under legal process;

    d)  The appointment of a receiver to take possession of the Premises and/or Improvements or of Tenant's interest in the leasehold estate or of Tenant's operations for any reason, including but not limited to, assignment for the benefit of creditors or voluntary bankruptcy proceedings, but not including receivership:

    i.  pursuant to administration of the estate of any deceased or incompetent Tenant or of any deceased or incompetent individual partner of any Tenant, or

    ii.  pursuant to a Leasehold mortgage, or

    iii.  instituted by Landlord, the event of default being not the appointment of a receiver at Landlord's instance but the event justifying the receivership, if any;

    e)  An assignment by Tenant for the benefit of creditors or the filing of a voluntary petition by or against Tenant under any law for the purpose of adjudicating Tenant as bankrupt; or for extending time for payment, adjustment or satisfaction of Tenant's liabilities to creditors generally; or for reorganization, dissolution, or arrangement on account of or to prevent bankruptcy or insolvency;

    f)  Tenant's failure to comply with Hazardous Materials Laws or with any requirement in Article 16;

LEASE: STATE OF OREGON TO PORT OF ASTORIA

g) Tenant's failure to procure, maintain or qualify for such insurance as Landlord may from time to time require in accordance with the provisions of Article 11.

13.2    **Notice to Certain Persons.**  Landlord shall, before pursuing any remedy, give notice of any Event of Default to Tenant and to all Subtenants who have requested the same from Landlord, and Leasehold Mortgagees, if any, whose names and mailing addresses were previously given to Landlord.

13.3    **Landlord's Remedies.**  If any Event of Default by Tenant shall continue uncured, following notice of default as required by this Lease (if any is required), for the period applicable to the default under the applicable provision of this Lease, Landlord has the following remedies in addition to all other rights and remedies provided by law or equity, to which Landlord may resort cumulatively or in the alternative:

a) **Termination.**  Landlord may at its election terminate this Lease by giving Tenant notice of termination.

b) **Right of Reentry and Ejection.**  Landlord may reenter, take possession of the Premises and Improvements and eject all parties in possession or eject some and not others or eject none and may remove any persons or property by legal action or by self-help with the use of reasonable force and without liability for damages and without having accepted a surrender.

c) **Reletting.**  Following reentry or abandonment, Landlord may relet the Premises and in that connection may make any suitable alterations or refurbish the Premises, or both, or change the character or use or purpose of the Premises, but Landlord shall not be required to relet for any use or purpose other than that specified in the Lease or which Landlord may reasonably consider injurious to the Premises, or to any tenant that Landlord may reasonably consider objectionable. Landlord may relet all or part of the Premises, alone or in conjunction with other properties, for a term longer or shorter than the Term of this Lease, upon any reasonable terms and conditions, including the granting of some rent-free occupancy or other rent concessions. Landlord shall be entitled to all rents from the use, operation, or occupancy of the Premises or Improvements or both.

d) **Damages.**  Whether or not Landlord cancels, takes possession of or relets the Premises, Landlord has the right to recover its damages, including without limitation, (i) all lost rentals; (ii) all costs incurred by Landlord in restoring the Premises or otherwise preparing the Premises for reletting; (iii) and all costs incurred by Landlord in reletting the Premises; provided that, the amount Landlord may recover that represents damages for lost rental shall be limited to: (i) all rent that was due to the date of termination, plus (ii) all amounts of rent that would have fallen due as rent for the six month period following the date of termination, less (iii) the amounts recovered by Landlord from relettings or attornments, if any, plus (iv) interest on the balance at the Late Payment Rate.

13.4    **Right To Sue More Than Once.**  Landlord may sue periodically to recover damages during the period corresponding to the remainder of the Lease Term, and no action for damages shall bar a later action for damages subsequently accruing.

13.5    **Landlord's Right to Cure Defaults.**  If Tenant fails to perform any obligation under this Lease, after the cure period, if any, Landlord shall have the option to so perform after giving written notice to Tenant. All of Landlord's expenditures to correct the default shall be

LEASE:  STATE OF OREGON TO PORT OF ASTORIA

26311-LE
PAGE 22 OF 37

Exhibit 1
Page 22 of 38
OLNG

reimbursed by Tenant on demand with interest at the Prime Rate from the date of expenditure by Landlord. Such action by Landlord shall not waive any other remedies available to Landlord because of the default.

13.6    **Remedies Cumulative.** The remedies given to Landlord herein shall not be exclusive but shall be cumulative with and in addition to all remedies now or hereafter allowed by law and elsewhere provided in this Lease.

13.7    **Surrender of Premises.** Promptly after notice of termination, Tenant shall surrender and vacate the Premises and Improvements in broom-clean condition.

13.8    **Waiver of Breach.** No waiver by a party of any default by the other shall constitute a waiver of any other breach or default by the other, whether of the same or any other covenant or condition. No waiver, benefit, privilege, or service voluntarily given or performed by a party shall give the other any contractual right by custom, estoppel, or otherwise. The subsequent acceptance of rent pursuant to this Lease shall not constitute a waiver of any preceding default by Tenant other than default in the payment of the particular rental payment so accepted, regardless of Landlord's knowledge of the preceding breach at the time of accepting the rent, nor shall acceptance of rent or any other payment after termination constitute a reinstatement, extension, or renewal of this Lease or revocation of any notice or other act by Landlord.

## ARTICLE 14
## Unavoidable Delay

14.1    Should the performance of any act required by the Lease to be performed by either Landlord or Tenant be prevented or delayed by reason of an Unavoidable Delay or by reason of any act or omission of the other party in violation of the terms of this Lease, the time for performance of the act will be extended for a period equivalent to the period of delay and performance of the act during the period of delay will be excused. The party affected or potentially affected shall, however, use reasonable diligence to avoid any such delay and resume such performance as promptly as possible after the delay. Nothing contained in this section shall excuse the prompt payment of rent by Tenant as required by this Lease or the performance of any act rendered difficult or impossible solely because of the financial condition of the party required to perform the act.

## ARTICLE 15
## Dispute Resolution Procedures

15.1    Landlord and Tenant agree that when disputes under this Lease arise, the parties shall first attempt to resolve such disputes through negotiations between the authorized representatives of Tenant and Landlord. If negotiations are unsuccessful, the parties may resort to litigation or, if mutually agreed, may invoke other dispute resolution mechanisms.

LEASE: STATE OF OREGON TO PORT OF ASTORIA

## ARTICLE 16
## Hazardous Materials

16.1   **Use of Hazardous Materials.**  Tenant will be responsible for any and all Hazardous Materials that Tenant brings onto the Premises and for any other material the use, generation, manufacture, storage or disposal of which may violate Department of Environmental Quality (DEQ) standards or create a safety or environmental hazard or result in a DEQ violation. Tenant shall keep and maintain,**and shall require any Subtenant to keep and maintain,** the Premises in compliance with any and all laws regulating the use, generation, manufacture, storage and disposal of Hazardous Materials.  Tenant shall not cause or permit the use, generation, manufacture, storage or disposal on, under or about the Premises, or the transportation to or from the Premises, of any Hazardous Materials in violation of any law or regulation relating to such Hazardous Material.

16.2   **Tenant's Indemnity Obligations.**  In addition to any other obligation to indemnify stated elsewhere in this Lease, Tenant shall indemnify, defend and hold Landlord and Landlord's fee interest under this Lease free and harmless from and against any and all liability, damage, loss, costs, and expense that may be incurred by Landlord by reason of, resulting from, in connection with, or arising in any manner whatsoever out of:
    a)  a breach of the obligations of Section 16.1; or
    b)  the use, generation, manufacture, storage or disposal of Hazardous Materials on, under, or about the Premises after the Commencement Date or during any previous lease of the Premises by Tenant; or
    c)  surface migration of Hazardous Materials onto the Premises caused by or arising in connection with activities conducted on or associated with the Premises during the Term of this Lease or during any previous lease of the Premises by Tenant.

Tenant's indemnity obligations under this Section 16.2 shall include, but not be limited to: (i) all liabilities, losses, claims, demands, penalties, fines, settlements, damages, response, remediation, closure or inspection costs; (ii) any expenses (including reasonable attorney and consultant fees, investigation expenses, and laboratory and litigation costs) of whatever kind or nature that are incurred by Landlord; (iii) any personal injuries or property damages, real or personal; (iv) any violations of law, orders, regulations, requirements or demands of governmental authorities; and (v) any lawsuit brought or threatened, settlement reached, or government order arising out of or in any way related to the release of Hazardous Materials on the Premises after the Commencement Date or during any previous lease of the Premises by Tenant.

PROVIDED, HOWEVER, that Tenant's indemnity obligations under this Section 16.2 shall not include any liability, damage, loss, costs, and expense suffered by Landlord and resulting from:
    a)  Hazardous Materials present in or on or under the Premises as of the Commencement Date unless caused by Tenant or its employees, agents, invites or subleases during any previous lease of the Premises by Tenant; or
    b)  Hazardous Materials present in or on or under the Premises as of the Commencement Date that migrate, percolate, flow, diffuse, or in any way move within, from or off the Premises after the Commencement Date, unless caused by Tenant, its employees, agents, invitees or Subtenants during any previous lease of the Premises by Tenant.

LEASE:  STATE OF OREGON TO PORT OF ASTORIA

26311-LE
PAGE 24 OF 37

Exhibit 1
Page 24 of 38
OLNG

The indemnities of Tenant provided in this Section shall survive the expiration or earlier termination of this Lease and the assignment by Tenant of the leasehold estate created hereby.

16.3    **Notice.** Landlord agrees to give prompt written notice to Tenant with respect to any suit or claim initiated or threatened to be initiated against Landlord which Landlord has reason to believe is likely to give rise to a claim for indemnity hereunder, and Tenant shall promptly proceed to provide an appropriate defense, compromise, or settlement of such suit or claim at its sole expense; provided, however, that Landlord shall have the right promptly to furnish counsel at Tenant's sole expense to carry out such defense, compromise, or settlement, which expenses, as well as payments in satisfaction, settlement or compromise of such suit or claim, shall be immediately due and payable to Landlord upon receipt by Tenant of an invoice therefor.

16.4    **Remediation by Tenant.** Without limiting the foregoing, if Tenant, its agents, contractors, guests, invitees or Subtenants cause or permit Hazardous Materials to be used, generated, manufactured, stored, disposed of or released on the Premises during the Term of this Lease, any extended term, or during any prior occupancy or lease of the Premises by Tenant in violation of any Hazardous Material laws, or (subject to Section 16.5) if Hazardous Materials enter upon the Premises from or through surface migration, Tenant shall promptly take all actions at its sole expense to comply with all laws and regulations governing such use, generation, manufacture, storage, disposal or release of such Hazardous Materials and/or to remediate the condition created by such Hazardous Materials; provided that except in an emergency Landlord's approval of such actions shall first be obtained, which approval shall not be unreasonably withheld.

16.5    **Surface Migration.** If surface migration onto the Premises of Hazardous Materials was not caused by and did not arise in connection with activities being conducted on or associated with the Premises during the Term of this Lease or during any prior lease of the Premises by Tenant, and if Tenant is not otherwise responsible for the surface migration, Tenant shall not be obligated to indemnify Landlord under this section for the damages caused by such surface migration, nor shall Tenant be required to bear the cost of remediation related to such surface migration.

16.6    **Disclosure.** Within five (5) business days after the receipt of written notice thereof, Tenant shall advise Landlord and Landlord shall advise Tenant, as the case may be, in writing of:

a)  any and all notices of enforcement or other governmental or regulatory actions pursuant to which cleanup or remediation of Hazardous Materials on the Premises will be required; and

b)  all written claims made by any third party against Tenant or Landlord, as the case may be, or the Premises relating to damage, contribution, cost recovery, compensation, loss or injury resulting from Hazardous Materials on the Premises. Tenant shall disclose to Landlord the names of each Subtenant whose business use under its Sublease includes the storage, use, manufacture, generation, or disposal of Hazardous Materials on the Premises in amounts for which a permit is required to be obtained pursuant to applicable Hazardous Materials laws or for which reports must be filed with governmental agencies pursuant to any applicable laws.

LEASE:  STATE OF OREGON TO PORT OF ASTORIA

26311-LE
PAGE 25 OF 37

Exhibit 1
Page 25 of 38
OLNG

16.7    **Inspection.** Landlord and its agents shall have the right, but not the duty, at Landlord's sole cost and expense to conduct reasonable inspections of the Premises, to determine whether Tenant (or its Subtenants) are complying with this Article 16. Such inspections shall be performed during business hours, upon reasonable prior notice to Tenant, and shall be accomplished in a manner reasonably calculated not to disturb existing business operations of Tenant or any Subtenant. Landlord shall use its best efforts to minimize interference with the business of Tenant and Subtenants being conducted on the Premises but shall not be liable for any reasonable interference caused thereby.

If, as a result of any such inspection, Landlord determines, in its reasonable judgment, that Tenant or its Subtenants are not or may not be in compliance with this Article 16, Landlord shall promptly notify Tenant in writing of the event or situation which gives rise to Tenant's or a Subtenant's violation or possible violation of such Article. Unless Tenant's or a Subtenant's violation or possible violation of this Article 16 creates an emergency situation (in which event Tenant shall immediately take such action as may be required by the nature of such situation to remedy the same and if Tenant fails to do so Landlord shall have the right to enter upon the Premises and to take such action as Landlord deems appropriate in its reasonable judgment to remedy or correct such emergency situation). Tenant shall within sixty (60) calendar days after the receipt of notice of such violation or possible violation from Landlord (provided that Tenant will, in any event proceed diligently), submit to Landlord a written plan setting forth a general description of the action that Tenant proposes to take with respect thereto.

a) **Remediation Plan Required.** The plan shall be subject to Landlord's written approval, which approval shall not be unreasonably withheld or delayed. Landlord shall notify Tenant in writing of its approval or disapproval of the plan within forty-five (45) calendar days after receipt thereof by Landlord. If Landlord disapproves the plan, Landlord's notice to Tenant of such disapproval shall include a detailed explanation of the reasons therefor. Within thirty (30) calendar days after receipt of such notice of disapproval, Tenant shall submit to Landlord a revised plan that remedies the defects reasonably identified by Landlord as reasons for Landlord's disapproval of the initial plan. If Tenant fails to submit a revised plan to Landlord within said thirty (30) day period, such failure shall, at Landlord's option and upon notice to Tenant, constitute an "Event of Default" hereunder. Once any such plan is approved in writing or deemed approved by Landlord, Tenant shall promptly commence all action necessary to comply with all requirements and conditions imposed by all environmental boards or agencies having and exercising jurisdiction, and shall diligently and continuously pursue such action to completion in accordance with the terms thereof; provided that Tenant may commence such actions sooner or on such other timetable if required to do so by any such board or agency.

b) **Further Testing.** If Landlord's inspections of the Premises reflect a violation or possible violation by Tenant or a Subtenant of the provisions of this Article 16 which may have caused the Premises or any part thereof to have become contaminated by Hazardous Materials, Landlord shall have the right to require Tenant to initiate testing of the Premises to determine whether, or the extent to which, such violation has in fact caused the contamination of the Premises by Hazardous Materials. Tenant shall immediately deliver a copy of all test results to Landlord. If such Hazardous Materials are those for which Tenant is responsible, and Landlord is not responsible, Landlord and Tenant shall thereafter comply with the terms and provisions of this section with respect to formulating a plan to remediate any such contamination. If such Hazardous Materials are those for which Landlord is responsible, Landlord shall promptly remediate such Hazardous Materials.

LEASE: STATE OF OREGON TO PORT OF ASTORIA

16.8    **Governing Provisions for Environmental Matters.** Notwithstanding any other provision of this Lease, this Article 16 and Section 2.4 shall supersede and take precedence over all other provisions of this Lease regarding environmental matters including, but not limited to, the scope of indemnification of Landlord by Tenant and the survival of the indemnification provisions contained in this Lease. Nothing in this Article 16 is intended nor shall it limit Landlord's rights in the event of default, as set out in Article 13 of this Lease.

16.9    **Notice of Hazardous Materials; Limitation of Tenant Liability.** Landlord hereby acknowledges that it has made available to Tenant such information as is currently available and known by the Department of State Lands regarding Hazardous Materials existing on the Premises. Tenant shall have no responsibility for remediating any Hazardous Materials existing as of the Commencement Date, except Hazardous Materials that were used, generated, manufactured, stored or disposed of by Tenant or any of its Subtenants, employees, agents or assigns during the Term of this Lease or during any prior occupancy or use of the Premises by Tenant, or as required in Section 9.1. Landlord and Tenant agree that any Hazardous Materials pre-existing this Lease or any prior occupancy or use of the Premises by Tenant, whether known or unknown to the parties, that become evident as a result of Tenant's occupancy shall be the sole responsibility of Landlord, and Landlord will be responsible to DEQ for remediation of such pre-existing conditions.

## ARTICLE 17
## Condemnation

17.1    **Total Taking.** In the event of the taking or condemnation by any competent authority for any public use or purpose of the whole of the Premises at any time during the Term:

a)    **Termination.** The Term shall end as of the date of possession by the condemner, and all rent and other payments shall be apportioned as of the date of possession.

b)    **Award.** Landlord and Tenant shall share any award (including interest from the date of taking to the date of payment) according to their respective interests in the Premises except that the award for attorneys' fees and other costs shall be shared by the parties in proportion to the attorneys' fees of both outside and inside counsel paid by each party on account of the condemnation proceedings. The values of the Landlord's and Tenant's respective interests in the Premises shall be established by the same court of law or other trier of fact that establishes the amount of the condemnation award, but if there is no court of law available or willing to determine Landlord's and Tenant's respective interests, those interests shall be determined by agreement of Landlord and Tenant.

17.2    **Substantial Taking.** As used in this Section, a Substantial Taking means a taking of materially all of the Premises where the remaining part of the Premises not so taken cannot be adequately restored, repaired or reconstructed so as to constitute a complete functional unit of property capable of any substantial income-producing function. In the event of a Substantial Taking, then the condemnation shall be treated as a Total Taking under Section 17.1, and the award shall be distributed in accordance with Section 17.1(b).

LEASE: STATE OF OREGON TO PORT OF ASTORIA

26311-LE
PAGE 27 OF 37

Exhibit 1
Page 27 of 38
OLNG

17.3    **Partial Taking.**  In the event of a taking of less than materially all of the Premises (a "Partial Taking"):

a) **Abatement of Rent.**  The Term (except as hereinafter provided) shall nevertheless continue, but Monthly Rent shall thereafter be reduced by the same proportion that the fair market rental value of the Property was reduced due to the Partial Taking.  If the parties cannot agree upon a just proportion of Monthly Rent to be abated, the amount may be determined pursuant to Article 15.  There shall be no abatement of Monthly Rent if:

i.    no portion of the Property is taken in any such taking or condemnation, or

ii.    a portion of the Property is taken but the income-generating capacity of the Improvements is not affected.

b) **Award.**  The award from a Partial Taking shall be distributed first to Tenant for the restoration and repair of the Improvements as provided in Section 17.3(b), then to Landlord in an amount equal to the fair market value of the Property taken (subject to the Lease) and any remainder to Landlord and Tenant proportionally until each has received an amount equal to its proportional interest in the Premises as provided in Section 17.1(b).

c) **Restoration.**  If the Lease is not terminated, then, as to the Premises not taken in the condemnation proceeding, Tenant shall proceed diligently to make an adequate restoration, repair or reconstruction of the part of the Premises not taken. Tenant shall restore, repair or reconstruct the Premises, to the extent practicable, to a functional unit of substantially the same usefulness, design, construction, quality, and to a condition having the same income-generating capability of the Premises prior to the taking.  In connection with such restoration, repair, and reconstruction, Tenant shall comply with the provisions of Article 11 regarding Restoration as if occurring after an event of damage or destruction.

17.4    **Degree of Taking.**  If the parties cannot agree on whether the taking is a Partial Taking or a Substantial Taking, the degree of the taking may be determined pursuant to Article 15.

17.5    **Successive Takings.**  In the case of any additional Partial Taking or takings from time to time, the provisions of Section 17.3 shall apply to each Partial Taking.

17.6    **Temporary Taking.**  If the whole or any part of the Premises or of Tenant's interest under this Lease be taken or condemned by any competent authority for its temporary use or occupancy ("Temporary Taking"), Tenant shall continue to pay the full amounts of Monthly Rent, and all Impositions and other sums payable by Tenant hereunder.  Tenant shall maintain sufficient business interruption insurance to cover Monthly Rent, Impositions and other sums payable by Tenant hereunder during the period of Temporary Taking. This Lease shall continue and, except only to the extent that Tenant may be prevented from so doing pursuant to the terms of the order of the condemning authority, Tenant shall perform and observe all of the other terms, covenants, conditions and obligations hereof upon the part of Tenant to be performed and observed, as though the taking or condemnation had not occurred.  In the event of any Temporary Taking or condemnation, Tenant shall be entitled to receive the entire amount of any award made for the taking, whether paid by way of damages, or otherwise, unless the period of temporary use or occupancy shall extend to or beyond the expiration date of the Term

LEASE:  STATE OF OREGON TO PORT OF ASTORIA

26311-LE
PAGE 28 OF 37

Exhibit 1
Page 28 of 38
OLNG

or the Extended Term, if applicable, of this Lease, in which case the award shall be apportioned between Landlord and the Tenant as of the date of expiration of the Term or the Extended Term, if applicable.

17.7    **Insurance Trustee.**  To the extent Tenant is obligated to repair or restore under this Section, any portion of condemnation proceeds awarded to Tenant shall be deposited with the Insurance Trustee who shall act in accordance with the terms of Article 11.

## ARTICLE 18
## Notices

18.1    Any notice, communication, request, reply or advice, or duplicate thereof (herein severally and collectively, for convenience called "notice") provided or permitted to be given under this Lease to any person, entity, or party, or made or accepted by either party to any other party must be in writing and shall, unless otherwise in this instrument or by law expressly provided, be given or be served by:

a)  depositing the same in the United States mail, postage prepaid, registered or certified mail, with return receipt requested, or

b)  personal delivery service with charges therefor billed to shipper, or

c)  expedited delivery service with charges therefor billed to shipper, or

d)  prepaid telegram, telex or facsimile, all such notices, however given, to be addressed to the party for whom the notice is intended at the address set forth below or at such other address as any party may have designated to any other party in the manner above provided.

Any notice or communication sent as herein provided shall be deemed received:

a)  upon receipt if sent by telegram, telex or facsimile or if personally delivered (provided that such delivery is confirmed by the receiving telex or facsimile operator, including electronic confirmation of receipt, or by the courier delivery service, as the case may be),

b)  three (3) business days after the date of deposit in a post office or other official depository under the care and custody of the United States Postal Service, if sent by United States mail;

c)  on the date of delivery by any expedited delivery service, or

d)  on the date any party declines to accept any notice given as herein provided.

No person or entity who is entitled to notice or is required to be given notice hereunder shall have an address, for the purposes of such notice, which is outside the continental United States; and any such person or entity shall designate an agent for the purpose of receiving notices hereunder whose address is within the continental United States.  Any party may change its address for the purposes of receiving notices hereunder by giving notice of such change of address to the other party in the manner required for giving notices pursuant to this Article 18.

LEASE:  STATE OF OREGON TO PORT OF ASTORIA

26311-LE
PAGE 29 OF 37

Exhibit 1
Page 29 of 38
OLNG

If to Tenant:
Port of Astoria
#1 Portway Street
Astoria, OR 97103
      Telephone:   (503) 325-4521
      Fax:          (503) 325-4525

If to Landlord:
Department of State Lands
775 Summer Street, NE Suite 100
Salem, OR 97301-11279
      Telephone:   (503) 378-3805
      Fax:          (503) 378-4844

## ARTICLE 19
### Surrender of Premises; Holding Over

19.1  **Good Condition.**  The Lease shall terminate without further notice at expiration of the Term.  On expiration or sooner termination of the Lease, Tenant shall surrender the Premises and, subject to Article 10, the Improvements, and all facilities in any way appurtenant to the Premises (other than any Subtenant's trade fixtures or equipment which may be removed in accordance with such Subtenant's Sublease), to Landlord in good order, condition and repair, and in as safe and clean condition as practicable, reasonable wear and tear and acts of God excepted, and free and clear of all liens and encumbrances, and Hazardous Materials other than those which have been created by Landlord.  Any holding-over by Tenant after expiration of the Lease shall not constitute a renewal or extension or give Tenant any rights in or to the Premises except as otherwise expressly provided in the Lease.

19.2  **Remaining Personal Property on the Premises.**  Any personal property of Tenant or any Subtenant which shall remain on the Premises after the termination of this Lease and the removal of Tenant and such Subtenant from the Premises, may, at the option of Landlord, be deemed to have been abandoned by Tenant or such Subtenant and may either be retained by Landlord as its property or be disposed of, without accountability, in such manner as Landlord may see fit.  However, Landlord shall also have the right to require Tenant or any Subtenant to remove any such personal property at Tenant's own cost and expense, provided that Landlord shall give Tenant written notice requesting the removal of the personal property of Tenant or such Subtenant from the Premises.

19.3  **Survival.**  The provisions of this Article 19 shall survive the expiration or any termination of this Lease.

## ARTICLE 20
### List of Exhibits

Exhibit A:    Physical survey and legal description of the Premises;
Exhibit B:    Recordable Memorandum of this Lease;

LEASE:  STATE OF OREGON TO PORT OF ASTORIA

Exhibit 1
Page 30 of 38
OLNG

**ARTICLE 21**
**Miscellaneous**

21.1    <u>Governing Law.</u> This Lease, and all matters relating to this Lease, shall be governed by the laws of the State of Oregon in force at the time any need for interpretation of or decision regarding this Lease arises.

21.2    <u>Binding on Successors.</u> This Lease shall be binding on and shall inure to the benefit of the parties and to the successors and permitted assigns of the parties hereto, but nothing in this section shall be construed as a consent by Landlord to any disposition or transfer of the Lease or any interest herein by Tenant except as otherwise expressly provided in this Lease.

21.3    <u>Partial Invalidity.</u> Should any provision of this Lease be held by a court of competent jurisdiction to be either invalid, void, or unenforceable, the remaining provisions of this Lease shall remain in full force and effect unimpaired by the holding.

21.4    <u>Time of Essence.</u> Time is expressly declared to be the essence of Tenant's performance of each and every duty and obligation under this Lease.

21.5    <u>Recordation of Lease.</u> The parties shall record a memorandum of this Lease in the form of <u>Exhibit B</u>, attached hereto.

21.6    <u>Nonmerger of Fee and Leasehold Estates.</u> If both Landlord's and Tenant's estates in the Premises or the Improvements or both become vested in the same owner, this Lease shall nevertheless not be destroyed by application of the doctrine of merger except at the express election of the holder of both estates and the consent of each Leasehold Mortgagee of record.

21.7    <u>Agreement to Act Reasonably.</u> Except where specifically provided to the contrary in this Lease, in each instance in this Lease where the approval or consent of a party is required, both Landlord and Tenant intend and agree to act reasonably. As used in the foregoing sentence, the term "reasonable" shall not be interpreted as justifying arbitrary action but shall mean an even-handed application of judgment in accordance with all applicable requirements of federal and state law, traditional business policies and practices, industry standards and commercial usage and custom concerning major real estate transactions involving properties similar to the Premises. Except where specifically provided to the contrary, any approval or consent shall not be unreasonably delayed.

21.8    <u>Joint and Several Obligations.</u> If Tenant consists of more than one Person, the obligation of all such Persons is joint and several.

21.9    <u>Captions; Table of Contents.</u> Any table of contents attached to this Lease and the captions of the various sections of this Lease are for convenience and ease of reference only and do not define, limit, augment, or describe the scope, content or intent of the Lease or of any part or parts of the Lease. This Lease will be liberally construed to effectuate the intention of the

LEASE:  STATE OF OREGON TO PORT OF ASTORIA

26311-LE
PAGE 31 OF 37

Exhibit 1
Page 31 of 38
OLNG

parties with respect to the transaction described herein. In determining the meaning of, or resolving any ambiguity with respect to, any word, phrase or provision of this Lease, neither this Lease nor any uncertainty or ambiguity herein will be construed or resolved strictly against either party under any rule of construction or otherwise, it being expressly understood and agreed that the parties have participated equally or have had equal opportunity to participate in the drafting hereof.

21.10 **Gender, Singular and Plural.** The neuter gender includes the feminine and masculine, the masculine includes the feminine and neuter, and the feminine includes the masculine and neuter, and each includes corporation, partnership, or other legal entity when the context so requires. The singular number includes the plural whenever the context so requires.

21.11 **Exhibits.** All Exhibits to which reference is made in this Lease are incorporated in this Lease by the respective references to them, whether or not they are actually attached, provided they have been signed or initialed by the parties. References to "this Lease" includes matters incorporated by reference.

21.12 **Nondiscrimination and Nonsegregation.** Tenant covenants by and for himself or herself or itself, and for his or her or its heirs, executors, administrators, and assigns, and all persons claiming under or through him or her or it, and this Lease is made and accepted upon and subject to the condition that there shall be no unlawful discrimination against or segregation of any person or group of persons, on account of race, color, creed, religion, gender, sexual preference, handicap, marital status, national origin, or ancestry, in the leasing, subleasing, transferring, use, occupancy, tenure, or enjoyment of the Premises herein leased or the Construction Work nor shall the Tenant, or any person claiming under or through Tenant, establish or permit any such practice or practices of discrimination or segregation with reference to the selection, location, number, use, or occupancy, of lessees, contractors, Subtenants, or vendees in the Premises and Improvements herein leased.

21.13 **Quiet Enjoyment.** Landlord covenants that, upon paying the rent and all other charges herein provided for and observing and keeping all covenants and agreements in this Lease on its part to be kept, Tenant shall have the right to occupy the Premises peaceably and quietly in accordance with the terms of this Lease. PROVIDED, HOWEVER, that this covenant of quiet enjoyment is expressly subject to the various encumbrances and reservations of right affecting the Premises and Tenant acknowledges and agrees that its peaceable and quiet possession of the Premises is subject to all encumbrances and reservations of right, whether of record or provided for in this Lease.

21.14 **Indemnifications.** Tenant expressly acknowledges and agrees to the terms of the indemnity provisions contained in Sections 2.4, 6.7, 7.7, 9.2 and 16.2 of this Lease. All obligations of Tenant to indemnify Landlord shall survive termination or expiration of the Lease.

21.15 **Notice of Claims, Defense of Claims.** Landlord agrees to give prompt written notice to Tenant with respect to any suit or claim initiated or threatened to be initiated against Landlord which Landlord has reason to believe is likely to give rise to a claim for indemnity under the Lease. Landlord shall reasonably cooperate in good faith, at Tenant's reasonable expense, in the defense of a covered claim and Tenant shall select counsel reasonably acceptable to the Oregon Attorney General to defend such claim and all costs of such counsel shall be borne by

LEASE: STATE OF OREGON TO PORT OF ASTORIA

Tenant. The Oregon Attorney General's acceptance of such counsel shall not be unreasonably withheld, conditioned or delayed. Counsel must accept appointment as a Special Assistant Attorney General under ORS Chapter 180 before such counsel may act in the name of, or represent the interests of, the State of Oregon, Landlord, its officers, employees or agents. Landlord may elect to assume its own defense with an attorney of its own choice and its own expense at any time Landlord determines important governmental interests are at stake. Landlord agrees to promptly provide Tenant with notice of any claim that may result in an indemnification obligation hereunder. Subject to the limitations noted above, Tenant may defend such claim with counsel of its own choosing provided that no settlement or compromise of any such claim shall occur without the consent of Landlord, which consent shall not be unreasonably withheld, conditioned or delayed.

21.16  **Execution in Counterparts.** This Lease may be executed in two or more counterparts, each of which shall be an original, but all of which shall constitute one and the same instrument. For convenience of the parties the signature pages to any counterpart may be detached and reattached to a single counterpart.

21.17  **Inspection.** Landlord shall have the right personally and through Landlord's agents and employees to enter into and onto the Premises, with 24 hour prior notice, to inspect the Premises and examine the conditions thereof.

21.18  **Modification.** Any term or condition of this Lease may be modified upon mutual consent of both parties, but any such modification shall be effective and binding only upon execution by both parties or a written amendment to the Lease.

21.19  **Subordination and Attornment.** Landlord and Tenant will respond to each other's reasonable request for subordination or attornment agreement, provided such document shall clearly state that any successor in interest to Landlord or Tenant under this Lease shall assume and perform all the responsibilities and obligations of Landlord or Tenant under this Lease, as the case may be. Such document shall not contain any provision requesting Landlord to save, hold harmless or indemnify Tenant, a lender or any other third party.

21.20  **Entire Agreement.** This Lease, together with the attached exhibits, constitutes the entire agreement between the parties. No waiver, consent, modification or change of terms of this Lease shall bind either party unless in writing and signed by both parties. Such waiver, consent, modification or change, if made, shall be effective only in the specific instance and for the specific purpose given. There are no understandings, agreements or representations, oral or written not specified herein regarding this lease. Tenant, by the signature below of its authorized representative hereby acknowledges that tenant has read this Lease, understands it and agrees to be bound by its terms and conditions. This Lease supersedes all prior or existing lease or rental agreements between the parties with respect to the land leased hereunder.

*(The remainder of this page intentionally left blank.)*
*( Signature page follows.)*

LEASE:  STATE OF OREGON TO PORT OF ASTORIA

Exhibit 1
Page 33 of 38

IN WITNESS WHEREOF, Landlord and Tenant have by their duly authorized representatives executed this Lease effective the date first above written.


**LANDLORD**
State of Oregon, by and through its
Department of State Lands

By: ~~Ann Hanus~~ 11/9/04
~~Assistant~~ Director

**TENANT**
Port of Astoria, an Oregon Port

By: _____
Authorized Signature


LEASE:  STATE OF OREGON TO PORT OF ASTORIA

26311-LE
PAGE 34 OF 37

Exhibit 1
Page 34 of 38
OLNG

SURVEYING                                    5038612569                    P.02

November 17, 2004

## DESCRIPTION OF A TRACT OF LAND
## ON THE EAST BANK OF THE SKIPANON RIVER
### FOR
### THE PORT OF ASTORIA

Beginning at the intersection of the easterly projection of the south boundary of Block 9 in the plat of Portoria, Clatsop County, Oregon, with the meander line as surveyed by U.S. Government surveyors along the northeasterly boundary of the N.A. Eberman Donation Land Claim in T8N, R10W, W.M.; thence east along the easterly projection of said south boundary 200 feet, more or less, to the line of ordinary high water on the west bank of Youngs Bay; thence northerly and westerly along said line of ordinary high water and the line of ordinary high water on the south bank of the Columbia River to the line of ordinary high water on the east bank of the Skipanon River; thence southerly along the line of ordinary high water on the east bank of the Skipanon River to an intersection with a line located parallel with and 100 feet north of the south boundary of Block 1 in the plat of Portoria; thence east along said line to an intersection with the northerly projection of the east boundary of said Block 1; thence south along said projection 50.5 feet to the northeast corner of Lot 7, said Block 1; thence S85°43'E along the north boundary of the plat of Portoria 100.42 feet to a point located 100 feet east of, when measured at right angles to, the east boundary of said Block 1; thence north, parallel with the east boundary of said Block 1, to an intersection with said meander line along the northeasterly boundary of the N.A. Eberman D.L.C.; thence southeasterly along said meander line to the point of beginning.

REGISTERED
PROFESSIONAL
LAND SURVEYOR

*Karl F. Foeste*

OREGON
JULY 12, 1966
KARL F. FOESTE
0849

Renews 1/1/2006

26311-LE
Page 35 of 37

Exhibit 1
Page 35 of 38

## EXHIBIT "B"

_____

Space above this line for recorder's use

After Recording, return to:
    Oregon Department of State Lands
    Attn: Stephen J. Purchase, Assistant Director
    775 Summer Street NE, Suite 100
    Salem, OR 97301-1279

## MEMORANDUM OF LEASE

DATE: _____

BETWEEN:    STATE OF OREGON, acting by
              and through its Department of
              State Lands ("Landlord")

AND:         PORT OF ASTORIA ("Tenant")

Pursuant to a lease agreement entered into by Landlord and Tenant on _____ ("the Lease"), Landlord has leased to Tenant certain real property located at _____ _____, City of _____, in _____ County, Oregon; this leasehold is more particularly described in Exhibit A, attached hereto and by this reference made a part hereof.

This Memorandum of Lease is executed to evidence and confirm the Lease, to which reference is made for its terms and conditions, which include the following:
* The initial Term of the Lease is for five years (5) with two (2) renewal options of thirty (30) years each.
* Landlord has a right to sell the property that is the subject of the Lease subject to the Tenant's rights under this Lease.

This memorandum of Lease shall be recorded in the real property records of Clatsop County, Oregon, in order to give notice of the existence of the Lease. This Memorandum of Lease shall not be deemed or construed to define, limit, or modify the Lease, or any provision thereof, in any manner.

**LANDLORD**
State of Oregon, by and through its
Department of State Lands

By: _____
      Assistant Director

**TENANT**
Port of Astoria, an Oregon Port

By: _____
      Authorized Signature

LEASE: STATE OF OREGON TO PORT OF ASTORIA

26311-LE
PAGE 36 OF 37

Exhibit 1
Page 36 of 38
OLNG

## ACKNOWLEDGEMENT OF LANDLORD

STATE OF OREGON )
                      ) ss.
County of Marion      )

Appeared before me on _____, by _____who
represented that he executed this Memorandum of Lease on behalf of the **State of Oregon**,
acting by and through its Department of State Lands, and that this Memorandum of Lease is his
voluntary act and deed.

_____
Notary Public for Oregon
My commission Expires _____


## ACKNOWLEDGEMENT OF TENANT

STATE OF OREGON )
                      ) ss.
County of _____ )

Appeared before me on _____ by _____who
represented that he executed this Memorandum of Lease on behalf of **Port of Astoria** and that
this Memorandum of Lease is his voluntary act and deed.

_____
Notary Public for Oregon
My commission Expires _____


Memorandum of Lease



# EXHIBIT SHOWING TRACT OF LAND TO BE CONVEYED
## BY PORT OF ASTORIA TO STATE OF OREGON

CITY OF WARRENTON OREGON
SECTION 15, T8N, R10W, W.M.

SCALE: 1" = 400'

NOTE:

LINE OF MEAN HIGH WATER IS 7.7 FT. M.L.L.W. AT WARRENTON

Exhibit 1
Page 38 of 38
OLNG

# Oregon

Theodore R. Kulongoski, Governor

**Department of State Lands**
775 Summer Street NE, Suite 100
Salem, OR 97301-1279
(503) 378-3805
FAX (503) 378-4844
www.oregonstatelands.us.

**State Land Board**

Theodore R. Kulongoski
Governor

Bill Bradbury
Secretary of State

Randall Edwards
State Treasurer

November 16, 2004

Ron Larsen
Port of Astoria
#1 Portway Street
Astoria, OR  97103

RE:    State Lease LE-26311

Dear Mr. Larsen:

Thank you for the recently submitted sublease agreement between you and Skipanon Natural Gas, LLC.  Pursuant to paragraph 12.2 (j) of the above referenced state lease, the Department of State Lands hereby approves the sublease agreement.  Please keep in mind that the Port of Astoria, as Tenant, remains ultimately responsible for performance of all of Tenant's obligations and duties under this sublease.

Enclosed are both originals of the agreement.  The Department has signed them both. Please obtain the necessary signature on both originals of the Memorandum of Sublease and return a fully executed original of both the Sublease and Memorandum to us for our files.

If I can be of further assistance, please call me at extension 279.  Thank you.

Sincerely,

Stephen J. Purchase
Assistant Director
Field Operations

SJP/

c:    Skipanon Natural Gas, LLC

Exhibit 2
Page 1 of 40
OLNG

# SUBLEASE AGREEMENT

THIS SUBLEASE AGREEMENT (the "Sublease") is made and executed as of the 5th day of November, 2004, by and between the Port of Astoria, an Oregon Port ("Landlord"), and Skipanon Natural Gas, LLC, a Delaware Limited Liability Company, ("Tenant"), for the Premises Landlord is leasing from the Oregon Department of State Lands by lease of even date.

## ARTICLE 1
## Definitions

**Anniversary Date** means the date which occurs annually each year during the Term of the Sublease on the anniversary of the Commencement Date.

**Approved Sublease Form.** "Approved Sublease Form" means a sublease agreement in a form that is from time to time throughout the Term hereof provided by Landlord, to be used by Tenant in connection with subleasing all or any part of the Premises. There may be more than one Approved Sublease Form. Tenant may submit a tenant sublease form for approval by Landlord which approval shall not be unreasonably withheld.

**Approved Use.** "Approved Use" or "Approved Uses" means a use of the Premises described in Section 5.1 or to which Landlord has given written consent.

**Commencement Date.** "Commencement Date" means the date upon which this Sublease is executed by the Landlord or Tenant.

**Cancellation Notice.** "Cancellation Notice" means written confirmation of cancellation of this Sublease.

**Construction Work.** "Construction Work" means any grading or excavating for, or the building or demolition of, an Improvement on the Premises performed by or for Tenant.

**Contractor.** "Contractor" means a licensed, bondable, reputable contractor selected by Tenant or any Subtenant in accordance with the terms of this Sublease or an approved Sublease under Section 7.2.

**Design Professional.** "Design Professional" means a suitably qualified and experienced architect or engineer licensed to practice as such in the State of Oregon.

**Estoppel Certificate.** "Estoppel Certificate" means a statement from Landlord or Tenant certifying that this Sublease is unmodified and in full force and effect without default, or, if there have been modifications or defaults, that this Sublease is in full force and effect as modified or subject to such claims as are set forth in the statement.

**Governmental Authority.** "Governmental Authority" means any Federal, State or local jurisdiction that exercises authority over the Premises or the activities of Tenant.

Exhibit 2
Page 2 of 40
OLNG

**Hazardous Materials.** "Hazardous Materials" means any material regulated by federal or state environmental protection laws or any material that may pose a threat to human health or the environment, including without limitation, hazardous substances, pesticides, herbicides, or petroleum products.

**Impositions.** "Impositions" means all taxes, assessments, fees and other special or general charges assessed against the Land by a taxing body or regulatory authority.

**Improvements.** "Improvements" means all buildings, structures, fixtures, fences, interior roads, garages, parking lots, fountains, utility installations, excavations, surfacing, water banks or channels, landscaping, grading and plantings which are currently located on the Premises and, following completion, all Construction Work to be performed on the Premises by Tenant or at Tenant's direction or under Tenant's authority in accordance with this Sublease, and applicable codes and ordinances, including without limitation the Marine Industrial Facilities.

**Institutional Lender.** "Institutional Lender" means a commercial provider of financing in the form of mortgages or loans secured by one or more deeds of trust.

**Insurance Trustee.** "Insurance Trustee" means a neutral third party appointed by Landlord and Tenant for the purpose of holding and disbursing insurance proceeds following a casualty loss.

**Land.** "Land" means the Landlord-leased real property situated in the County of Clatsop, State of Oregon, more particularly described in Exhibit A, attached hereto, that is the subject of the Sublease, and all real property added thereto pursuant to a, approved fill permit obtained by Tenant or one of its Subtenants.

**Landlord.** "Landlord" means the Port of Astoria, an Oregon Port, or its successors and assigns.

**Late Payment Rate.** The "Late Payment Rate" means the maximum rate of interest permitted by applicable law after a default, such rate not to exceed nine (9) percent annually.

**Leasehold Mortgage.** "Leasehold Mortgage" means any mortgage, deed of trust, or other security instrument encumbering Tenant's leasehold estate created hereby and which is in favor of an Institutional Lender.

**Leasehold Mortgagee.** "Leasehold Mortgagee" means the holder, trustee or beneficiary of a Leasehold Mortgage who is an Institutional Lender.

**Marine Industrial Facilities.** "Marine Industrial Facilities" means those facilities and structures associated with Marine Industrial Purposes.

**Marine Industrial Purposes.** "Marine Industrial Purposes" means maritime related actives and operations including but not limited to foreign commerce, shipping, berthing, liquified natural gas (LNG) importing, storage, and regasification with associated natural gas pipelines.

PAGE 2 OF 39

Exhibit 2
Page 3 of 40
OLNG

**Master Development Plan.** "Master Development Plan" means the plan developed by Landlord and Tenant for construction of a Golf Course and Marine Industrial Facilities as described in Section 5.2 below.

**Person.** "Person" means any entity, whether an individual, trustee, corporation, partnership, trust, unincorporated organization or otherwise.

**Premises.** "Premises" means Tenant's leasehold interest in the Land and any Improvements situated thereon.

**Rent.** "Rent" means the annual payment specified in Sections 4.1 and 4.2 that is due from Tenant in consideration for the possession and use of the Premises.

**State.** "State" means the State of Oregon, in more particular the Division of State Lands (DSL).

**Sublease.** "Sublease" means this Sublease Agreement together with all Exhibits attached hereto. This Sublease is subject to:

a) all applicable state and federal statutes, rules, and regulations in effect on the Commencement Date of this Sublease, and insofar as is constitutionally permissible, and

b) all statutes, rules, and regulations which become effective after the Commencement Date of this Sublease.

**Sublease Year.** "Sublease Year" means a year of 365 days (366 days in a leap year) commencing on the Commencement Date and each subsequent Anniversary Date.

**Sub-Sublease.** "Sub-Sublease" means a subsidiary lease from Tenant to a Subtenant, approved by the Landlord, of all or any portion of the Premises or the Improvements in which the interest so transferred is less than Tenant's entire interest hereunder.

**Subtenant.** "Subtenant" means any person or entity occupying space in the Premises under a Sub-Sublease approved by the Landlord.

**Tenant.** "Tenant" means Skipanon Natural Gas, LLC and Tenant's successors and assigns hereunder.

**Term.** "Term" means the period of time during which this Sublease shall be in effect, as described in Sections 3.1 and 3.2.

**Unavoidable Delay.** "Unavoidable Delay" means delay due to strikes, lockouts, acts of God, unavailability of labor or material, embargoes, war, enemy action, terrorist attack, civil commotion, fire, windstorm, flood, explosion, earthquake, unavoidable casualties, building or use moratorium imposed by applicable Governmental Authority, activities necessary to remediate any environmental condition of the Premises not caused by Tenant, or other similar causes beyond the reasonable control of Tenant, including any delay caused by the act or omission of Landlord.

Exhibit 2
Page 4 of 40
OLNG

**Utilities.** "Utilities" means all services and public utilities delivered to, provided for, or consumed on the Premises, including, without limitation, such services as janitorial and garbage pick-up and such utilities as natural and propane gas, water, sewer, storm sewer, electricity, cable television, and telephone and telefacsimile services.

**Work.** "Work" means all construction work, development and improvements to the Premises to be performed by or on behalf of Tenant or Subtenant.

## ARTICLE 2
## Sublease of the Premises

2.1    **Demise.** Landlord hereby leases to Tenant and Tenant hereby hires from Landlord, the Premises located at Township 8 North, Range 10 West, Section 14, Clatsop County, Oregon more particularly described in Exhibit A.

PROVIDED, HOWEVER, that the Premises shall at all times during the Term of this Sublease be subject to the rights of Landlord and to the limitations on uses set out in this Sublease. Landlord for itself and for the State of Oregon also specifically reserves the right to use all access roads and easements serving Landlord's adjacent real property, and to use the Premises as necessary to access such real property that is not subject to this Sublease.

2.2    **Sale of Premises.** Landlord reserves the right to purchase a Fee Interest in the Land from the State of Oregon and to subsequently sell Landlord's Fee Interest in all or any part of the Land at any time during the term of this Sublease. Any such sale or sales of the Land shall be made subject to Tenant's rights under this Sublease.

2.3    **Encumbrances; Reservation of Rights.** This Sublease is subject to the following matters to the extent that they affect the Premises:

a)    Any lien, charge, claim or other encumbrance whether of record or not, to the extent valid and subsisting and affecting the Premises;

b)    The effect of all present building restrictions and regulations and present and future zoning laws, ordinances, resolutions and regulations and all present ordinances, regulations and orders of all boards, bureaus, commissions and bodies and any county, state or federal agency, now having, or hereafter having acquired, jurisdiction of the Premises and the use and improvement thereof, including, but not limited to, the Clatsop County Comprehensive Plan and Revised Code (including Zoning Ordinance);

c)    The condition of the Premises on the Commencement Date;

d)    All taxes (including local improvement rates), duties, assessments, special assessments, water charges and sewer rents and any other Impositions, accrued or unaccrued, fixed or not fixed;

e)    Any facts and any current violations of law, ordinances, orders or requirements that might be disclosed by an accurate physical survey, or an examination and physical

PAGE 4 OF 39

Exhibit 2
Page 5 of 40
OLNG

inspection or search of the Premises by any Governmental Authorities, as the same may exist on the Commencement Date; and

f) Landlord's reserved right to locate, construct, install, and maintain sewers, utility lines, dredge pipes, transit tubes, telecommunications lines, and similar installations or facilities in, on, under, over or across the Premises, and, further, Landlord's right to grant to third parties, rights of way, easements, or other rights to come on, move under, over, or across, gain access to, or otherwise use the Premises during the term of this Sublease provided, that said Landlord's reserved right shall not unreasonably interfere with the right of quiet enjoyment of the Tenant and any Subtenant, and that Landlord shall provide reasonable prior notice in the event Landlord intends to exercise said reserved right.

## 2.4    Tenant's Waiver of Claims and Indemnification.

a)    Tenant hereby acknowledges that it has had the opportunity to undertake all inspections and investigations of the Premises as it deems necessary; has requested of Landlord, and has reviewed, all reports, studies and investigations of the Premises as it deems necessary, and has otherwise undertaken such due diligence as it deems appropriate with respect to the Premises. Tenant acknowledges that it is leasing and accepts the Premises and the Improvements on an "As Is" and "Where Is" basis. Tenant acknowledges and agrees that Landlord has not made nor is Tenant relying upon any representations or warranties made with respect to the Premises, including but not limited to, the condition of the Premises, the use(s) to which the Premises may be put or for which the Premises may be developed.

b)    Tenant hereby releases and waives claims against Landlord, its officers, public officials, employees, agents or contractors for injury or damage to person, property, or business sustained in or about the Premises by Tenant, its agents, employees, invitees, customers, Subtenants or other occupants or users of the premises, which injury or damage results from any act, neglect, occurrence, or condition (including pre-existing conditions) in or about any Improvement or the Premises, unless such damage is caused by Landlord, its officers, public officials, employees, agents or contractors.

c)    Tenant shall defend, indemnify and hold  Landlord and the State'sFee Interest under this Sublease free and harmless from and against any and all liability, claims, loss, damages, penalties, fines, causes of action and expenses resulting from Tenant's occupation and use of the Premises prior to or during or after the Term of this Sublease, and from the use and occupancy of the Premises by any Person on or after the Commencement Date, specifically including, without limitation, any liability, claim, loss, damage, penalties, fines, causes of action and expense incurred or suffered by Landlord and arising by reason of:

i.    The death or injury of any person, including any person who is an officer, employee, or agent of Tenant, by reason of the condition of the Premises, damage to or destruction of any property, including property owned by Tenant or by any Person who is an employee or agent of Tenant, from any cause

PAGE 5 OF 39

Exhibit 2
Page 6 of 40
OLNG

whatsoever (other than any act or omission of Landlord, its officers, employees, or agents) while such person or property is in or on the Premises or any of the Improvements;

ii. Tenant's failure to perform any provision of this Sublease or, subject to any rights to contest provided Tenant herein, to comply with any requirement of law or any requirement imposed on Tenant in connection with the Improvements thereon, or the Premises, by any duly authorized Governmental Authority; or

iii. Any occurrences for which Tenant's waiver set out in Section 2.4(b) applies.

2.5    **Landlord's Waiver of Claims.**  Landlord hereby waives and releases Tenant, its officers, employees, agents or contractors from any and all liability, claims and damages of any type or kind that are caused by or are the proximate result of the acts or omissions of Landlord, its officers, employees or agents, except to the extent that the liability, claims or damages are related to or arise out of activities or omissions by Tenant, its agents, employees, contractors, or Subtenants.

## ARTICLE 3
## Term

3.1    **Term.**  The Term of this Sublease shall commence on the Commencement Date and shall expire on the **fifth (5th)** Anniversary Date of the Commencement Date.

3.2    **Renewal.**  The Tenant shall have additional options to extend the Sublease for **two (2)** additional terms of **thirty (30)** years each, provided that at the time the option is exercised, Tenant is a tenant in good standing and is not in material default under this Sublease. Each option shall be exercised by Tenant by providing written notice to Landlord not less than 180 days prior to the expiration of the then current Term of this Sublease.

3.3    **Feasibility Determination.**  During the first term of this lease, upon a determination by Tenant, made in its sole discretion, that the development of the contemplated Marine Industrial Facilities is not feasible, Tenant may terminate this Sublease by providing written notice to Landlord not less than 180 days prior to an anniversary of the Commencement Date of the Sublease, provided that such termination may not be effected on or before the second anniversary of the Commencement Date.

## ARTICLE 4
## Rent

4.1    **Payment of Annual Rent.**  Commencing on the Commencement Date and on each Anniversary Date thereafter, except as may otherwise be provided herein, Tenant shall pay to Landlord Annual Rent in advance for the twelve month period then beginning, without any abatement or deduction, but with an offset for the mutually agreed upon cost of initial land appraisal and survey to determine Fair Market Value. The annual Rent for the first five (5) years of this Sublease, shall be $ 38,400. Rent thereafter shall be determined as provided in Section 4.2 below.

PAGE 6 OF 39

Exhibit 2
Page 7 of 40
OLNG

4.2    **Rent Redetermination.**  On each fifth (5th) year anniversary of the Commencement Date the Annual Rent shall be adjusted based on the then current fair market value of the bare Land as determined by the parties' agreement and if no such agreement can be reached then by a State certified appraiser selected by Tenant and approved by Landlord.  Selection of an appraiser shall occur not later than six (6) months prior to the end of each five (5) year anniversary of the Commencement Date of this Sublease.  If the Tenant and Landlord cannot agree on the selection within three (3) months prior to the expiration of each five (5) year anniversary, Landlord shall have the right to use the appraiser, who was selected by Landlord and State for the appraisal .  In any event, the costs of the appraisal shall be shared equally by Tenant and Landlord.

4.3    **Payment Bond.**  During the Term (subject to Section 3.2 and Section 3.3), Landlord and Tenant agree that Tenant will reimburse Landlord for the cost of the payment bond required of the Landlord under its lease with the State.

4.4    **Place for Payment of Rent.**  All Annual Rent due and payable under this Sublease shall be paid to Landlord at 1 Portway Street, Astoria OR  97103 Attention: finance director or such other place as Landlord may from time to time designate by written notice given to Tenant.

4.5    **No Partnership and No Principal-Agent Relationship.**  Nothing in this Sublease shall be construed to render Landlord in any way or for any purpose a partner, joint venturer, or associate in any relationship with Tenant other than that of Landlord and Tenant, nor shall this Sublease be construed to authorize either to act as agent for the other except as expressly provided to the contrary herein.  Further, Tenant is not an "officer," "employee," or "agent" of Landlord, as those terms are used in ORS 30.265.

4.6    **Rental Increase Due to Fill Permit:**    In the event that Tenant or one of its Subtenants apply for and obtain the right to add fill to the Land thereby creating additional acreageLandlord agrees to rent such acreage to Tenant and Tenant's rent shall be increased proportionally based on the proportional increase in the size of the Land resulting from such fill.

## ARTICLE 5
## Uses of the Premises

5.1    **Approved Uses.**  The Premises shall be improved, used and maintained by Tenant for the construction and development of the Marine Industrial Facilities.  Use and development of the Premises shall be stated in the "Memorandum of Sublease" between Tenant and Landlord attached hereto and made a part of this Sublease as Exhibit B.  In the event of conflict between the "Memorandum of Sublease" and this Sublease, this Sublease shall be the controlling document.

Tenant shall ensure that its use of the Premises complies at all times during the Term with all applicable laws and regulations, including but not limited to all building restrictions and regulations and zoning laws, ordinances, resolutions and regulations and all ordinances, regulations and orders of all boards, bureaus, commissions and bodies and any county, state or federal agency, now having, or hereafter having acquired, jurisdiction of the Premises and the use and improvement thereof.

Exhibit 2
Page 8 of 40

5.2   **Master Development Plan for Golf Course and Marine Industrial Purposes.** Within two (2) years after the Commencement Date and prior to any Construction Work, Landlord and Tenant will develop and submit to State for State's approval a Master Development Plan to Govern Landlord's and Tenant's construction and development of the Golf Course and Marine Industrial Facilities on the Land. The Master Development Plan will provide for the best use of the Land and ensure that sufficient land is available to the Marine Industrial Facilities to allow it to meet all its permit requirements. Landlord and Tenant will make no material changes to the Master Development Plan without the prior written consent of State.

5.3   **No Impairment of Reversionary Rights.** Tenant shall not suffer or permit the Premises, or any portion thereof, to be used by the public, as such, in a manner which would permit a claim or claims of:

a)   adverse usage or adverse possession by the public, as such, or

b)   implied dedication of the Premises or any portion thereof to the public, as such.

Any easements, dedications or other similar rights or obligations created or granted by Tenant shall affect only Tenant's leasehold estate in the Premises and shall not encumber or affect the State or Landlord's interest in the property without Landlord's prior written consent.

5.4   **No Use in Violation of Law.** Tenant will not use or allow the Premises or any part thereof to be used or occupied for any purpose other than the use authorized in Section 5.1 or, notwithstanding Section 5.1, for any unlawful purpose or in violation of any certificate of occupancy or certificate of compliance covering or affecting the Premises, or any part thereof, and Tenant will not suffer any dangerous condition to exist on the Premises or any part thereof unless appropriately safeguarded, and Tenant will not do or suffer to be done any act on the Premises which, in law, constitutes a nuisance, public or private, or which may make void or voidable any insurance then in force with respect thereto. Tenant shall not be deemed to be in violation of the terms and provisions of this Section 5.4 as the result of acts or omissions of a Subtenant so long as Tenant is proceeding in good faith and with due diligence to correct or remedy such acts or omissions or to terminate the defaulting Subtenant's Sub-Sublease and regain possession of the Subtenant's Premises.

## ARTICLE 6
## Taxes and Utilities

6.1   **Payment of Impositions.** In addition to the annual Rent required to be paid under this Sublease, Tenant shall pay or cause to be paid, and Tenant hereby agrees to pay, Tenant's share of all Impositions falling due or applicable during the Term of the Sublease and any extended Term, if applicable. Any and all Impositions and installments of Impositions required to be paid by Tenant under this Sublease shall be paid by Tenant before each such Imposition or installment becomes delinquent and a true and correct copy of the official receipt for the payment of such Impositions shall be delivered to Landlord within fifteen (15) calendar days after the date such Impositions would be delinquent as provided by law. The payment of Impositions and all other sums required to be paid by Tenant under this Sublease shall constitute additional rent.

PAGE 8 OF 39

Exhibit 2
Page 9 of 40
OLNG

6.2     **Change in Method of Taxation.**  If at any time during the Term the methods of taxation in effect on the Commencement Date shall be altered so that the whole or any part of the Impositions commonly considered as real estate taxes now levied, assessed or imposed on real estate and the improvements thereon shall be discontinued and as a substitute therefor, or in addition thereto, taxes on the rent derived from the Premises shall be imposed upon Landlord and the purpose of the new tax is more closely akin to that of an ad valorem or use tax than to an income or franchise tax on Landlord's income, then all such substitute taxes, assessments, levies, impositions or charges, to the extent that they are so measured or based, shall be deemed to be included within the term "Impositions" for the purposes hereof, to the extent that such substitute taxes would be payable if the Premises were the only property of Landlord subject to such tax. Tenant shall pay and discharge the substitute tax or additional tax, as the case may be, upon receipt from Landlord of a statement setting forth in reasonable detail the basis on which the substitute tax constitutes an "Imposition" hereunder and the calculation of the amount due.

6.3     **Impositions Payable in Installments.**  If, by law, any Imposition levied on or assessed against the Premises, and/or Tenant's interest therein, may, at the option of the taxpayer, be paid in installments, then Tenant shall have the option of paying such Imposition or special or general assessment in installments as the same become due.  The fact that the exercise of the option to pay the Imposition or assessment in installments will cause interest to accrue on the Imposition or assessment is immaterial and shall not interfere with the free exercise of the option by Tenant.  Landlord shall cooperate with Tenant and on written request of Tenant execute or join with Tenant in executing any instruments required to permit any such tax or special or general assessment to be paid in installments.

6.4     **Impounds.**  At any time during the Term hereof, if an Event of Default of a nature or kind that has previously occurred and been cured, reoccurs, Landlord, at Landlord's option, shall have the right to require Tenant to deposit monthly with a commercial banking institution selected by Landlord (the Depository), to be held in a separate account (the Deposit Account), bearing interest at rates then prevailing for such type account:

a)     one-twelfth (1/12th) of the annual Impositions, and insurance premiums required hereunder, and

b)     an additional sum which when added to the monthly deposits thereafter to be made will be sufficient to pay such Impositions and insurance premiums when they become due. The agreement with the Depository establishing the Deposit Account shall provide that checks drawn thereon may be signed by either a representative of Landlord or a representative of Tenant if drawn to the order of the Governmental Authority to whom Impositions are payable or to the broker or insurer to whom insurance premiums are payable, and that checks drawn thereon shall be signed by a representative of Landlord and a representative of Tenant if drawn to the order of any other person or entity.

In the event that the amount of Impositions or insurance premiums shall not have been fixed at the time when any such monthly deposit is required to be made, Tenant shall make such deposit based upon the amount of the Impositions levied or assessed and the amount of insurance premiums paid for the immediately preceding calendar year, subject to adjustment as and when the amount of such Impositions and insurance premiums are ascertained. All sums deposited in the Deposit Account shall be applied to the payment of Impositions and insurance premiums in the months during which such Impositions become due and payable each year. The interest earned on

Exhibit 2
Page 10 of 40
OLNG

the Deposit Account shall be credited against the next monthly deposit installment coming due. All costs and expenses of the Depository in maintaining the Deposit Account shall be paid by Tenant.

Nothing herein contained shall relieve or release Tenant from the absolute obligation to pay directly to the tax officials or authorities all Impositions when due, in the event Tenant shall fail to furnish Landlord with the bills, and deposits, if any, required to be furnished pursuant to the foregoing.

6.5   **Right to Contest Impositions.**   Tenant shall have the right to contest, oppose, or object to the amount or validity of any Imposition levied on or assessed against the Premises, Improvements, and/or Tenant's interest therein, or any part thereof.   Tenant shall give written notice of the contest, opposition, or objection to Landlord within a reasonable time prior to the time such contest is filed.   Unless Landlord's joinder is required as a jurisdictional matter or by any law, rule or regulation in order to make such action or proceeding effective (and in such event Landlord shall join solely for the purpose of allowing Tenant to proceed with its contest and Tenant shall pay the costs incurred by Landlord in connection with such joinder; provided, however, no such joinder shall preclude Landlord from supporting any valuation of the Premises made for the purposes of assessing taxes thereon which valuation Tenant has elected to contest), Landlord shall not be required to join in or cooperate in any such contest, opposition or objection, nor shall Landlord be required to expend any monies in this connection, nor shall Landlord be liable for any costs or expenses incurred or awarded in the proceeding.   Further, no such contest, opposition, or objection shall be commenced, continued or maintained after the date on which the Imposition, assessment, or other charge being contested becomes delinquent unless Tenant has either:

a)   Paid such Imposition, or other charge under protest prior to delinquency; or

b)   Obtained and maintained a stay of all proceedings for enforcement and collection of the tax, assessment, or other charge by posting such bond or other security required by law for such a stay; or

c)   Delivered to Landlord good and sufficient security in an amount specified by Landlord for the payment by Tenant of the Imposition, assessment, or charge together with the amount of any fines, interest, penalties, costs, and expenses that may have accrued or been imposed thereon in connection with Tenant's contest, opposition, or objection to such Imposition, or other charge. Any rebate or refund of Impositions by reason of such contest shall be paid to Tenant.

6.6   **Tax Returns and Statements.**   Tenant shall, as between Landlord and Tenant, have the duty of preparing, making, and filing any statement, return, report, or other instrument required or permitted by law in connection with the determination, equalization, reduction, or payment of any taxes, special or general assessments, or other charges that are or may be levied on or assessed against the Premises, any portion of the Premises, any interest in the Premises, any Improvements or other property on the Premises.

6.7   **Tax Indemnification and Hold Harmless Clause.**   Tenant shall indemnify and hold Landlord and the Premises free and harmless from any liability, loss, cost or expense incurred by Landlord as a result of Tenant's failure to pay the Impositions or other charges as required by this Sublease to be paid by Tenant and from all interest, penalties, and other sums imposed thereon and from any sale or other proceeding to enforce collection of the Impositions or other charges.

Exhibit 2
Page 11 of 40
OLNG

6.8 **Utilities.** Tenant shall pay or cause to be paid and hold Landlord and the Premises, free and harmless from all charges for the furnishing of Utilities to the Premises and Improvements during the Term of this Sublease and for the removal of garbage and rubbish from the Premises and Improvements during the Term of this Sublease.

6.9 **Payment by Landlord.** Should Tenant fail to pay within the time specified in this Sublease any Impositions, charges for Utilities or other charges required by this Sublease to be paid by Tenant, or should Tenant fail to commence to contest such taxes, assessments, or other charges pursuant to this Article 6, then Landlord may, after prior written notice to Tenant and all Leasehold Mortgagees advising Tenant of its intention to do so (except that no prior written notice shall be required if an emergency exists or if, during the time required to give such notice, additional penalties would be incurred), pay, discharge, or adjust such Impositions, Utilities or other charges for the benefit of Tenant. In such event, Tenant shall promptly on written demand of Landlord reimburse Landlord for the full amount paid by Landlord in discharging or adjusting such tax, assessment, Utilities or other charge together with interest thereon at the Late Payment Rate from the date of payment by Landlord until the date of repayment by Tenant. Where no time within which any charge required by this Sublease to be paid by Tenant is specified in this Sublease, such charge must be paid by Tenant before it becomes delinquent.

## ARTICLE 7
### Construction

7.1 **Permit Notification.** Prior to commencement of any Construction Work, including excavation work, for the Marine Industrial Facilities or any other Improvements started after the Commencement Date of this Sublease, and before any building materials have been delivered to the Premises by Tenant or under Tenant's direction or authority, Tenant shall comply with all the following conditions or obtain Landlord's written waiver of the condition or conditions specified in the waiver:

a) **Preliminary Plans.** Tenant shall deliver to Landlord for Landlord's reasonable approval, which approval will not unreasonably or in an untimely manner be withheld, one (1) set of preliminary construction plans and specifications (Preliminary Plans) at least seventy (70) calendar days prior to the proposed date for commencing the Construction Work.

The Preliminary Plans shall be prepared by a design professional or engineer licensed to practice as such in Oregon. The Preliminary Plans shall include, as applicable, preliminary grading and drainage plans, plant layouts, visual simulations, preliminary foundation designs, soil tests, utilities, sewer and service connections, locations of ingress and egress to and from public thoroughfares and the curbs, gutters, parkways, street lighting, storage areas, plazas, public areas and landscaping

b) **Final Plans.** Upon approval of Landlord, which approval shall not be unreasonably withheld, the Preliminary Plans shall be used as the basis for Tenant's "Final Plans" copies of which will be provided to Landlord. Tenant shall consider in good faith any comments Landlord may have on such Final Plans prior to submitting such plans to any governmental agency.

PAGE 11 OF 39

Exhibit 2
Page 12 of 40

c)   **Building Permit.** Tenant shall, at its own cost and expense:

i.   cause the Final Plans, or such appropriate parts thereof as may be necessary, to be filed with the appropriate governmental agencies ("Building Department"); and

ii.   as a condition to commencing any phase of construction for which a permit is necessary, obtain such permits.

Promptly after issuance, a copy of each permit shall be delivered to Landlord. After such permit or permits are issued based upon the plans previously approved by Landlord, Tenant shall, at Tenant's sole cost and expense, proceed with diligence and continuity to carry out the Construction Work in accordance with the Final Plans and the requirements of all applicable governmental agencies. Landlord agrees, if requested by Tenant, to join in any request for authorization or application in connection with Tenant's performance of the Construction Work on the Premises or conducting business thereon at no cost to Landlord. Tenant may deliver working drawings and plans to any governmental body, or Institutional Lender, in connection with its application for a building permit or other permits provided that the same are first delivered to Landlord for approval as herein provided.

7.2   **Contractor.**   All Construction Work shall be performed by licensed, bondable, reputable Contractors registered with the Construction Contractors Board as required in ORS Chapter 701.

7.3   **Compliance With Law and Quality.**   The Construction Work shall be performed in accordance with all statutes, ordinances, regulations, and orders of all Governmental Authorities. All Construction Work performed on the Premises pursuant to this Sublease, or authorized by this Sublease, shall be done in a good and workmanlike manner, and only with materials of good and durable quality.

7.4   **Completion.**   Tenant shall cause all Construction Work to be diligently pursued without unnecessary interruption.

7.5   **Inspection.**   Landlord shall have the right, but not the obligation, to inspect the Premises in relation to the Construction Work at all reasonable times during normal business hours, upon reasonable prior notice to Tenant. Landlord's inspections shall not unreasonably interfere with the progress of such Construction Work. This Section shall in no way control any right of governmental inspection necessary and permitted under applicable codes and ordinances.

7.6   **Tenant's Construction Indemnity.**   Tenant hereby assumes entire responsibility and liability for any and all damages or injury of any kind or nature whatever to all persons, whether employees or otherwise, and to all property, arising from the performance of the Construction Work whether on the Premises, on adjacent property or on surrounding or nearby public streets, and shall defend, indemnify and hold harmless Landlord, and its officers, employees, and agents from and against any and all loss, costs and expenses, including reasonable attorneys, fees, damages or injury, incurred or suffered by Landlord and arising from, relating to, or occurring in connection with the Construction Work, excluding any negligence or willful misconduct of Landlord or Landlord's officers, employees, or agents.

Exhibit 2
Page 13 of 40
OLNG

7.7    **Construction by Subtenants.**  Tenant agrees that in the event it elects to allow a Subtenant to perform any Construction Work on the Premises, the provisions of this Article 7 will be included in this Sublease and the Construction Work shall comply with this Article.  Further, Tenant shall remain fully liable and responsible for Completion of the Construction Work in compliance with all the provisions of this Sublease.

## ARTICLE 8
## Liens and Mortgages

8.1    **No Liens Permitted On Reversion.**  Tenant will not create or permit to be created by its acts or omissions or the acts or omissions of its Subtenants, contractors or subcontractors or to remain, and will discharge, any lien, encumbrance or charge which might be or become a lien, charge, or encumbrance on the interest of State and Landlord or any part thereof and will also discharge any lien levied on account of any Imposition or any mechanic's, laborer's or materialman's lien, mortgage, conditional sale, title retention agreement, security agreement or otherwise which might be or become a lien, encumbrance or charge upon the interest of State and Landlord or any part thereof and which has any priority or preference over or ranks on a parity with the estate, rights and interest of Landlord in the Land or any part thereof; provided, however, nothing herein shall require payment by Tenant of any lien or encumbrance on the Premises created by Landlord's acts or omissions or which is imposed upon Landlord by reason of Landlord's ownership of the fee estate (other than the Impositions) regardless of the tenancy of Tenant and not caused by the acts or omissions of Tenant.  Tenant further agrees that Tenant will not, except as in this Sublease provided, suffer or create any other matter or thing whereby the reversionary estate, rights and interest of Landlord in the Premises or any part thereof might be impaired; and any Imposition shall, after the same becomes a lien on the Premises, be paid (or contested) by Tenant in accordance with Article 6 hereof, and any mechanic's, laborer's or materialman's lien incurred by Tenant shall be discharged (or contested) in accordance with Section 8.2 below.

8.2    **Mechanic's Liens.**  If any mechanic's, laborer's or materialman's lien shall at any time be recorded against the Premises or any part thereof, Tenant shall immediately provide a copy of such claim of lien to Landlord and within twenty (20) business days after notice to Tenant of such lien or claim of lien, will cause the same to be discharged of record by payment, deposit, bond, order of a court of competent jurisdiction or otherwise.  If Tenant shall fail to cause such lien to be discharged as herein provided within the period aforesaid, then, in addition to any other right or remedy which Landlord may have under this Sublease or otherwise, Landlord may, but shall not be obligated to, discharge the same either by paying the amount claimed to be due or by procuring the discharge of such lien by deposit or by bonding proceedings, and in any such event Landlord shall be entitled, if Landlord so elects, to defend the prosecution of an action for the foreclosure of such lien by the lienor and to pay the amount of any judgment in favor of the lienor with interest, costs and allowances included in such judgment, and recover such sums plus interest from Tenant.

8.3    **No Implied Consent.**  Nothing contained in this Sublease shall be deemed or construed in any way as constituting the consent or request of Landlord, express or implied by inference or otherwise, to any contractor, subcontractor, laborer or materialman for the performance of any labor or the furnishing of any materials for any specific improvement, alteration to or repair of the Premises or any part thereof, nor as giving Tenant any right, power or authority

PAGE 13 OF 39

Exhibit 2
Page 14 of 40
OLNG

to contract for or permit the rendering of any services or the furnishing of any materials that would give rise to the filing of any lien against the Landlord's Fee Interest or any part thereof if not paid.

8.4   **No Encumbrance of Leasehold Interest Without Prior Consent.**   Tenant, its successors and assigns shall not encumber the Leasehold interest of Tenant, nor mortgage or grant a security interest in Tenant's interest in this Sublease or the Premises or in any Sub-Subleases without the prior written consent of the Landlord, which consent shall not be unreasonably withheld.

## ARTICLE 9
## Maintenance and Repairs

9.1   **Maintenance by Tenant.**  Throughout the Term of this Sublease, Tenant, at its sole cost and expense, will take good care of the Premises and appurtenances thereto and every part of and portion thereof and any sidewalks, parking lots, garages, driveways, walls, concrete aprons, utility systems, piers, curbs and vaults adjoining and/or appurtenant to the Premises and will keep the same in good order and condition, and will make all necessary repairs and environmental remediation, as required by Article 16, thereto, interior and exterior, structural and non-structural, ordinary and extraordinary, and unforeseen and foreseen, all to the effect that the Premises shall throughout the Term of this Sublease be maintained in good condition, less normal wear and tear, suitable for their intended use.

9.2   **Requirements of Governmental Authorities.**  At all times during the Term of this Sublease, Tenant, at Tenant's own cost and expense, shall:

a)   Make all alterations, additions, or repairs to the Premises and/or the Improvements required by the terms of any applicable law, ordinance, statute, order, or regulation now or hereafter made or issued by any Governmental Authority; including, without limitation, Title III of the Americans with Disabilities Act of 1990, all regulations issued thereunder and the Accessibility Guidelines for Buildings and Facilities issued pursuant thereto, as the same are in effect on the Commencement Date of this Sublease and as may be hereafter modified, amended or supplemented.

b)   Observe and comply with all applicable laws, ordinances, statutes, orders, and regulations now or hereafter made or issued respecting the Premises and/or the Improvements by any Governmental Authority;

c)   Defend, indemnify and hold Landlord and the Premises free and harmless from any and all liability, costs, damages, fines, penalties, claims, and actions resulting from Tenant's failure to comply with or perform the requirements of this Section 9.2.

9.3   **No Duties on Landlord.**  Landlord shall not be required to furnish any services or facilities whatsoever or to make any repairs or alterations in or to the Premises or the Improvements. Tenant hereby assumes the full and sole responsibility for the condition, operation, repair, replacement, maintenance, development and management of the Premises and the Improvements throughout the entire Term of this Sublease.

Exhibit 2
Page 15 of 40
OLNG

## ARTICLE 10
### Ownership of Improvements

10.1 **Ownership of Improvements During Term.** All Improvements at any time constructed on the Premises by Tenant shall be owned by Tenant or Subtenants until expiration of the Term hereof or sooner termination of this Sublease as herein provided. Tenant or Subtenants or any successors to their rights shall not remove any Improvements from the Premises nor waste, destroy, or modify any Improvements except as permitted by this Sublease. Tenant may place fixtures, partitions, personal property, and the like in the Premises and may make nonstructural improvements and alterations to the Premises at its own cost and expense without approval from Landlord.

10.2 **Ownership at Termination.** Upon expiration or termination of this Sublease, Landlord shall have the option of acquiring all Real Property Improvements added to the Premises by Tenant upon paying Tenant the current fair market value for such Improvements, which fair market value is to be determined by a licensed appraiser selected by Tenant and approved by Landlord; or, with the consent of Landlord, which consent shall not be unreasonably withheld, Tenant may sell such Improvements to future leaseholders orremove any Improvements that Landlord or future leaseholders decline to buy. When any Improvements are removed, Tenant shall restore the Premises to as good a condition as the same were when first occupied by Tenant less normal wear and tear. Any Improvements not removed by Tenant or sold to future leaseholders upon the termination of this Sublease shall become and remain the property of Landlord. The cost for an appraisal shall be shared equally by the parties.

## ARTICLE 11
### Insurance

11.1 **Commercial General Liability Insurance.** Concurrent with the execution of this Sublease, Tenant, at Tenant's sole expense, shall procure and shall thereafter maintain in full force and effect throughout the entire Term of this Sublease, Commercial General Liability insurance against claims for injury or death to persons or damage to property occurring on or about the Premises with minimum limits of liability of $10,000,000 combined single limit for each occurrence. Such insurance shall include, but not be limited to, Bodily Injury Liability, Personal Injury Liability, Property Damage Liability, Broad Form Property Damage Liability, Sudden and Accidental Pollution, Fire Legal Liability, Contractual Liability, Products/Completed Operations Liability, and Liability for Property of Others in the care, custody, and control of Tenant.

The liability insurance shall cover all operations and activities of Tenant including, but not limited to, Tenant's own direct activities on and off the Premises, all construction, repair and improvement activities on and off the Premises and all explosion, collapse, and underground exposures associated with these activities.

11.2 **Property Insurance.** Concurrent with the execution of this Sublease, Tenant, at Tenant's sole cost and expense, shall procure and shall thereafter maintain in full force and effect throughout the entire Term of this Sublease, property insurance for those buildings and structures constructed before and after the Commencement Date of this Sublease, for the perils of all risks of direct physical loss covering all such property for its full replacement cost. Such coverage shall be

Exhibit 2
Page 16 of 40
OLNG

written on an agreed amount basis equal to one hundred percent (100%) of the full replacement costs and without a coinsurance clause.

The property insurance required under Section 11.2 shall include coverage for all demolition, contingent liability, and increased costs of construction as a result of the enforcement of any law, regulation, or ordinance that is in force at the time of the insured loss that requires the demolition of parts of the undamaged real property, or regulates the construction or repair of damaged real property.

The property insurance required under Section 11.2 shall provide a waiver of subrogation in favor of Landlord.

For the purposes of this Section 11.2 "full insurable value" shall mean the actual replacement cost of the Improvements. Such full insurable value shall be determined from time to time at the request of Landlord by an appraiser, engineer, Design Professional or contractor designated by Landlord and approved in writing by Landlord and paid for by Landlord or Tenant (at the discretion of Landlord), but Landlord's failure to request a determination or redetermination of full insurable value shall not relieve Landlord or Tenant of its obligation to maintain the insurance required by the terms hereof.

For the purposes of this Section 11.2 the property insurance shall insure all of the Improvements constructed on or placed on the Premises after the Commencement Date, as well as any and all additions thereto, against loss or destruction by windstorm, cyclone, tornado, hail, explosion, riot, riot attending a strike, civil commotion, malicious mischief, vandalism, aircraft, fire, smoke damage, boiler and machinery damage and sprinkler leakage. Further, during construction, or demolition, or reconstruction, the property insurance shall include "all risks" builders' risk insurance, with course of construction, vandalism, and malicious mischief clauses attached insuring the Improvements and all materials and equipment delivered to the site of said Improvements for their full insurable value, except in the event Tenant demonstrates to Landlord's reasonable satisfaction that the contractor for such work carries such "all risks" builder's risk insurance.

11.3 **Insurance Requirements.** All insurance policies required under this Sublease shall include these additional provisions, conditions, and requirements:

a)     The Landlord and State shall be named as additional insured on all policies.

b)     Tenant shall provide Landlord written notice of any cancellation or material modification to the policies purchased by Tenant at least forty (40) days prior to the effective date of such cancellation or change.

c)     Tenant shall provide properly executed Certificates of Insurance to the Landlord at least twenty (20) days prior to occupancy of the Premises and prior to commencement of any Construction Work, and thereafter, at least forty (40) days prior to the effective date of any renewal or replacement policy.

d)     All policies of insurance shall be issued by companies licensed or authorized to provide insurance in the State of Oregon and reasonably acceptable to Landlord.

Exhibit 2
Page 17 of 40
OLNG

e)   If Tenant shall fail or refuse to procure, pay for or keep in force the policies of insurance set forth herein, or to deliver evidence of such insurance to Landlord, Landlord may, at its election, place in force and/or from time to time renew such insurance. All amounts expended for such insurance, together with interest thereon at an annual rate of ten percent (10%) per annum, shall be additional rent due from Tenant to Landlord payable within fifteen (15) days after invoices are delivered to Tenant.

f)   Tenant may purchase an Umbrella Liability Policy to provide the limits of coverage specified for Sections 11.1 and 11.2 so long as such policy provides coverage at least as broad as specified for the individual policies, is equivalent or in excess of the limits specified for each individual policy, and the policy applies directly above (without gap in limit of liability) the individual underlying policy.

g)   Unless otherwise specifically agreed in writing by the Landlord prior to the effective date of the policy(ies):

   i.   All liability insurance policies shall be written on an occurrence coverage basis;

   ii.  All insurance policies shall be non assessable;

   iii. All property insurance policies purchased by Tenant shall contain or be endorsed acknowledging that the insurer waives its rights of subrogation against Landlord; and

   iv.  All insurance policies procured by Tenant shall be primary and non contributing with any insurance that may be carried by Landlord.

h)   At the termination of this Sublease for whatever reason, in the event Tenant is able to assign to Landlord its right, title, and interest in the insurance policies required to be maintained hereunder, and provided Landlord agrees to such assignment, Landlord shall reimburse Tenant pro rata for all advanced premiums paid on such insurance.

i)   All property insurance shall be specifically acknowledged and endorsed by the insurer whereby the insurer agrees to make any and all payments as applicable under said policies payable to Tenant and Landlord jointly.

**11.4   Tenant's Duty to Repair and Restore.**   If any casualty results in damage or destruction to the Improvements and/or the Premises, Tenant will promptly give written notice thereof to Landlord. Tenant, at its sole cost and expense, using available insurance proceeds, settlement funds and other funds at Tenants disposal, shall restore, repair, replace or rebuild the same as nearly as possible to its condition and character immediately prior to such damage or destruction, including temporary repairs and work necessary to protect the Premises and the Improvements from further injury, and/or with such changes or alterations as may be made at Tenant's election in conformity with and subject to the conditions of Article 7 of this Sublease (all of the foregoing collectively being referred to as "Restoration").

Restoration shall be commenced promptly (giving due regard to the length of time required to adjust any loss with insurer) and prosecuted with reasonable diligence, Unavoidable Delays

Exhibit 2
Page 18 of 40
OLNG

excepted. If, as a result of Property Insurance provided pursuant to Section 11.2, Landlord receives any payment for the casualty that resulted in the damage or destruction ("Insurance Proceeds"), Landlord shall make such Insurance Proceeds available to Tenant for use in the Restoration.

The Insurance Proceeds that are payable to Tenant shall be held in trust by Tenant to pay for the cost of Restoration. Upon completion of the Restoration, Tenant shall promptly deliver to Landlord a statement setting forth a concise description of the Restoration performed and proof of payment therefore. Any excess Insurance Proceeds (except those received by Landlord as a result of Property Insurance provided pursuant to Section 11.2) shall be retained by Tenant or paid to any Leasehold Mortgagee if permitted or required under any Leasehold Mortgage.

The Insurance Proceeds payable to the Insurance Trustee shall be held in trust to be applied to the payment of the cost of the Restoration and shall be paid out upon such terms and conditions (which terms and conditions shall include, as a minimum, the requirements of subsections (a) and (d) below) as may be established by any Leasehold Mortgagee, or if no Leasehold Mortgage is then in effect, then from time to time as such Restoration progresses within thirty (30) days after written request of Tenant which shall be accompanied by a certificate signed by Tenant or Tenant's duly authorized representative and the Design Professional in charge of the Restoration, dated not more than forty (40) calendar days prior to such request, setting forth the following:

a)    That the sum then requested either has been paid by Tenant, or is justly due to contractors, subcontractors, materialmen, engineers, Design Professionals or other persons who have rendered services or furnished materials for the Restoration, and giving a brief description of such services and materials and the several amounts paid or due to each of said persons in respect thereof, and state that nor part of such expenditures has been or is being made the basis in any previous or then pending request for the withdrawal of Insurance Proceeds and that the sum then requested does not exceed the value of the services and materials described in the certificate;

b)    That except for the amount, if any, stated pursuant to the foregoing subsection (a) in such certificate to be due for services or materials to the particular supplier, there is no outstanding indebtedness of Tenant to the particular supplier known to persons signing such certificate which is then due for labor, wages, materials, supplies or services in connection with such Restoration, which, if unpaid, might become the basis of a vendor's mechanic's, laborer's or materialman's statutory or similar lien upon such restoration or upon the Premises;

c)    That the costs, as estimated by the persons signing such certificate, of the Restoration required to be done subsequent to the date of such certificate in order to complete the same, do not exceed the Insurance Proceeds, plus any amount deposited by Tenant to defray such cost and remaining in the hands of the Insurance Trustee after payment of the sum requested in such certificate. If there is a deficiency, Tenant shall forthwith deposit with the Insurance Trustee the amount needed to be segregated from the Insurance Proceeds and expended only after the Insurance Proceeds shall have been exhausted; and

Exhibit 2
Page 19 of 40
OLNG

d) That there has not been filed with respect to the Premises or any part thereof any vendor's, mechanic's, laborer's, materialman's or other claim of lien which has not been discharged of record, except such as will be discharged by payment of the amount then requested subject to Tenant's right to contest as provided in Section 8.2.

Upon compliance with the foregoing provisions of this Section 11.4, the Insurance Trustee shall, out of the monies held by the Insurance Trustee as aforesaid, pay or cause to be paid to Tenant or the persons named in the certificate referenced above, the respective amounts stated therein to have been paid by Tenant or to be due to them, as the case may be.

Upon receipt by the Insurance Trustee of satisfactory evidence of the character required by this Section 11.4 that the Restoration has been completed in the manner required under the terms of this Sublease and has been paid for in full and that there are no liens of the character referred to therein, any balance of the Insurance Proceeds at the time held by the Insurance Trustee shall be paid to Tenant or to any Leasehold Mortgagee.

11.5    **Destruction Near End of Term.**  If any Improvements are substantially or totally destroyed by fire or other casualty of any kind or nature and the estimated cost of the restoration is fifty percent (50%) or more of the value of the replacement cost of the Improvement(s) so damaged or destroyed, then notwithstanding any requirement to the contrary in this Article, Tenant shall not be required to restore the Improvement(s) if to do so would not be commercially viable, provided that, within one hundred ten (110) calendar days after such destruction or damage, Tenant provides Landlord written notice of Tenant's intent not to restore, and provided further that, simultaneously with the giving of such notice, Tenant shall first pay in full any Leasehold Mortgage that is secured by Tenant's interest in this Sublease or the Improvement(s) and then restore the Premises on which the Improvement(s) were situated to as good a condition as the same were when first occupied by Tenant less normal wear and tear.  If any Insurance Proceeds remain after (1) paying in full any Leasehold Mortgage that is secured by Tenant's interest in this Sublease or the Improvements(s); (2) restoring the Premises on which the Improvement(s) were situated to as good as condition as the same were first occupied by Tenant less normal wear and tear; and (3) compensating Tenant for its investment in the Improvement(s) in an amount not to exceed the fair market value of the Improvement(s); all such remaining proceeds will be payable to Landlord and Tenant in proportion to their interests.

## ARTICLE 12
## Assignment and Subleasing

12.1    **Assignment.**  Prior to completion of construction of the Marine Industrial Facilities and commencement of commercial operation of the Marine Industrial Facilities, Tenant shall have no right to assign its rights and obligations under this Agreement without the prior written consent of Landlord, which consent shall not be unreasonably withheld or delayed, except that Tenant may assign this Agreement without the consent of Landlord (a) to any Affiliate of Tenant engaged in the energy business or (b) to a special purpose entity organized by Tenant or any Affiliate of Tenant for purposes of owning and financing the Marine Industrial Facilities, or (c) to any financing party. After completion of construction of the Marine Industrial Facilities and commencement of commercial operation of the Marine Industrial Facilities, Tenant shall have the right to assign its rights and obligations under this Agreement in connection with a sale or other transfer of all or substantially all of Tenant's interest in the Marine Industrial Facilities on sixty (60) days prior written

Exhibit 2
Page 20 of 40
OLNG

notice to Landlord.  Except in the case of any assignment to a financing party, no assignment by Tenant of this Agreement for any purpose whatsoever shall be valid until all obligations of the assignor hereunder shall have been assumed by the assignee by a written agreement delivered to Landlord, and upon such assumption, the assigning Party shall be relieved of responsibility for and released from any obligations under this Agreement.  Any assignment by Tenant which does not comply with the provisions of this Section 12.1 shall be null and void.  Notwithstanding anything to the contrary in this Agreement, in the event Tenant assigns its interest in this Agreement to a financing party, Landlord agrees to cooperate with reasonable requests made by any financing party for amendments to or modifications of this Agreement. In connection with any assignment by Tenant to a financing party, Landlord agrees to execute a consent and agreement to such assignment in a form reasonably requested by the financing party and provide such other documents as may be reasonably requested by the financing party.

12.2    **Sub-Subleases.**

a)      Except for Tenant's use of the Premises for the purpose of developing and maintaining. the Premises for uses under third party Sub-Subleases and for managing third party Sub-Subleases of the Premises, all uses of the Premises must be Approved Uses and must be performed "under an Approved Sub-Sublease."

b)      With Landlord's prior written consent, which consent shall not be unreasonably withheld, Tenant may Sub-Sublease all or any portion of the Premises for use in accordance with the Approved Uses and may extend or renew any Sub-Sublease with Landlord's prior written consent.  No Sub-Sublease shall release Tenant from any obligation or liability under this Sublease.  All such Sub-Subleases shall be subject and subordinate to Landlord's rights under this Sublease, and shall be for Approved Uses under this Sublease.  All Sub-Subleases shall be for a term or terms that shall expire before the expiration of the Term of this Sublease.

c)      All Sub-Subleases shall be in writing, shall be on an Approved Sub-Sublease Form and shall contain such provisions as the Landlord may in its sole discretion require, including but not limited to:

i.      a clause stating the uses permitted to be made of the Premises covered by the Sub-Sublease;

i.      clauses setting out commercially reasonable terms as of the date of execution;

ii.     a provision for payment of rent that is equal to or greater than the reasonable commercial rental value of the subleased premises over the term of the Sub-Sublease and given the terms of the Sub-Sublease;

iii.    a clause prohibiting assignment or transfer of all or any portion of the Sub-Sublease without the prior written consent of the Tenant; and

iv.     clauses requiring such insurance or bonding as the Landlord, in its sole discretion, determines to be advisable.

PAGE 20 OF 39

Exhibit 2
Page 21 of 40
OLNG

d) Every Sub-Sublease shall contain a term requiring termination of the Sub-Sublease upon the expiration or earlier termination of the Sublease.

e) Tenant shall deliver to Landlord true copies of each Sub-Sublease not later than ten (10) days after the same has been executed and delivered by the parties.

f) Tenant shall first obtain the express written consent of Landlord, which consent shall not be unreasonably withheld, according to the procedure set forth in this section, before subleasing all or any portion of Premises. Without the prior written consent of Landlord, Tenant shall not sublet or in any manner transfer any of Tenant's interest in this Sublease, in any Sub-Sublease or in the Premises.

g) Twenty (20) calendar days before the proposed commencement date of a proposed Sub-Sublease, Tenant shall submit to Landlord an accurate and complete copy of the proposed Sub-Sublease and any information that the Tenant possesses, or the Landlord requests, regarding the proposed Subtenant. Following Landlord's receipt of the proposed Sub-Sublease and all relevant information regarding the proposed Subtenant, Landlord shall have twenty (20) calendar days in which to:

　　i. review the proposed Sub-Sublease and all relevant information; and

　　ii. request clarifications of and modifications to the terms and conditions of the proposed Sub-Sublease and such further or additional information as Landlord deems necessary. If Landlord requests supplementary information concerning the proposed Sub-Sublease or the proposed Subtenant, Landlord shall have an additional ten (10) calendar days, following receipt of this information, in which to review Tenant's proposal.

h) In reviewing and approving or disapproving a proposed Sub-Sublease and the suitability of a proposed Subtenant, Landlord may consider any factor that Landlord, believes to be reasonably relevant to its decision, including but not limited to such factors as environmental, economic, cultural, and political concerns, anticipated financial benefit to the Common School Fund, and whether the proposed sublease offers the best means of obtaining from the Premises the greatest benefit for the people of Oregon.

i) Without in any way limiting the generality of the foregoing factors that Landlord may consider, Landlord may in particular inquire into each prospective Subtenant's:

　　i. business status, (that is), exactly what entities, corporate or otherwise, comprise the proposed Subtenant;

　　ii. the exact business form of each such Subtenant entity and the identity of all principals and officers in each entity, with identification of the person or persons having signature authority for each entity;

　　iii. each Subtenant entity's experience in carrying out similar commercial activities;

PAGE 21 OF 39

Exhibit 2
Page 22 of 40
OLNG

iv.    the capitalization of each proposed Subtenant and certified copies of all pertinent financial information for the last three (3) years, (for example, balance sheets, income statements, tax returns, etc.);

v.    the bonding capacity, if any, of each proposed Subtenant;

vi.    references for each proposed Subtenant and each proposed Subtenant's principals, i.e., parties with whom the proposed Subtenant has been transacting business over the last three (3) to five (5) years and the opinion of such business associates/acquaintances regarding the proposed Subtenant and its principals;

vii.    a Dun and Bradstreet or other credit company report on each proposed Subtenant;

viii.    personal financial information on each proposed Subtenant's principals, including copies of tax returns for the last three (3) years and information regarding whether such principals have filed for bankruptcy protection at any time during the past seven (7) years; and

ix.    criminal records check for each proposed Subtenant and its principals, particularly for any environmental crimes and anything else which would tend to cast an unfavorable light on the integrity or business ethics of the principals of each proposed Subtenant.

j)    As a result of its review of the proposed sublease and the proposed Subtenant, Landlord shall, within the time periods set forth above, approve or disapprove Tenant's proposal. If Landlord approves a proposed Sub-Sublease, Landlord shall provide Tenant with a written consent. Unless and until Tenant obtains such written consent from Landlord, any proposed Sub-Sublease shall not be effective and any Sub-Sublease entered into by Tenant without first obtaining Landlord's express prior written consent shall be null, void, and of no effect. Notwithstanding Landlords approval of Tenant's proposed Sub-Sublease, Tenant shall remain ultimately responsible for performance of all of Tenant's obligations and duties under this Sublease.

## ARTICLE 13
### Tenant's Default

13.1   **Events of Default/Cure and Termination.**   The occurrence of any of the following events shall be an "Event of Default" hereunder:

a)    If Tenant fails to pay any installment of Annual Rent or additional rent when and as the same shall become due and payable and, as to any other sums required to be paid by Tenant under this Sublease, when and as the same shall become due and payable, and such failure continues for a period of ten (10) calendar days after written notice given by Landlord to Tenant;

Exhibit 2
Page 23 of 40
OLNG

b)    If Tenant fails to perform or comply with any of the covenants, agreements, terms or conditions contained in this Sublease and such failure continues for a period of twenty-eight (28) calendar days, after written notice given by Landlord to Tenant;

c)    The subjection of any right or interest of Tenant under this Sublease to attachment, execution, or other levy, or to seizure under legal process;

d)    The appointment of a receiver to take possession of the Premises and/or Improvements or of Tenant's interest in the leasehold estate or of Tenant's operations for any reason, including but not limited to, assignment for the benefit of creditors or voluntary bankruptcy proceedings, but not including receivership:

     i.    pursuant to administration of the estate of any deceased or incompetent Tenant or of any deceased or incompetent individual partner of any Tenant, or

     ii.    pursuant to a Leasehold mortgage, or

     iii.    instituted by Landlord, the event of default being not the appointment of a receiver at Landlord's instance but the event justifying the receivership, if any;

e)    An assignment by Tenant for the benefit of creditors or the filing of a voluntary petition by or against Tenant under any law for the purpose of adjudicating Tenant as bankrupt; or for extending time for payment, adjustment or satisfaction of Tenant's liabilities to creditors generally; or for reorganization, dissolution, or arrangement on account of or to prevent bankruptcy or insolvency;

f)    Tenant's failure to comply with Hazardous Materials Laws or with any requirement in Article 16; and

g)    Tenant's failure to procure, maintain or qualify for such insurance as Landlord may from time to time require in accordance with the provisions of Article 11.

     13.2    **Notice to Certain Persons.**   Landlord shall, before pursuing any remedy, give notice of any Event of Default to Tenant and to all Subtenants who have requested the same from Landlord, and Leasehold Mortgagees, if any, whose names and mailing addresses were previously given to Landlord.

     13.3    **Landlord's Remedies.**   If any Event of Default by Tenant shall continue uncured, following notice of default as required by this Sublease (if any is required), for the period applicable to the default under the applicable provision of this Sublease, Landlord has the following remedies in addition to all other rights and remedies provided by law or equity, to which Landlord may resort cumulatively or in the alternative:

a)    **Termination.**   Landlord may at its election terminate this Sublease by giving Tenant notice of termination.

b)    **Right of Reentry and Ejection.**   Landlord may reenter, take possession of the Premises and Improvements and eject all parties in possession or eject some and

PAGE 23 OF 39

Exhibit 2
Page 24 of 40

not others or eject none and may remove any persons or property by legal action or by self-help with the use of reasonable force and without liability for damages and without having accepted a surrender.

c)    **Reletting.** Following reentry or abandonment, Landlord may relet the Premises and in that connection may make any suitable alterations or refurbish the Premises, or both, or change the character or use or purpose of the Premises, but Landlord shall not be required to relet for any use or purpose other than that specified in this Sublease or which Landlord may reasonably consider injurious to the Premises, or to any tenant that Landlord may reasonably consider objectionable. Landlord may relet all or part of the Premises, alone or in conjunction with other properties, for a term longer or shorter than the Term of this Sublease, upon any reasonable terms and conditions, including the granting of some rent-free occupancy or other rent concessions. Landlord shall be entitled to all rents from the use, operation, or occupancy of the Premises or Improvements or both.

d)    **Damages.** Whether or not Landlord cancels, takes possession of or relets the Premises, Landlord has the right to recover its damages, including without limitation, (i) all lost rentals; (ii) all costs incurred by Landlord in restoring the Premises or otherwise preparing the Premises for reletting; (iii) and all costs incurred by Landlord in reletting the Premises; provided that, the amount Landlord may recover that represents damages for lost rental shall be limited to: (i) all rent that was due to the date of termination, plus (ii) all amounts of rent that would have fallen due as rent for the six month period following the date of termination, less (iii) the amounts recovered by Landlord from relettings or attornments, if any, plus (iv) interest on the balance at the Late Payment Rate.

13.4    **Right To Sue More Than Once.** Landlord may sue periodically to recover damages during the period corresponding to the remainder of the Sublease Term, and no action for damages shall bar a later action for damages subsequently accruing.

13.5    **Parties' Right to Cure Defaults.** If Tenant fails to perform any obligation under this Sublease, after the cure period, if any, Landlord shall have the option to so perform after giving written notice to Tenant. All of Landlord's expenditures to correct the default shall be reimbursed by Tenant on demand with interest at the Prime Rate from the date of expenditure by Landlord. Such action by Landlord shall not waive any other remedies available to Landlord because of the default. If Landlord fails to perform any obligation under this Sublease, after the cure period, if any, Tenant shall have the option to so perform after giving written notice to Landlord. All of Tenant's expenditures to correct the default shall be reimbursed by Landlord on demand with interest at the Prime Rate from the date of expenditure by Tenant. Such action by Tenant shall not waive any other remedies available to Tenant because of the default.

13.6    **Remedies Cumulative.** The remedies given to Landlord herein shall not be exclusive but shall be cumulative with and in addition to all remedies now or hereafter allowed by law and elsewhere provided in this Sublease.

13.7    **Surrender of Premises.** Promptly after notice of termination, Tenant shall surrender and vacate the Premises and Improvements in broom-clean condition.

PAGE 24 OF 39

Exhibit 2
Page 25 of 40
OLNG

13.8   **Waiver of Breach.**  No waiver by a party of any default by the other shall constitute a waiver of any other breach or default by the other, whether of the same or any other covenant or condition. No waiver, benefit, privilege, or service voluntarily given or performed by a party shall give the other any contractual right by custom, estoppel, or otherwise. The subsequent acceptance of rent pursuant to this Sublease shall not constitute a waiver of any preceding default by Tenant other than default in the payment of the particular rental payment so accepted, regardless of Landlord's knowledge of the preceding breach at the time of accepting the rent, nor shall acceptance of rent or any other payment after termination constitute a reinstatement, extension, or renewal of this Sublease or revocation of any notice or other act by Landlord.

## ARTICLE 14
### Unavoidable Delay

14.1   Should the performance of any act required by this Sublease to be performed by either Landlord or Tenant be prevented or delayed by reason of an Unavoidable Delay or by reason of any act or omission of the other party in violation of the terms of this Sublease, the time for performance of the act will be extended for a period equivalent to the period of delay and performance of the act during the period of delay will be excused.  The party affected or potentially affected shall, however, use reasonable diligence to avoid any such delay and resume such performance as promptly as possible after the delay.  Nothing contained in this section shall excuse the prompt payment of rent by Tenant as required by this Sublease or the performance of any act rendered difficult or impossible solely because of the financial condition of the party required to perform the act.

## ARTICLE 15
### Dispute Resolution Procedures

15.1   Landlord and Tenant agree that when disputes under this Sublease arise, the parties shall first attempt to resolve such disputes through negotiations between the authorized representatives of Tenant and Landlord.  If negotiations are unsuccessful, the parties may resort to litigation or, if mutually agreed, may invoke other dispute resolution mechanisms.

## ARTICLE 16
### Hazardous Materials

16.1   **Use of Hazardous Materials.**  If brought on the Premises by Tenant, Tenant will be responsible for any and all Hazardous Materials and other material the use, generation, manufacture, storage or disposal of which may violate Department of Environmental Quality (DEQ) standards or create a safety or environmental hazard or result in a DEQ violation.  Tenant shall keep and maintain, and shall require any Subtenant to keep and maintain, the Premises in compliance with any and all laws regulating the use, generation, manufacture, storage and disposal of Hazardous Materials.   Tenant shall not cause or permit the use, generation, manufacture, storage or disposal on, under or about the Premises, or the transportation to or from the Premises, of any Hazardous Materials in violation of any law or regulation relating to such Hazardous Material.

Exhibit 2
Page 26 of 40
OLNG

**16.2   Tenant's Indemnity Obligations.** In addition to any other obligation to indemnify stated elsewhere in this Sublease, Tenant shall indemnify, defend and hold Landlord and Landlord's fee interest under this Sublease free and harmless from and against any and all liability, damage, loss, costs, and expense that may be incurred by Landlord by reason of, resulting from, in connection with, or arising in any manner whatsoever out of:

a)   a breach of the obligations of Section 16.1; or

b)   the use, generation, manufacture, storage or disposal of Hazardous Materials by Tenant on, under, or about the Premises after the Commencement Date; or

c)   surface migration of Hazardous Materials onto the Premises caused by or arising in connection with Tenant's use of the Premises during the Term of this Sublease.

Tenant's indemnity obligations under this Section 16.2 shall include, but not be limited to: (i) all liabilities, losses, claims, demands, penalties, fines, settlements, damages, response, remediation, closure or inspection costs; (ii) any expenses (including reasonable attorney and consultant fees, investigation expenses, and laboratory and litigation costs) of whatever kind or nature that are incurred by Landlord; (iii) any personal injuries or property damages, real or personal; (iv) any violations of law, orders, regulations, requirements or demands of Governmental Authorities; and (v) any lawsuit brought or threatened, settlement reached, or government order arising out of or in any way related to the release of Hazardous Materials on the Premises after the Commencement Date.

PROVIDED, HOWEVER, that Tenant's indemnity obligations under this Section 16.2 shall not include any liability, damage, loss, costs, and expense suffered by Landlord and resulting from:

a)   Hazardous Materials present in or on or under the Premises as of the Commencement Date; or

b)   Hazardous Materials present in or on or under the Premises as of the Commencement Date that migrate, percolate, flow, diffuse, or in any way move within, from or off the Premises after the Commencement Date.

The indemnities of Tenant provided in this Section shall survive the expiration or earlier termination of this Sublease and the assignment by Tenant of the leasehold estate created hereby.

**16.3   Notice.** Landlord agrees to give prompt written notice to Tenant with respect to any suit or claim initiated or threatened to be initiated against Landlord which Landlord has reason to believe is likely to give rise to a claim for indemnity hereunder, and Tenant shall promptly proceed to provide an appropriate defense, compromise, or settlement of such suit or claim at its sole expense. Provided, however, that if claim creating the obligation to indemnify under this Article 16 also causes a State claim for indemnity under section 16.3 of the State lease, and State exercises its right to carry out a defense at tenant's expense, then Tenant will reimburse Landlord for all invoices paid by Landlord to State in connection therewith.

**16.4   Remediation by Tenant.** Without limiting the foregoing, if Tenant, its agents, contractors, guests, invitees or Subtenants cause or permit Hazardous Materials to be used, generated, manufactured, stored, disposed of or released on the Premises during the Term of this

PAGE 26 OF 39

Exhibit 2
Page 27 of 40
OLNG

Sublease, any extended term, or during any prior occupancy or lease of the Premises by Tenant in violation of any Hazardous Material laws, or if Hazardous Materials enter upon the Premises due to surface migration resulting from Tenant's use of the Premises, Tenant shall promptly take all actions at its sole expense to comply with all laws and regulations governing such use, generation, manufacture, storage, disposal or release of such Hazardous Materials and/or to remediate the condition created by such Hazardous Materials; provided that except in an emergency Landlord's approval of such actions shall first be obtained, which approval shall not be unreasonably withheld.

16.5    **Surface Migration.**  If surface migration onto the Premises of Hazardous Materials was not caused by and did not arise in connection with the Tenant's use of the Premises during the Term of this Sublease, and if Tenant is not otherwise responsible for the surface migration, Tenant shall not be obligated to indemnify Landlord under this section for the damages caused by such surface migration, nor shall Tenant be required to bear the cost of remediation related to such surface migration.

16.6    **Disclosure.**  Within four (4) business days after the receipt of written notice thereof, Tenant shall advise Landlord and Landlord shall advise Tenant, as the case may be, in writing of:

a)    any and all notices of enforcement or other governmental or regulatory actions pursuant to which cleanup or remediation of Hazardous Materials on the Premises will be required; and

b)    all written claims made by any third party against Tenant or Landlord, as the case may be, or the Premises relating to damage, contribution, cost recovery, compensation, loss or injury resulting from Hazardous Materials on the Premises. Tenant shall disclose to Landlord the names of each Subtenant whose business use under its Sub-Sublease includes the storage, use, manufacture, generation, or disposal of Hazardous Materials on the Premises in amounts for which a permit is required to be obtained pursuant to applicable Hazardous Materials laws or for which reports must be filed with Governmental Authorities pursuant to any applicable laws.

16.7    **Inspection.**  Landlord and its agents shall have the right, but not the duty, at Landlord's sole cost and expense to conduct reasonable inspections of the Premises, to determine whether Tenant (or its Subtenants) are complying with this Article 16. Such inspections shall be performed during business hours, upon reasonable prior notice to Tenant, and shall be accomplished in a manner reasonably calculated not to disturb existing business operations of Tenant or any Subtenant. Landlord shall use its best efforts to minimize interference with the business of Tenant and Subtenants being conducted on the Premises but shall not be liable for any reasonable interference caused thereby.

If, as a result of any such inspection, Landlord determines, in its reasonable judgment, that Tenant or its Subtenants are not or may not be in compliance with this Article 16, Landlord shall promptly notify Tenant in writing of the event or situation which gives rise to Tenant's or a Subtenant's violation or possible violation of such Article. Unless Tenant's or a Subtenant's violation or possible violation of this Article 16 creates an emergency situation (in which event Tenant shall immediately take such action as may be required by the nature of such situation to remedy the same and if Tenant fails to do so Landlord shall have the right to enter upon the Premises and to take such action as Landlord deems appropriate in its reasonable judgment to remedy or correct such emergency situation). Tenant shall within fifty (50) calendar days after the

PAGE 27 OF 39

Exhibit 2
Page 28 of 40
OLNG

receipt of notice of such violation or possible violation from Landlord (provided that Tenant will, in any event proceed diligently), submit to Landlord a written remediation plan setting forth a general description of the action that Tenant proposes to take with respect thereto.

    a)    **Remediation Plan Required.** The remediation plan shall be subject to Landlord's written approval, which approval shall not be unreasonably withheld or delayed. Landlord shall notify Tenant in writing of its approval or disapproval of the plan within fifty-five (55) calendar days after receipt thereof by Landlord. If Landlord disapproves the plan, Landlord's notice to Tenant of such disapproval shall include a detailed explanation of the reasons therefor. Within twenty (20) calendar days after receipt of such notice of disapproval, Tenant shall submit to Landlord a revised plan that remedies the defects reasonably identified by Landlord as reasons for Landlord's disapproval of the initial plan. If Tenant fails to submit a revised plan to Landlord within said twenty (20) day period, such failure shall, at Landlord's option and upon notice to Tenant, constitute an "Event of Default" hereunder. Once any such plan is approved in writing or deemed approved by Landlord, Tenant shall promptly commence all action necessary to comply with all requirements and conditions imposed by all environmental boards or agencies having and exercising jurisdiction, and shall diligently and continuously pursue such action to completion in accordance with the terms thereof; provided that Tenant may commence such actions sooner or on such other timetable if required to do so by any such board or agency.

    b)    **Further Testing.** If Landlord's inspections of the Premises reflect a violation or possible violation by Tenant or a Subtenant of the provisions of this Article 16 which may have caused the Premises or any part thereof to have become contaminated by Hazardous Materials, Landlord shall have the right to require Tenant to initiate testing of the Premises to determine whether, or the extent to which, such violation has in fact caused the contamination of the Premises by Hazardous Materials. Tenant shall immediately deliver a copy of all test results to Landlord. If such Hazardous Materials are those for which Tenant is responsible, and Landlord is not responsible, Landlord and Tenant shall thereafter comply with the terms and provisions of this section with respect to formulating a plan to remediate any such contamination. If such Hazardous Materials are those for which Landlord is responsible, Landlord shall promptly remediate such Hazardous Materials.

16.8   **Governing Provisions for Environmental Matters.** Notwithstanding any other provision of this Sublease, this Article 16 and Section 2.4 shall supersede and take precedence over all other provisions of this Sublease regarding environmental matters including, but not limited to, the scope of indemnification of Landlord by Tenant and the survival of the indemnification provisions contained in this Sublease. Nothing in this Article 16 is intended nor shall it limit Landlord's rights in the event of default, as set out in Article 13 of this Sublease.

16.9   **Notice of Hazardous Materials; Limitation of Tenant Liability.** Landlord hereby acknowledges that it has made available to Tenant such information as is currently available and known by the Landlord regarding Hazardous Materials existing on the Premises. Tenant shall have no responsibility for remediating any Hazardous Materials existing as of the Commencement Date, except Hazardous Materials that were used, generated, manufactured, stored or disposed of by Tenant or any of its Subtenants, employees, agents or assigns during the Term of this Sublease, or as required in Section 9.1. Landlord and Tenant agree that any Hazardous Materials

PAGE 28 OF 39

Exhibit 2
Page 29 of 40
OLNG

existing on the Premises prior to the Commencement Date of this Sublease, whether known or unknown to the parties, that become evident as a result of Tenant's occupancy shall be the sole responsibility of Landlord, and Landlord will be responsible to DEQ for remediation of such pre-existing conditions.

## ARTICLE 17
## Condemnation

17.1   **Total Taking.**   In the event of the taking or condemnation by any competent authority for any public use or purpose of the whole of the Premises at any time during the Term:

a)      **Termination.**  The Term shall end as of the date of possession by the condemner, and all rent and other payments shall be apportioned as of the date of possession.

b)      **Award.**  Landlord and Tenant shall share any award (including interest from the date of taking to the date of payment) according to their respective interests in the Premises except that the award for attorneys' fees and other costs shall be shared by the parties in proportion to the attorneys' fees of both outside and inside counsel paid by each party on account of the condemnation proceedings.  The values of the Landlord's and Tenant's respective interests in the Premises shall be established by the same court of law or other trier of fact that establishes the amount of the condemnation award, but if there is no court of law available or willing to determine Landlord's and Tenant's respective interests, those interests shall be determined by agreement of Landlord and Tenant.

17.2   **Substantial Taking.**  As used in this Section, a Substantial Taking means a taking of materially all of the Premises where the remaining part of the Premises not so taken cannot be adequately restored, repaired or reconstructed so as to constitute a complete functional unit of property capable of any substantial income-producing function.  In the event of a Substantial Taking, then the condemnation shall be treated as a Total Taking under Section 17.1, and the award shall be distributed in accordance with Section 17.1(b).

17.3   **Partial Taking.**  In the event of a taking of less than materially all of the Premises (a "Partial Taking"):

a)      **Abatement of Rent.**  The Term (except as hereinafter provided) shall nevertheless continue, but Monthly Rent shall thereafter be reduced by the same proportion that the fair market rental value of the Property was reduced due to the Partial Taking.  If the parties cannot agree upon a just proportion of Monthly Rent to be abated, the amount may be determined pursuant to Article 15.  There shall be no abatement of Monthly Rent if:

i.       no portion of the Property is taken in any such taking or condemnation, or

ii.      a portion of the Property is taken but the income-generating capacity of the Improvements is not affected.

PAGE 29 OF 39

Exhibit 2
Page 30 of 40
OLNG

b)   **Award.** The award from a Partial Taking shall be distributed first to Tenant for the restoration and repair of the Improvements as provided in Section 17.3(b), then to Landlord in an amount equal to the fair market value of the Property taken (subject to this Sublease) and any remainder to Landlord and Tenant proportionally until each has received an amount equal to its proportional interest in the Premises as provided in Section 17.1(b).

c)   **Restoration.** If this Sublease is not terminated, then, as to the Premises not taken in the condemnation proceeding, Tenant shall proceed diligently to make an adequate restoration, repair or reconstruction of the part of the Premises not taken. Tenant shall restore, repair or reconstruct the Premises, to the extent practicable, to a functional unit of substantially the same usefulness, design, construction, quality, and to a condition having the same income-generating capability of the Premises prior to the taking. In connection with such restoration, repair, and reconstruction, Tenant shall comply with the provisions of Article 11 regarding Restoration as if occurring after an event of damage or destruction.

17.4   **Degree of Taking.** If the parties cannot agree on whether the taking is a Partial Taking or a Substantial Taking, the degree of the taking may be determined pursuant to Article 15.

17.5   **Successive Takings.** In the case of any additional Partial Taking or takings from time to time, the provisions of Section 17.3 shall apply to each Partial Taking.

17.6   **Temporary Taking.** If the whole or any part of the Premises or of Tenant's interest under this Sublease is taken or condemned by any competent authority for its temporary use or occupancy ("Temporary Taking"), Tenant shall continue to pay the full amounts of Monthly Rent, and all Impositions and other sums payable by Tenant hereunder. Tenant shall maintain sufficient business interruption insurance to cover Monthly Rent, Impositions and other sums payable by Tenant hereunder during the period of Temporary Taking. This Sublease shall continue and, except only to the extent that Tenant may be prevented from so doing pursuant to the terms of the order of the condemning authority, Tenant shall perform and observe all of the other terms, covenants, conditions and obligations hereof upon the part of Tenant to be performed and observed, as though the taking or condemnation had not occurred. In the event of any Temporary Taking or condemnation, Tenant shall be entitled to receive the entire amount of any award made for the taking, whether paid by way of damages, or otherwise, unless the period of temporary use or occupancy shall extend to or beyond the expiration date of the Term or the Extended Term, if applicable, of this Sublease, in which case the award shall be apportioned between Landlord and the Tenant as of the date of expiration of the Term or the Extended Term, if applicable.

17.7   **Insurance Trustee.** To the extent Tenant is obligated to repair or restore under this Section, any portion of condemnation proceeds awarded to Tenant shall be deposited with the Insurance Trustee who shall act in accordance with the terms of Article 11.

## ARTICLE 18
### Notices

18.1   **General.** Any notice, communication, request, reply or advice, or duplicate thereof (herein severally and collectively, for convenience called "notice") provided or permitted to be given

PAGE 30 OF 39

Exhibit 2
Page 31 of 40
OLNG

under this Sublease to any person, entity, or party, or made or accepted by either party to any other party must be in writing and shall, unless otherwise in this instrument or by law expressly provided, be given or be served by:

a)    depositing the same in the United States mail, postage prepaid, registered or certified mail, with return receipt requested, or

b)    personal delivery service with charges therefor billed to shipper, or

c)    expedited delivery service with charges therefor billed to shipper, or

d)    prepaid telegram, telex or facsimile, all such notices, however given, to be addressed to the party for whom the notice is intended at the address set forth below or at such other address as any party may have designated to any other party in the manner above provided.

Any notice or communication sent as herein provided shall be deemed received:

a)    upon receipt if sent by telegram, telex or facsimile or if personally delivered (provided that such delivery is confirmed by the receiving telex or facsimile operator, including electronic confirmation of receipt, or by the courier delivery service, as the case may be),

b)    three (3) business days after the date of deposit in a post office or other official depository under the care and custody of the United States Postal Service, if sent by United States mail;

c)    on the date of delivery by any expedited delivery service, or

d)    on the date any party declines to accept any notice given as herein provided.

No person or entity who is entitled to notice or is required to be given notice hereunder shall have an address, for the purposes of such notice, which is outside the continental United States; and any such person or entity shall designate an agent for the purpose of receiving notices hereunder whose address is within the continental United States. Any party may change its address for the purposes of receiving notices hereunder by giving notice of such change of address to the other party in the manner required for giving notices pursuant to this Article 18.

If to Tenant:

Skipanon Natural Gas, LLC
c/o Calpine Corporation
4160 Dublin Blvd.
Dublin, CA 94568-3139
     Telephone:    (925) 479-6600
     Fax:          (925) 479-7310

PAGE 31 OF 39

Exhibit 2
Page 32 of 40
OLNG

If to Landlord:

    Port of Astoria
    #1 Portway Street
    Astoria, OR 97103
        Telephone:    (503) 325-4521
        Fax:          (503) 325-4525

## ARTICLE 19
## Surrender of Premises; Holding Over

19.1  **Good Condition.**  The Sublease shall terminate without further notice at expiration of the Term.  On expiration or sooner termination of the Sublease, Tenant shall surrender the Premises and, subject to Article 10, the Improvements, and all facilities in any way appurtenant to the Premises (other than any Subtenant's trade fixtures or equipment which may be removed in accordance with such Subtenant's Sub-Sublease), to Landlord in good order, condition and repair, and in as safe and clean condition as practicable, reasonable wear and tear and acts of God excepted, and free and clear of all liens and encumbrances, and Hazardous Materials other than those which have been created by Landlord.  Any holding-over by Tenant after expiration of the Sublease shall not constitute a renewal or extension or give Tenant any rights in or to the Premises except as otherwise expressly provided in this Sublease.

19.2  **Remaining Personal Property on the Premises.**  Any personal property of Tenant or any Subtenant which shall remain on the Premises after the termination of this Sublease and the removal of Tenant and such Subtenant from the Premises, may, at the option of Landlord, be deemed to have been abandoned by Tenant or such Subtenant and may either be retained by Landlord as its property or be disposed of, without accountability, in such manner as Landlord may see fit.  However, Landlord shall also have the right to require Tenant or any Subtenant to remove any such personal property at Tenant's own cost and expense, provided that Landlord shall give Tenant written notice requesting the removal of the personal property of Tenant or such Subtenant from the Premises.

19.3  **Survival.**  The provisions of this Article 19 shall survive the expiration or any termination of this Sublease.

## ARTICLE 20
## List of Exhibits

Exhibit A:    Physical survey and legal description of the Premises;
Exhibit B:    Recordable Memorandum of this Sublease;

## ARTICLE 21
## Miscellaneous

21.1  **Governing Law.**  This Sublease, and all matters relating to this Sublease, shall be governed by the laws of the State of Oregon in force at the time any need for interpretation of or decision regarding this Sublease arises.

21.2    **Binding on Successors.**  This Sublease shall be binding on and shall inure to the benefit of the parties and to the successors and permitted assigns of the parties hereto, but nothing in this section shall be construed as a consent by Landlord to any disposition or transfer of the Sublease or any interest herein by Tenant except as otherwise expressly provided in this Sublease.

21.3    **Partial Invalidity.**  Should any provision of this Sublease be held by a court of competent jurisdiction to be either invalid, void, or unenforceable, the remaining provisions of this Sublease shall remain in full force and effect unimpaired by the holding.

21.4    **Time of Essence.**  Time is expressly declared to be the essence of Tenant's performance of each and every duty and obligation under this Sublease.

21.5    **Recordation of Sublease.**  The parties shall record a memorandum of this Sublease in the form of Exhibit B, attached hereto.

21.6    **Nonmerger of Fee and Leasehold Estates.**  If both Landlord's and Tenant's estates in the Premises or the Improvements or both become vested in the same owner, this Sublease shall nevertheless not be destroyed by application of the doctrine of merger except at the express election of the holder of both estates and the consent of each Leasehold Mortgagee of record.

21.7    **Agreement to Act Reasonably.**  Except where specifically provided to the contrary in this Sublease, in each instance in this Sublease where the approval or consent of a party is required, both Landlord and Tenant intend and agree to act reasonably.  As used in the foregoing sentence, the term "reasonable" shall not be interpreted as justifying arbitrary action but shall mean an even-handed application of judgment in accordance with all applicable requirements of federal and state law, traditional business policies and practices, industry standards and commercial usage and custom concerning major real estate transactions involving properties similar to the Premises.  Except where specifically provided to the contrary, any approval or consent shall not be unreasonably delayed.

21.8    **Joint and Several Obligations.**  If Tenant consists of more than one Person, the obligation of all such Persons is joint and several.

21.9    **Captions; Table of Contents.**  Any table of contents attached to this Sublease and the captions of the various sections of this Sublease are for convenience and ease of reference only and do not define, limit, augment, or describe the scope, content or intent of this Sublease or of any part or parts of this Sublease.  This Sublease will be liberally construed to effectuate the intention of the parties with respect to the transaction described herein.  In determining the meaning of, or resolving any ambiguity with respect to, any word, phrase or provision of this Sublease, neither this Sublease nor any uncertainty or ambiguity herein will be construed or resolved strictly against either party under any rule of construction or otherwise, it being expressly understood and agreed that the parties have participated equally or have had equal opportunity to participate in the drafting hereof.

21.10    **Gender, Singular and Plural.**  The neuter gender includes the feminine and masculine, the masculine includes the feminine and neuter, and the feminine includes the

Exhibit 2
Page 34 of 40
OLNG

masculine and neuter, and each includes corporation, partnership, or other legal entity when the context so requires. The singular number includes the plural whenever the context so requires.

21.11  **Exhibits.**  All Exhibits to which reference is made in this Sublease are incorporated in this Sublease by the respective references to them, whether or not they are actually attached, provided they have been signed or initialed by the parties.  References to "this Sublease" includes matters incorporated by reference.

21.12  **Nondiscrimination and Nonsegregation.**  Tenant covenants by and for himself or herself or itself, and for his or her or its heirs, executors, administrators, and assigns, and all persons claiming under or through him or her or it, and this Sublease is made and accepted upon and subject to the condition that there shall be no unlawful discrimination against or segregation of any person or group of persons, on account of race, color, creed, religion, gender, sexual preference, handicap, marital status, national origin, or ancestry, in the leasing, subleasing, transferring, use, occupancy, tenure, or enjoyment of the Premises herein leased or the Construction Work nor shall the Tenant, or any person claiming under or through Tenant, establish or permit any such practice or practices of discrimination or segregation with reference to the selection, location, number, use, or occupancy, of lessees, contractors, Subtenants, or vendees in the Premises and Improvements herein leased.

21.13  **Quiet Enjoyment.**  Landlord covenants that, upon paying the rent and all other charges herein provided for and observing and keeping all covenants and agreements in this Sublease on its part to be kept, Tenant shall have the right to occupy the Premises peaceably and quietly in accordance with the terms of this Sublease, PROVIDED, HOWEVER, that this covenant of quiet enjoyment is expressly subject to the various encumbrances and reservations of right affecting the Premises.  Tenant acknowledges and agrees that its peaceable and quiet possession of the Premises is subject to all encumbrances and reservations of right, whether of record or provided for in this Sublease.

21.14  **Indemnifications.**  Tenant expressly acknowledges and agrees to the terms of the indemnity provisions contained in Sections 2.4, 6.7, 7.6, 9.2 and 16.2 of this lease.  All obligations of Tenant to indemnify Landlord shall survive termination or expiration of this Sublease.

21.15  **Notice of Claims, Defense of Claims.**  Landlord agrees to give prompt written notice to Tenant with respect to any suit or claim initiated or threatened to be initiated against Landlord which Landlord has reason to believe is likely to give rise to a claim for indemnity under this Sublease.  Landlord shall reasonably cooperate in good faith, at Tenant's reasonable expense, in the defense of a covered claim and Tenant shall select counsel reasonably acceptable to Landlord to defend such claim and all costs of such counsel shall be borne by Tenant. Landlord's acceptance of such counsel shall not be unreasonably withheld, conditioned or delayed.  Landlord may elect to assume its own defense with an attorney of its own choice and its own expense at any time Landlord determines important governmental interests are at stake. Landlord agrees to promptly provide Tenant with notice of any claim that may result in an indemnification obligation hereunder.  Subject to the limitations noted above, Tenant may defend such claim with counsel of its own choosing provided that no settlement or compromise of any such claim shall occur without the consent of Landlord, which consent shall not be unreasonably withheld, conditioned or delayed. Provided, however, that if the claim creating the obligation to defend under this Article 21 also creates an obligation to defend the State under section 21.16 of the State lease, and the State exercises its right to approve counsel, then Tenant will select

PAGE 34 OF 39

Exhibit 2
Page 35 of 40
OLNG

counsel reasonably acceptable to the Oregon Attorney General and Tenant's counsel will accept appointment as a Sepcial Assistannt Attorney General under ORS Chapter 180.

21.16 **Execution in Counterparts.** This Sublease may be executed in two or more counterparts, each of which shall be an original, but all of which shall constitute one and the same instrument. For convenience of the parties the signature pages to any counterpart may be detached and reattached to a single counterpart.

21.17 **Inspection.** Landlord shall have the right personally and through Landlord's agents and employees to enter into and onto the Premises, with 24 hour prior notice, to inspect the Premises and examine the conditions thereof.

21.18 **Modification.** Any term or condition of this Sublease may be modified upon mutual consent of both parties, but any such modification shall be effective and binding only upon execution by both parties or a written amendment to this Sublease.

21.19 **Estoppel Certificates.** Each party will, from time to time, upon fifteen (15) days prior written request, execute, acknowledge and deliver to the requesting party, an Estoppel Certificate.

21.20 **Subordination and Attornment.** Landlord and Tenant will respond to each other's reasonable request for subordination or attornment agreement, provided such document shall clearly state that any successor in interest to Landlord or Tenant under this Sublease shall assume and perform all the responsibilities and obligations of Landlord or Tenant under this Sublease, as the case may be. Such document shall not contain any provision requesting Landlord to save, hold harmless or indemnify Tenant, a lender or any other third party.

21.21 **Entire Agreement.** This lease, together with the attached exhibits, constitutes the entire agreement between the parties. No waiver, consent, modification or change of terms of this Sublease shall bind either party unless in writing and signed by both parties. Such waiver, consent, modification or change, if made, shall be effective only in the specific instance and for the specific purpose given. There are no understandings, agreements or representations, oral or written not specified herein regarding this lease. Tenant, by the signature below of its authorized representative hereby acknowledges that tenant has read this lease, understands it and agrees to be bound by its terms and conditions. This Sublease supersedes all prior or existing lease or rental agreements between the parties with respect to the land leased hereunder.

IN WITNESS WHEREOF, Landlord and Tenant have by their duly authorized representatives executed this Sublease.

Executed this __5__ day of November, 2004.

**LANDLORD**
Port of Astoria, an Oregon Port

by:

_____
Authorized Signature

**TENANT**
Skipanon Natural Gas, LLC

by:

_____
Authorized Signature

_____
Authorized Signature

APPROVED AS TO FORM:

_____
Counsel for Port of Astoria

The State of Oregon, acting by and through its Department of State Lands, hereby consents to this Sublease Agreement.

Dated this _16th_ day of November, 2004.

_____
By:

State of Oregon, by and through its
Department of State Lands

PAGE 36 OF 39

Exhibit 2
Page 37 of 40
OLNG

NOV-17-04 11:08 AM   COAST SURVEYING              5038612369                    P.02

November 17, 2004

DESCRIPTION OF A TRACT OF LAND
ON THE EAST BANK OF THE SKIPANON RIVER
FOR
THE PORT OF ASTORIA

Beginning at the intersection of the easterly projection of
the south boundary of Block 9 in the plat of Portoria,
Clatsop County, Oregon, with the meander line as surveyed by
U.S. Government surveyors along the northeasterly boundary of
the N.A. Eberman Donation Land Claim in T8N, R10W, W.M.;
thence east along the easterly projection of said south
boundary 200 feet, more or less, to the line of ordinary high
water on the west bank of Youngs Bay; thence northerly and
westerly along said line of ordinary high water and the line
of ordinary high water on the south bank of the Columbia
River to the line of ordinary high water on the east bank of
the Skipanon River; thence southerly along the line of
ordinary high water on the east bank of the Skipanon River to
an intersection with a line located parallel with and 100
feet north of the south boundary of Block 1 in the plat of
Portoria; thence east along said line to an intersection with
the northerly projection of the east boundary of said Block
1; thence south along said projection 50.5 feet to the
northeast corner of Lot 7, said Block 1; thence S85°43'E
along the north boundary of the plat of Portoria 100.42 feet
to a point located 100 feet east of, when measured at right
angles to, the east boundary of said Block 1; thence north,
parallel with the east boundary of said Block 1, to an
intersection with said meander line along the northeasterly
boundary of the N.A. Eberman D.L.C.; thence southeasterly
along said meander line to the point of beginning.

REGISTERED
PROFESSIONAL
LAND SURVEYOR

*Karl F. Foeste*

OREGON
JULY 12, 1988
KARL F. FOESTE
0849

Renews 1/1/2006

PAGE 37 of 39

Exhibit 2
Page 38 of 40
OLNG

EXHIBIT "B"

After Recording, return to:
Heather Reynolds
Attorney at Law
PO Box 145
Astoria, OR 97103

## MEMORANDUM OF SUBLEASE

DATE: _____

BETWEEN:   PORT OF ASTORIA ("Landlord")

AND:   SKIPANON NATURAL GAS, LLC ("Tenant")

Pursuant to a Sublease Agreement entered into by Landlord and Tenant on November _____, 2004 ("the Sublease"), Landlord has subleased to Tenant certain real property located in the City of Warrenton, Clatsop County, Oregon; this leasehold is more particularly described in Exhibit A, attached hereto and by this reference made a part hereof.

This Memorandum of Sublease is executed to evidence and confirm the Sublease, to which reference is made for its terms and conditions, which include the following:

- The initial Term of the Sublease is for five (5) years with two options of thirty (30) years each.

Landlord has a right to sell the property that is the subject of this the Sublease. Any such sale or sales of the Land shall be made subject to Tenant's rights under the Sublease.

This Memorandum of Sublease shall be recorded in the real property records of Clatsop County, Oregon, in order to give notice of the existence of the Sublease. This Memorandum of Sublease shall not be deemed or construed to define, limit, or modify the Sublease, or any provision thereof, in any manner.

LANDLORD
Port of Astoria, an Oregon Port

by:

_____
Authorized Signature

TENANT
Skipanon Natural Gas, LLC

by:

_____
Authorized Signature

_____
Authorized Signature

PAGE 38 OF 39

Exhibit 2
Page 39 of 40
OLNG

## ACKNOWLEDGEMENT OF LANDLORD

STATE OF OREGON )
) ss.
County of ~~Clatsop~~ MARION )

Appeared before me on ___Nov 22, 2004___, by _____
who represented that he executed this Memorandum of Sublease on behalf of the **Port of Astoria,**
and that this Memorandum of Sublease is his voluntary act and deed.

> OFFICIAL SEAL
> JENNIFER J VICKERS
> NOTARY PUBLIC-OREGON
> COMMISSION NO. 346517
> MY COMMISSION EXPIRES JUNE 05, 2005

_Jennifer J Vickers_
Notary Public for Oregon
My Commission Expires _6-5-05_

## ACKNOWLEDGEMENT OF TENANT

STATE OF OREGON )
) ss.
County of _MARION_ )

Appeared before me on ___11/22/04___ by _____
who represented that he executed this Memorandum of Sublease on behalf of **Skipanon Natural
Gas, LLC** and that this Memorandum of Sublease is his voluntary act and deed.

> OFFICIAL SEAL
> JENNIFER J VICKERS
> NOTARY PUBLIC-OREGON
> COMMISSION NO. 346517
> MY COMMISSION EXPIRES JUNE 05, 2005

_Jennifer J Vickers_
Notary Public for Oregon
My Commission Expires _6-5-05_

STATE OF OREGON )
) ss.
County of _____ )

Appeared before me on _____ by _____
who represented that he executed this Memorandum of Sublease on behalf of **Skipanon Natural
Gas, LLC** and that this Memorandum of Sublease is his voluntary act and deed.

_____
Notary Public for Oregon
My commission Expires _____

Memorandum of Sublease

PAGE 39 OF 39

Exhibit 2
Page 40 of 40