IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| LNG DEVELOPMENT COMPANY, LLC, dba OREGON LNG, | Civil No. 09-847-JE |
| Plaintiff, | FINDINGS AND RECOMMENDATION |
| v. | |
| PORT OF ASTORIA, an Oregon Port; DAN HESS, an individual; LARRY PFUND, an individual; WILLIAM HUNSINGER, an individual; JACK BLAND, an individual; and FLOYD HOLCOM, an individual, | |
| Defendants. | |

Gregory A. Chaimov
William D. Miner
Davis Wright Tremaine LLP
1300 S.W. 5th Avenue, Suite 2300
Portland, OR 97201

    Attorneys for Plaintiff

FINDINGS AND RECOMMENDATION - 1

Thane W. Tienson
Jennifer L. Gates
Landye Bennett Blumstein, LLP
1300 S.W. 5th Avenue, Suite 3500
Portland, OR 97201

    Attorneys for Defendant

JELDERKS, Magistrate Judge:

Plaintiff LNG Development Company, LLC (LNG), brings this action against defendants Port of Astoria (the Port) and Port Commissioners Dan Hess, Larry Pfund, William Hunsinger, Jack Bland, and Floyd Holcom (the Commissioners). Plaintiff seeks declaratory, injunctive, and monetary relief based upon defendants' refusal to request renewal of the Port's lease of certain real property from the Oregon Department of State Lands (DSL).

Defendants move to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(7) and 19 on the grounds that the State of Oregon DSL is an "indispensable party" in whose absence this action may not proceed in this court. Defendants also move to dismiss plaintiff LNG's claim against the Commissioners on the grounds that these individuals are state officials against whom suit is barred under the Eleventh Amendment to the United States Constitution.

For the reasons set out below, defendants' motion to dismiss should be denied.

## BACKGROUND

Plaintiff LNG, which does business in Oregon as Oregon LNG, is a limited liability company organized under the laws of Delaware, with its principal place of business in Vancouver, Washington.

FINDINGS AND RECOMMENDATION - 2

Defendant the Port is an Oregon Port organized under the laws of Oregon, and is located in Astoria, Oregon. The Port is governed by a Board of Commissioners comprised of the individual defendants (the Commissioners).

This action arises from the lease and sublease of approximately 94 acres of land (the premises) owned by the State of Oregon in Clatsop County, Oregon. On November 1, 2004, the Port leased the premises from the State of Oregon, acting through the DSL, in a document entitled "Upland Lease Agreement." (For simplicity and clarity, I will refer to that agreement as the "Master Lease Agreement" or as the "Master Lease" in this Findings and Recommendation.) The Master Lease provided for an initial lease period of five years, and provided the Port with options to extend the Lease for two additional thirty year terms. Section 12.2 of the Master Lease Agreement allowed the Port, with the State of Oregon's written consent, to sublease, and extend or renew the sublease, of the premises.

Four days later, on November 5, 2004, the Port entered into an agreement (the "Sublease Agreement") by which it subleased the premises to Skipanon Natural Gas, LLC (Skipanon). The Sublease Agreement included terms very similar to the terms of the Master Lease Agreement. Like the Master Lease, the Sublease provided for an initial term of five years, and provided the sublessor the option to extend the Sublease for two additional thirty year terms. The Sublease required the sublessor to give the Port written notice of its exercise of the option to extend the sublease period at least 180 days before the expiration of the current sublease period.

On January 24, 2007, the Sublease was assigned to plaintiff LNG in Skipanon's bankruptcy proceedings.

On April 24, 2009, plaintiff LNG gave notice to the Port that it was exercising its option to extend the lease for an additional thirty year term. The Port has not exercised its option to extend the Master Lease with the State of Oregon for an additional thirty year term, and the original term of that lease will expire on October 31, 2009. Instead, on August 18, 2009, the defendant Commissioners voted to extend the first term of the Master Lease until October 31, 2011. On August 24, 2009, the Port and the State of Oregon DSL executed an amendment of the Master Lease, extending the initial term of that lease until October 31, 2011. The Master Lease Amendment explicitly preserved the Port's option to renew the Master Lease for two additional thirty year periods.

The Port contends that it is not required to renew its Master Lease Agreement with the State of Oregon for a thirty year term, and that the two year extension of the Master Lease "effectively moots" plaintiff LNG's claim that the Port must exercise its option to renew the Master Lease at this time. Defendants base the present motion to dismiss, however, on the assertion that the State of Oregon is an indispensable party to the present action, and that the action cannot proceed in the absence of the State as a party.

## CLAIMS

Plaintiff LNG brings five claims. The first claim, asserted only against the Port, alleges that the Port has breached the Sublease Agreement by failing to timely exercise its option to renew the Master Lease, and by taking the position that it is not required to renew that lease after plaintiff LNG has exercised its option to renew the Sublease. This claim alleges that the Port "has no objectively reasonable basis for refusing to renew" the Master Lease, and requests a "decree of specific performance requiring the Port to exercise its option

FINDINGS AND RECOMMENDATION - 4

to renew under the Master Lease in order for the Port to meet its obligations under the Sublease and the intent of the parties."

The second claim, also brought only against the Port, alleges that the Port has breached an implied covenant of good faith and fair dealing by refusing to renew the Master Lease.  Plaintiff LNG seeks recovery of monetary damages and attorney fees on this claim.

The third claim, which is also brought only against the Port, reiterates the allegations of the first claim, and alleges the right to recover monetary damages and attorney fees.

The fourth claim, which is brought only against the Port, reiterates the preceding allegations, and asserts that plaintiff LNG "is entitled to a declaratory judgment that the Port is obligated under the Sublease to exercise its option to renew the Master Lease."

The fifth claim is brought against all defendants.  This claim reiterates the allegations set out in the preceding claims, and asserts entitlement to a declaratory judgment requiring the individual defendants to "vote for the Port to exercise its option to renew the Master Lease with DSL."

## STANDARDS

Federal Rule of Civil Procedure 12(b)(7) permits a defendant to move to dismiss based upon a plaintiff's failure to join a party whose participation in an action is required under Rule 19.

Rule 19(a)(1) provides that "[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

>> (A)  in that person's absence, the court cannot accord complete relief among existing parties; or
>
>> (B)  that person claims an interest  relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>>> (I)  as a practical matter impair or impede the person's ability to protect the interest; or
>
>>> (ii)  leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Rule 19(b) provides that "[i]f a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."

In determining whether an absent party is "indispensable," within the meaning of Rule 19, and accordingly whether the action cannot proceed in that party's absence, the court conducts "three successive inquiries." E.E.O.C. v. Peabody Coal Co., 400 F.3d 774, 779 (9th Cir. 2005) (citing United States v. Bowen, 172 F.3d 682, 688 (9th Cir. 1999)).  First, the court must consider whether the nonparty should be joined under Rule 19(a). Id.  If the nonparty should be joined pursuant to that rule, the nonparty is considered a "necessary" party, and the court must next determine whether joinder is feasible.[1]  Id.  Finally, if joinder is not feasible,

---

[1] Joinder is not feasible when a joined party objects to venue and joinder would make venue improper, when the nonparty is not subject to personal jurisdiction, and when joinder would destroy subject matter jurisdiction. Id. (citing Fed. R. Civ. P. 19(a); Tick v. Cohen, 787 F.2d 1490, 1493 (11th Cir. 1986)).

FINDINGS AND RECOMMENDATION - 6

at the third step, the court must determine whether the action can proceed without the absent party, or whether that party is an "indispensable party." Id.  If the absent party cannot be joined and is "indispensable," the action must be dismissed.  Id.  Parties are "indispensable" under Rule 19(b) if they "not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience."  Id. at 780 (quoting Shields v. Barrow, 58 U.S. 130, 139 (1854)).

## DISCUSSION

1. Defendants' motion to dismiss pursuant to Rule 12(b)(7)

      Defendants contend that the state of Oregon is a "indispensable party because it must expressly approve all extensions of the Master lease – the remedy sought by the plaintiff." They argue that the State of Oregon is a "real party-in-interest" in this action, and that, "in the State's absence, the Court cannot render justice between the parties before it, and a decree made in the absence of such party will have an injurious effect on the interest of the State and would be severely prejudicial to it."  They assert that the action must be dismissed because, given the immunity from suit in federal courts accorded the states under the Eleventh Amendment to the United States Constitution, the State of Oregon cannot be joined as a defendant in this action.

      Defendants' contention that the State cannot be compelled to participate in this action is clearly correct: In the absence of exceptions that are not relevant here, the Eleventh Amendment generally bars actions brought against a state or its officials and agencies in

FINDINGS AND RECOMMENDATION - 7

federal court, absent a state's unequivocal consent.  See, e.g., Romano v. Bible, 169 F.3d 1182, 1185 (9th Cir. 1999); Durning v. Citibank N.A., 950 F.2d 1419, 1422-23 (9th Cir. 1991). However, in asserting that effective relief could not be granted here in the absence of the State, and that a judgment in this court could be "severely prejudicial" to the State, defendants appear to misapprehend the nature of the relief plaintiff LNG is seeking.  Plaintiff is not seeking to compel the State of Oregon to renew its Master Lease with the Port, and has not asserted that the State has breached the terms of the Master Lease.  Instead, plaintiff LNG asks this court to find that its renewal of its Sublease Agreement with the Port was valid, and the Port is obligated to renew the Master Lease with the State of Oregon DSL for a thirty year period.  A thorough review of the first amended complaint confirms that plaintiff LNG is only asking the court to compel the Port to comply with its obligations under the Sublease, and to take the steps necessary to make LNG's renewal of the Sublease effective.  Defendants have cited, and in my examination of the relevant leases attached as exhibits to the amended complaint I have found, no lease terms that would require the participation of the State in order to render effective relief, or which would render any of the relief potentially obtained by plaintiff LNG in this action prejudicial to the interests of the State.

      The present action is a dispute concerning the terms of the Sublease between the Port and plaintiff LNG.  The State of Oregon is not a party to this Sublease, and its interests are not implicated in this dispute.  Accordingly, its absence will not "impede or impair" its ability to protect its interest, and the criteria for finding that the State is a necessary party under Rule 19(a)(1)B)(I) is not satisfied.  The criteria for finding that the State is a necessary party under Rule 19(a)(1)(B)(ii) is not satisfied, because the Port has not demonstrated how the

FINDINGS AND RECOMMENDATION - 8

nonjoinder of the State could subject it to multiple or inconsistent obligations. Under these circumstances, defendants have not shown that the State is a "necessary" party within the meaning of Rule 19(a), and the court necessarily does not reach the question whether it is an "indispensable" party within the meaning of Rule 19(b). Defendants' motion to dismiss for failure to join a party required under Rule 19 should be denied.

2. Status of individual defendant Commissioners

Defendants contend that the Eleventh Amendment bars suits against them brought in federal court because they are "state officials subject to state law."

Defendants correctly note that the Eleventh Amendment bars certain actions in federal court which seek to require "state officials" to comply with state law. See Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 103 (1984). However, I disagree with defendants' contention that, because Oregon statutes provide for their appointment and election, the Port Commissioners are such officials.

Plaintiff correctly notes that, in Bennett Trust Co. v. Sengstacken, 58 Or. 333, 345, 113 P. 863 (1911), the Oregon Supreme Court concluded that Port Commissioners are not state officers within the meaning of the Oregon Constitution. Defendants, on the other hand, correctly note that, in an Opinion issued in 1954, the Oregon Attorney General stated that the Sengstacken decision was "weakened by the later decision rendered in Gibson v. Kay, 68 Or. 589 (1914), that the legislature's designation of a position as an 'office' is determinative of the question, inasmuch as the commissioners in the earlier case had been designated by the legislature as 'officers' of the port, a municipal corporation." 26 Or. Op. Atty. Gen. 246, 1954 WL 47937. However, the question of Eleventh Amendment immunity from suit in

FINDINGS AND RECOMMENDATION - 9

federal court is different than the question whether an individual might qualify as a "public officer" under Oregon law, and these decisions are of little relevance here. Notably, the question before the Attorney General was not whether Port Commissioners are state officials for the purposes of Eleventh Amendment immunity, but the far different question whether officers and employees of the Oregon State Bar were eligible for old-age and survivors insurance coverage and participation in the public employees retirement system (PERS). In concluding that these officers and employees qualify for state insurance and PERS benefits, the Attorney General emphasized that the board of bar governors, as "an administrative board discharging governmental functions of the state serves and has its being in the administrative branch of the state government." Id. at 3. The Attorney General further observed that a position on the board of bar governors is a "state office" and that board members execute "sovereign functions" of state government. Id.

       The conclusion that the board of bar governors discharged "governmental functions of the state" was apparently sufficient to qualify board officers and employees for certain state benefits. However, it is insufficient to establish that the Port Commissioners are immune from suit in this court, because the mere conclusion that a defendant is an "officer" of an entity created under state authority, and which may exercise some state power, is not sufficient to invoke the protection of Eleventh Amendment immunity. Lake Country Estates, Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391, 401 (1979) (Supreme Court has consistently refused to construe Eleventh Amendment as protecting state political subdivisions such as counties and municipalities, despite these entities' exercise of some "slice of state power"). Instead, the relevant question is whether the Port itself is a "state agency" entitled to immunity under the Eleventh Amendment, because the individual Port

FINDINGS AND RECOMMENDATION - 10

Commissioners are entitled to immunity only if the Port is a "state agency" for Eleventh Amendment purposes. See Eaglesmith v. Ward, 73 F.3d 857, 859-60 (9th Cir. 1995) (citing, Hafer v. Melo, 502 U.S. 21, 27 (1991)) (if entity employing him was state agency entitled to Eleventh Amendment immunity, defendant Superintendent of Schools was also entitled to such immunity).

Defendants have not asserted that the Port itself is a "state agency" subject to the protections of the Eleventh Amendment. Nor would such an assertion prevail. In determining whether a government agency is a "state agency" for Eleventh Amendment purposes, courts consider: (1) whether a money judgment against the agency would be satisfied out of state funds; (2) whether the entity performs "central government functions"; (3) whether the entity has the capacity to sue or be sued; (4) whether the entity may hold property in its own name, or only in the name of the state; and (5) whether the entity has the corporate status of a state entity. Holz v. Nenana City Public School Dist., 347 F.3d 1176, 1180 (2003). Applying these factors here, the Port clearly does not qualify as a "state entity" entitled to Eleventh Amendment immunity from suit in this court. Because the Port is not entitled to such immunity, the individual Commissioners are not entitled to such immunity, either.

Defendants' reliance on Recall Bennett Committee v. Bennett, 196 Or. 299, 249 P.2d 479 (1952), is also misplaced. In Bennett, the Court held that the name of a recalled city commissioner could not be placed on a ballot to determine who would serve the unexpired remainder of his term. Defendants correctly note that, in its analysis, the Court approved of a definition of the term "public office" as a "public station or employment conferred by the appointment of government, or the right, authority, and duty created and conferred by law,

by which . . . an individual is invested with part of the sovereign functions of the government." Id. at 325 (quoting 67 C.J.S., Officers, § 2, p. 97). However, in concluding that, because they are "elected officials of the Port of Astoria, a Municipal Corporation," they are immune from suit in this court, defendants overstate the significance of that definition, and ignore that the Port itself is not entitled to immunity under the Eleventh Amendment. As noted above, the Port Commissioners would be entitled to immunity under the Eleventh Amendment only if the Port itself were entitled to such immunity, and it is not.

3. New arguments asserted for first time in defendants' reply memorandum

Defendants' motion to dismiss cited only plaintiff's alleged failure to join an indispensable party and the Commissioner's immunity from suit in this court as the bases for dismissal. In their opening memorandum in support of the motion to dismiss, defendants stated that the extension of the Master Lease "effectively moots" plaintiff's claims. However, that memorandum did not cite extension of the lease as a basis for defendants' motion, but instead explicitly stated that "it is the failure to join the state as a party defendant and the plaintiff's inability to do so that is fatal to [plaintiff's] claims in this court." Notwithstanding their reliance solely upon the "indispensable party" argument and their assertion that the commissioners are immune from suit in this court in their motion and opening memorandum, in their reply memorandum defendants argue at length that the action should also be dismissed because plaintiff lacks standing and plaintiff's claims are not ripe for adjudication.

Neither defendants' motion nor its opening memorandum fairly apprised plaintiff LNG or the court that standing and ripeness were issues at this time, and these issues are not properly before the court. See, e.g., Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007)

FINDINGS AND RECOMMENDATION - 12

(citing Koerner v. Grigas,328 F.3d 1039, 1048 (9th Cir. 2003)) (district court need not consider arguments raised for first time in reply briefs).  If it appeared that defendants' newly asserted arguments were correct, and this court therefore might not have jurisdiction, I would allow plaintiff additional time to submit supplemental arguments concerning these issues, and would examine the arguments in depth.  Because this does not appear to be the case, I will not address the merits of defendants' untimely arguments, and will issue this Findings and Recommendation without further delay.

## CONCLUSION

Defendants' motion to dismiss this action (#44-1) and motion to dismiss the claim against the individual defendants (#44-2) should be DENIED.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due November 17, 2009.  If no objections are filed, the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response is due within 10 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 2nd day of November, 2009.

/s/  John Jelderks
John Jelderks
U.S. Magistrate Judge

FINDINGS AND RECOMMENDATION - 13