FILED '09 DEC 29 14:40 USDC-ORP

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| LNG DEVELOPMENT COMPANY, LLC, dba OREGON LNG, | ) ) Civil No. 09-847-JE |
| Plaintiff, | ) ) FINDINGS AND ) RECOMMENDATION |
| v. | ) ) |
| PORT OF ASTORIA, an Oregon Port; DAN HESS, an individual; LARRY PFUND, an individual; WILLIAM HUNSINGER, an individual; JACK BLAND, an individual; and FLOYD HOLCOM, an individual, | ) ) ) ) ) ) |
| Defendants. | ) ) ) |

Gregory A. Chaimov
William D. Miner
Davis Wright Tremaine LLP
1300 S.W. 5th Avenue, Suite 2300
Portland, OR 97201

Attorneys for Plaintiff

FINDINGS AND RECOMMENDATION - 1

Thane W. Tienson
Jennifer L. Gates
Landye Bennett Blumstein, LLP
1300 S.W. 5th Avenue, Suite 3500
Portland, OR 97201

Attorneys for Defendant

JELDERKS, Magistrate Judge:

Plaintiff LNG Development Company, LLC (LNG), brings this action against

defendants Port of Astoria (the Port) and Port Commissioners Dan Hess, Larry Pfund,

William Hunsinger, Jack Bland, and Floyd Holcom (the Commissioners).  Plaintiff seeks

declaratory, injunctive, and monetary relief based upon defendants' refusal to request renewal

of the Port's lease of certain real property from the Oregon Department of State Lands (DSL).

Defendants move to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(7) and 19 on

the grounds that the action is not ripe for adjudication and that plaintiff lacks standing.

For the reasons set out below, defendants' motion to dismiss should be denied.


**BACKGROUND**

Plaintiff LNG, a limited liability company organized under the laws of Delaware, has

its principal place of business in Vancouver, Washington.

Defendant the Port is located in Astoria, Oregon.  The Port is governed by a Board of

Commissioners comprised of the individual defendants (the Commissioners).

This action arises from the lease and sublease of approximately 94 acres of land (the

premises) owned by the State of Oregon in Clatsop County, Oregon.  On November 1, 2004,

the State of Oregon, acting through the DSL, leased the premises to the Port in a document

FINDINGS AND RECOMMENDATION - 2

entitled "Upland Lease Agreement." That agreement is referred to as the "Master Lease Agreement" or the "Master Lease" in this Findings and Recommendation. The Master Lease provided for an initial lease period of five years, and provided the Port with options to extend the Lease for two additional thirty-year terms. Section 12.2 of the Master Lease Agreement allowed the Port, with the State of Oregon's written consent, to sublease, and extend or renew the sublease, of the premises.

Four days later, on November 5, 2004, the Port entered into an agreement (the "Sublease Agreement") subleasing the premises to Skipanon Natural Gas, LLC (Skipanon). The Sublease Agreement included terms very similar to the terms of the Master Lease Agreement. Like the Master Lease, the Sublease provided for an initial term of five years, and provided the sublessor the option to extend the Sublease for two additional thirty-year terms. The Sublease required the sublessor to give the Port written notice of its exercise of the option to extend the sublease period at least 180 days before the expiration of the current sublease period.

On January 24, 2007, the Sublease was assigned to plaintiff LNG in Skipanon's bankruptcy proceedings.

On April 24, 2009, plaintiff LNG gave notice to the Port that it was exercising its option to extend the lease for an additional thirty-year term. The Port did not, in turn, exercise its option to extend the Master Lease with the State of Oregon for an additional thirty-year term, and the original term of that lease expired on October 31, 2009. Instead, on August 18, 2009, the defendant Commissioners voted to extend the first term of the Master Lease until October 31, 2011. On August 24, 2009, the Port and the State of Oregon DSL executed an amendment of the Master Lease, extending the initial term of that lease until

October 31, 2011. The Master Lease Amendment explicitly preserved the Port's option to renew the Master Lease for two additional thirty-year periods.

## CLAIMS

Plaintiff LNG brings five claims. The first claim, asserted only against the Port, alleges that the Port has breached the Sublease Agreement by failing to timely exercise its option to renew the Master Lease, and by taking the position that it is not required to renew that lease after plaintiff LNG has exercised its option to renew the Sublease. This claim alleges that the Port "has no objectively reasonable basis for refusing to renew" the Master Lease, and requests a "decree of specific performance requiring the Port to exercise its option to renew under the Master Lease in order for the Port to meet its obligations under the Sublease and the intent of the parties."

The second claim, also brought only against the Port, alleges that the Port has breached an implied covenant of good faith and fair dealing by refusing to renew the Master Lease. Plaintiff LNG seeks recovery of monetary damages and attorney fees on this claim.

The third claim, which is also brought only against the Port, reiterates the allegations of the first claim, and alleges the right to recover monetary damages and attorney fees.

The fourth claim, which is brought only against the Port, reiterates the preceding allegations, and asserts that plaintiff LNG "is entitled to a declaratory judgment that the Port is obligated under the Sublease to exercise its option to renew the Master Lease."

The fifth claim is brought against all defendants. This claim reiterates the allegations set out in the preceding claims, and asserts entitlement to a declaratory judgment requiring

the individual defendants to "vote for the Port to exercise its option to renew the Master
Lease with DSL."

## DISCUSSION

In this, their second motion to dismiss, defendants contend that, because the Master
Lease and Sublease Agreement have been extended for a two-year period, plaintiff has
suffered no "actual injury in fact."[1]  Defendants assert that, in the absence of any injury,
plaintiff lacks standing to bring this action, and plaintiff's claims are not ripe.

Defendants cite Fed. R. Civ. P. 12(b)(7) and Fed. R. Civ. P. 19 as the basis of this
motion.  However, it appears that they may have referenced these Rules in error: These Rules
were the basis of defendants first motion to dismiss, which asserted that plaintiff had failed to
name an indispensable party.  The present motion, unlike the first, asserts that the court lacks
subject matter jurisdiction.  As noted in the Findings and Recommendations addressing
defendants' first motion to dismiss, Rule 12(b)(7) permits a defendant to move to dismiss
based upon a plaintiff's failure to join a party whose participation is required under Rule 19.
Though defendants continue to assert that the relief plaintiff seeks cannot be granted without
the participation of the State of Oregon, the present motion would be more appropriately
based upon Fed. Rule Civ. P. 12(b)(1).  That Rule is usually cited where, as here, a defendant
contends that the court lacks subject matter jurisdiction because a plaintiff lacks standing or
because the claims presented are unripe.  See, e.g., Colwell v. Department of Health and

---

[1]Defendants first raised the standing and ripeness issues upon which this second motion
to dismiss is based in their reply memorandum in support of their first motion to dismiss.
Though I declined to address those issues at length because they were untimely, I noted that I
would have allowed additional briefing and would have examined the arguments in depth if
they appeared to have merit.  LNG Development Co., Inc. v. Port of Astoria, 09-847-JE,
CV 09-847-JE, slip op at 13 (D. Or. November 2, 2009). Because these arguments did not
appear to have merit, I did not allow additional briefing.  Id.

Human Services, 558 F.3d 1112, 1121-24 (9th Cir. 2009)(reviewing district court's dismissal of complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction). Accordingly, I will analyze plaintiff's motion pursuant to Rule 12(b)(1).

"A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle it to relief." Id. at 1121 (quoting Daniel v. County of Santa Barbara, 288 F.3d 375, 380 (9th Cir.), cert. denied, 537 U.S. 973 (2002)). The party asserting a claim bears the burden of establishing that it has standing and that the matter is ripe for adjudication. Id. (citing Renne v. Geary, 501 U.S. 312, 316 (1991)). A party moving to dismiss pursuant to Rule 12(b)(1) may submit "affidavits or any other evidence. . . ." St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989). The party opposing the motion then must respond by presenting affidavits or any other evidence needed to establish that the court has subject matter jurisdiction. Id.

A. Standing

1. Standing requirement

Under Article III of the United States Constitution, the judicial power of federal courts extends only to "cases" and "controversies." Because of this limitation on judicial power, federal courts have subject matter jurisdiction only where the litigants have "standing" and present an issue that is "ripe" for review. See Colwell, 558 F.3d at 1121.

Three elements are necessary to satisfy the jurisdictional requirements of Article III "standing." Id. at 1121-22. First, the plaintiff must have suffered an "injury in fact." Id. at 1122. This "injury" must result from an invasion of a legally-protected interest that is "concrete and particularized," and "actual or imminent," rather than speculative or hypothetical. Id. Second, there must be a causal relationship between the injury and the

conduct complained of. Id. This means that the injury must be "fairly traceable" to the

defendant's conduct, rather than result from the action of some party that is not before the

court. Id. Third, the possibility that a favorable decision will redress the injury must be

likely, not speculative. Id.

2. Analysis of standing in present action

     Defendants contend that plaintiff lacks standing because the Port's failure to renew the

Master Lease for a thirty-year period has caused it no harm. Defendants assert that plaintiff

has suffered no injury, and that no injury is imminent, because it has not been deprived of its

use of the leased land, and the Master Lease will remain in place through October 31, 2011.

They also assert that plaintiff can establish no harm because, in an action the Port has brought

against plaintiff LNG in Clatsop County Circuit Court, it has alleged that it will "immediately

notify DSL of its intent to exercise the first of its 30-year lease options" if, before the

two-year extension of the Master Lease expires, LNG obtains "necessary approvals to operate

an LNG import facility. . . ."

     This argument fails. In a Findings and Recommendation filed on November 17,

2009, I noted that the Port "cannot seriously contend" that the two-year extension of the

Master Lease that it has sought "is either provided for under the terms of the Sublease

Agreement or of equivalent value to the thirty-year extension provided for in that

Agreement." LNG Development Company, LLC v. Port of Astoria, CV No. 09-847-JE,

slip op. at 18 (D. Or., Nov. 17, 2009). I also noted that, if plaintiff's renewal of the Sublease

did not require the Port to take steps to renew the Master lease for the same period of time,

the option to renew "could be worthless, or worse than worthless if LNG invested substantial

sums in constructing a facility only to have its renewal denied." Id. at 10.

The right to a thirty-year sublease extension is a bargained-for contractual term of obvious benefit to an entity seeking to construct and operate a facility that defendants acknowledge will cost hundreds of millions of dollars, and the importance of securing control of the premises for a long period of time is of obvious value to a business that seeks financing for such an investment. Plaintiff's assertion that it cannot obtain the "financing, permits, and long-term contracts that a project of this type requires" in the absence of long-term site control is only reasonable, and is supported by material submitted earlier in this action, including the declaration of Peter Hansen, plaintiff's CEO. In that declaration, Hansen stated that plaintiff had already spent $23-25 million dollars on development of the project, and needed long-term control of the site in order to obtain long-term financing and to justify the expenditure of millions of dollars in development efforts. Plaintiff's assertion that it is already being harmed by the Port's failure to take steps to renew the Master Lease is also supported by a declaration that Hansen later submitted in support of plaintiff's recently filed motion for a preliminary injunction. In this declaration, Hansen clearly articulates a number of reasons that obtaining long-term control of the site is critically important to plaintiff now, and why a two-year "renewal" is "virtually worthless" to plaintiff. These include the reluctance of "potential customers and partners" to work with plaintiff in the absence of a long-term lease, and the loss of competitive advantage to other companies that are attempting to site a liquified natural gas facility.

The Port's allegation in a separate lawsuit that it will immediately seek a thirty-year extension of the Master Lease if plaintiff obtains the "necessary approvals" does not eliminate the injury inevitably flowing from denial of that extension at this time. The Port's allegations in a complaint filed in another action are just that–allegations. They do not

constitute an enforceable contractual agreement, and do not eliminate the immediate and

ongoing injury already caused to plaintiff by the Port's failure to carry out its contractual

obligations. In addition, these terms condition renewal on the Port's own interpretation of

what approvals are "necessary," adding an uncertainty that does not exist under the

unambiguous terms of the Sublease Agreement.

Defendants also contend that plaintiff LNG lacks standing because it cannot

ultimately secure renewal for a thirty-year period without the approval of the State of Oregon,

which is not a party to this action. This argument also fails. As has been clearly noted in the

court's earlier Findings and Recommendations, plaintiff has brought this action to compel the

Port to take the steps necessary to renew the Master Lease, not to require any action by the

State. Plaintiff has cited evidence supporting the conclusion that it is currently harmed by the

uncertainty engendered by the Port's failure to carry out its contractual obligations, and that

this harm can be redressed by a decision requiring the Port to meet those obligations by

seeking the thirty-year extension unambiguously provided for in the Master Lease. This is

sufficient to satisfy the standing requirement, and the motion to dismiss for lack of standing

should be denied. That plaintiff hypothetically could be harmed by later action by the State

in no way diminishes plaintiff's showing that it is presently being injured by the Port's

conduct, and that relief in the present action could remedy that injury.

B. Ripeness

1. Ripeness requirement

The standing and ripeness requirements for federal subject matter jurisdiction are

closely related: In order to be "ripe" within the meaning of Article III, an action "must

present 'concrete legal issues, . . . not abstractions.' " Colwell, 558 F.3d at 1123 (quoting

<u>United Public Workers v. Mitchell</u>, 330 U.S. 75, 89 (1947)).  While standing is primarily a matter of who is a proper party to litigate an issue, "ripeness addresses *when* that litigation may occur."  <u>Lee v. State of Oregon</u>, 107 F.3d 1382, 1387 (9th Cir. 1997) [emphasis in original].  The ripeness requirement is imposed to prevent courts from "entangling themselves in abstract disagreements" by adjudicating disagreements prematurely. <u>Abbott Laboratories v. Gardner</u>, 387 U.S. 136, 148 (1967).

2. <u>Analysis of ripeness in present action</u>

Defendants contend that this action is not ripe for judicial review because the two-year extension of the Master Lease negotiated by the Port and the DSL relieved the Port of any obligation to renew the Master Lease at this time.  Defendants contend that plaintiff has made no showing that withholding judicial review now "will result in direct and immediate hardship to it entailing anything more than *potential* loss *in the future* based upon acts taken or not taken by the Port and the State of Oregon."  Defendants' memorandum in support of second motion to dismiss at 13.

I disagree.  As noted in my Findings and Recommendation filed on November 17, 2009, the Port is currently in breach of its contractual obligation to seek renewal of the Master Lease.  Plaintiff has cited evidence supporting the conclusion that the uncertainty created by this breach is causing it harm now, and this harm can be redressed now if the Port is required to take the steps necessary to renew the Master Lease.  The issues presented therefore are "concrete" rather than "abstract" at this time.  The ripeness requirement is satisfied, and defendants' motion to dismiss the action as unripe for judicial review should be denied.

## CONCLUSION

Defendants' second motion to dismiss (# 86) should be DENIED.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due January 15, 2010. If no objections are filed, the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 29th day of December, 2010.

_____
John Jelderks
U.S. Magistrate Judge