Thane W. Tienson, OSB No. 773741
ttienson@landye-bennett.com
Jennifer L. Gates, OSB No. 050578
jgates@landye-bennett.com
Landye Bennett Blumstein, LLP
1300 SW 5th Avenue, Suite 3500
Portland, Oregon  97201
Phone: (503) 224-4100
Fax: (503) 224-4133

Counsel for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON AT PORTLAND

| | |
|---|---|
| **LNG DEVELOPMENT COMPANY, LLC d/b/a OREGON LNG**,<br><br>      Plaintiff,<br><br>  v.<br><br>**PORT OF ASTORIA**, an Oregon Port; **DAN HESS**; an individual, **LARRY PFUND**; an individual, **WILLIAM HUNSINGER**, an individual, **JACK BLAND**, an individual, and **FLOYD HOLCOM**, an individual,<br><br>      Defendants. | Case No. 3:09-CV-847JE<br><br>**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR INJUNCTION** |

## SUPPLEMENTAL INTRODUCTORY FACTS

    Plaintiff is the assignee of the original sublessee, Skipanon Natural Gas ("SNG").  The initial Master Lease and Sublease were entered into in November, 2004.  More than two years later, in late December 2006 or early January 2007, in conjunction with the filing of a bankruptcy petition by the parent company of the original sublessee, Calpine, the Sublease was assigned to Plaintiff, a newly created limited liability company headed by Peter Hansen, one of officers of the original sublessee.  In order to respond to concerns about the solvency of the new LLC and the concerns the Port had because of its independent liability to the State of Oregon Department

Page 1 - DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION
    FOR INJUNCTION

of State Lands ("DSL") for payment of the remaining years of the initial five-year lease period, Plaintiff's parent company, Leucadia National Corporation, guaranteed payment of the lease payments for the five-year period, through November 2009. That guarantee has now expired. See Docket Nos. 64 and 65, Exhibit C to Declarations of Tienson and Hess.

The initial five-year lease period was established in order to allow sufficient time for the original sublessee, SNG, to determine whether it could obtain approvals from the appropriate government agencies, especially the Federal Energy Regulatory Commission ("FERC") to construct and operate a liquefied natural gas (LNG) import facility. Expecting that that initial five-year period would be sufficient to determine whether or not those approvals would be forthcoming, the Master Lease and Sublease, which were negotiated in tandem, were structured to allow for two thirty-year renewal periods following the expiration of the initial five-year lease period to determine project feasibility. See Docket No. 65, and Exhibits A and B thereto.

With the unexpected bankruptcy of the original lessee, SNG, more than two years into the initial five-year period, the approval process itself is now expected to take at least an additional two years. See Docket No. 65, Declaration of Dan Hess, ¶ 19. This has never been controverted by the Plaintiff.

Concerned about the independent liability that the Port would have for rent payments for the full 30-year period regardless of the Plaintiff's success in securing approvals to construct and operate an LNG import facility, and concerned as well about a then pending criminal investigation of the Port's former executive director by the Oregon Department of Justice regarding the factual circumstances surrounding the entry into the Sublease, the Port, following procedures established in the Master Lease, amended the Master Lease with DSL in August 2009, and secured an extension of the initial five-year lease period by two years, until 2011. The amendment allows Plaintiff the additional time it will need to secure approvals, before the Port independently commits to pay for thirty years of lease payments to DSL. See Docket No. 63, Hunsinger Declaration, ¶¶ 1-7; Docket No. 64, Tienson Declaration, Exhibit D.

**LEGAL ARGUMENT**

    A.    **Standards for Issuance of Injunction**

Plaintiff claims to seek a preliminary mandatory injunction, but there is nothing "preliminary" about the injunctive relief the Plaintiff seeks. Because it is clear the conduct sought to be compelled is effectively permanent – the exercise of a 30-year option in its Upland Lease with DSL – Plaintiff's Motion must be treated as a request for a permanent mandatory injunction. Plaintiff cannot meet the standards for granting a preliminary injunction, let alone the more demanding standards for a permanent mandatory injunction.

In Winter v. Natural Resources Defense Council, Inc., 555 U.S. __, 129 S. Ct. 365 (2008), the United States Supreme Court clarified the standards relating to grants of both preliminary and permanent injunctive relief. In reversing the Ninth Circuit's grant of a preliminary injunction to NRDC, the Supreme Court noted that a party seeking preliminary injunctive relief must demonstrate that irreparable injury is "likely" in the absence of an injunction. Id. at 375. Plaintiff incorrectly argues that it need only show a "possibility" of injury – the standard is whether injury is likely, not possible. See Plaintiff's Memorandum in Support at 3.

The Winter court further noted that "A preliminary injunction is an extraordinary remedy never awarded as of right." and that "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Id. at 376. Turning to the issue of a permanent injunction, the court stated:

> At the same time, what we have said makes clear that it would be an abuse of discretion to enter a permanent injunction, after final decision on the merits, along the same lines as the preliminary injunction. An injunction is a matter of equitable discretion; it does not follow from success on the merits as a matter of course . . . .
>
> The factors examined above – the balance of equities and consideration of the public interest – are pertinent in assessing the propriety of any injunctive relief, preliminary or permanent. See Amoco Production Company v. Village of Gambell, 480 U.S. at 546, n.12, 107 S. Ct. 1396 ("The standard for

Page 3 -  DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR INJUNCTION

> preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.").

Id. at 381.

Similarly, because Plaintiff seeks a mandatory rather than prohibitory injunction, the Court must scrutinize the issues and should be reluctant to grant such relief.

> [C]ourts are more reluctant to grant a mandatory injunction than a prohibitory one and . . . generally an injunction will not lie except in prohibitory form. Such mandatory injunctions, however, are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages.

Anderson v. U.S., 612 F.2d 1112 (9th Cir. 1979) (quoting Clune v. Publishers' Assn. of New York City, 214 F.Supp. 520 (S.D.N.Y.1963)); see also O Centro Espirita Beneficiente v. Ashcroft, 389 F.3d 973 (10th Cir. 2004) (noting heightened standard for mandatory injunction).

### B.   Actual Success on the Merits

To satisfy this essential component of injunctive relief (i.e., that Plaintiff has prevailed or likely will prevail on the merits), Plaintiff relies upon the Magistrate Judge's Findings and Recommendation in conjunction with its earlier Motion for Partial Summary Judgment on the issue of whether the Port breached an obligation by failing to renew its Master Lease with DSL for thirty years. Those Findings and Recommendation have been objected to and are now pending before Judge Mosman. Rather than repeat the same arguments and analysis the Port made in conjunction with its Opposition to that Motion and in its Objections to the Findings and Recommendation, the Port reiterates and incorporates by reference the arguments it made in those pleadings. See Docket Nos. 61, 80, 82 and 83.

In summary, there is no obligation on the part of the Port, express or implied, to exercise its 30-year renewal option of the Master Lease at this time. The Sublease makes no reference to the Master Lease, which constitutes an independent obligation of the Port to DSL as landlord. The Port and DSL have properly and successfully amended the Master Lease to allow for an

additional 2-year period before that first 30-year renewal option must be exercised. Moreover, the Port and DSL's reasons for amending the Master Lease to allow for that 2-year extension were factually supported and prudent under the circumstances and an appropriate exercise of discretion on the part of the Port and DSL, both of which are public bodies invested with substantial discretion. Defendants submit the Court should defer to the judgment of the Port and State, as public bodies and give respect to their decision to enter into that amendment.

This is particularly true where, as here, the injunction sought would require the Court to order action by governmental actors:

> [B]ecause Plaintiff seeks to enjoin a government agency, 'his case must contend with the well-established rule that the Government has traditionally been granted the widest latitude in the dispatch of its internal affairs.' Rizzo v. Goode, 423 U.S. 362, 378-79, 96 S.Ct. 598 (1976) (citations and internal quotation marks omitted). This 'well-established rule' bars federal courts from interfering with non-federal government operations in the absence of facts showing an immediate threat of substantial injury.
>
> . . . Finally, a federal court must exercise restraint when a Plaintiff seeks to enjoin any non-federal government agency, be it local or state. That Tri-Met is a local government entity does not, as Plaintiff argues, lighten his burdens. See Rizzo, 423 U.S. at 380, 96 S.Ct. 598 (recognizing that the same principles govern when an injunction is sought against an agency of a local government and applying them to a request for injunction against city officials.

Midgett v. Tri-County Metropolitan Transp. Dist. of Oregon, 254 F.3d 846, 850 (9th Cir. 2001) (quoting Hodgers–Durgin v. De La Vina, 199 F.3d 1037 (9th Cir. 1999)).

### C. **Plaintiff Has Sustained No Injury and Therefore Has Not Demonstrated its Likely or Actual Success on the Merits.**

Regardless of the Magistrate Judge's Findings and Recommendation on the Plaintiff's Motion for Partial Summary Judgment, the injunctive relief sought by the Plaintiff should not be granted because a necessary element of the Plaintiff's claim for relief for breach of contract is that there be "damage" or injury and there has been no evidence introduced by the Plaintiff to establish that it has been damaged by any breach committed by the Port. Without proof of

damage, the Plaintiff cannot establish that it will likely prevail let alone that it has prevailed on the merits.  The Declaration of Mr. Hansen does not contain a single sentence describing any actual injury suffered by the Plaintiff.  Rather, Mr. Hansen talks of "uncertainties" related to the delay in securing long-term site control  Put simply, this uncertainty is not equivalent to "an immediate threat of future harm."  Plaintiff neither cites nor has submitted any other allegations or declarations that suggest any injury has been sustained by Plaintiff or that further define what injury has been suffered by Plaintiff.  Consequently, the Plaintiff cannot satisfy the first element of any claim for injunctive relief, i.e., that it had prevailed on the merits because without any evidence that it has sustained any damage, its claims must fail.

### D. **Plaintiff Has Not Demonstrated Any Immediate Threat of Irreparable Harm.**

"To have standing to seek injunctive relief the plaintiff must allege an imminent threat of future harm."  Vannatta v. Keisling, 899 F.Supp. 488, 494 (D. Or. 1995).  In order to be entitled to an injunction, Plaintiff *must make the showing* that it faces it real or immediate threat of substantial or irreparable injury.  Hodgers–Durgin v. De La Vina, 199 F.3d 1037, 1042 (9th Cir. 1999).  It is evident Plaintiff has not incurred and cannot prove that it has sustained any damage at this point in time.  Thus, even if the Magistrate Judge's Findings and Recommendation are upheld by the Court, Plaintiff nonetheless has failed to satisfy the standards for the grant of injunctive relief because it has failed to demonstrate that it would suffer irreparable injury without such immediate relief.

In that regard, again, the only "evidence" introduced by the Plaintiff is the Declaration of Peter Hansen, the Plaintiff's CEO, asserting speculative concerns that it must demonstrate "site control" in order to enhance its ability to obtain requisite permits to construct and operate an LNG import facility, but Plaintiff offers no evidence in support of that assertion, and absolutely no evidence that such site control is required immediately to prevent irreparable harm, only that further delay causes "uncertainty."

Plaintiff's contention that it is suffering irreparable harm is belied by the fact that the structure of the original Master Lease and Sublease anticipated that necessary government approvals would have been obtained *before* exercising the 30-year renewal option. In other words, Plaintiff was (an has been since the lease inception) in the position of obtaining the necessary approvals, permits and financing during the initial term of the leases and thus before it became known whether it or the Port would renew either lease and have long term site control. This is the same situation it currently faces. Indeed, the existence of the renewal options in both the Master Lease and Sublease serves only to emphasize the entirely speculative nature of Plaintiff's argument regarding the immediate threat of irreparable harm standard, and the real uncertainty at issue here – whether the Plaintiff will obtain the necessary State and FERC approvals it needs to obtain financing.[1] The 30-year Master Lease renewal it seeks has no effect on those essential permit approvals and Plaintiff has offered no evidence in support of that assertion.[2]

Essentially, Plaintiff argues that it "possibly" will experience future irreparable injury if injunctive relief is denied. As several Ninth Circuit decisions have recognized, however, following the Supreme Court's decision in Winter, the "possibility of irreparable injury" standard previously articulated by the Ninth Circuit is no longer applicable, having been rejected in Winter. See Stormans, Inc. v. Selecky, 571 F.3d, 960, 977-78 (9th Cir. 2009); Winter, supra, 129 S. Ct. at 375 ("to the extent that our cases has suggested a lesser standard, they are no longer

---

[1] When coupled with the Port's assurance in this case and as set forth in the Clatsop County Circuit Court Complaint earlier filed by the Port, that the Port would immediately seek to exercise its thirty-year renewal option of the Master Lease if the Plaintiff in fact was successful in obtaining approvals prior to the expiration of the seven-year period of the initial Master Lease (an assertion not contradicted by Plaintiff), the harm or even threat of harm is even more speculative.

[2] Plaintiff claims the cause of its supposed injury is the effect on its ability to obtain permits, approvals and loans as a result of the lack of certainty of long term site control due to the Port's failure to renew the Master Lease at this time. Even if the Court granted the Injunction the Plaintiff seeks, it would not remedy the harm Plaintiff asserts it is experiencing, as the

controlling or even viable."); American Trucking Assocs., Inc., v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009); see also Harper v. Farm Credit Admin., 628 F.Supp. 1030, 1033 (D. Or. 1985) (finding that where plaintiff could not make a showing beyond mere speculation that the requested remedy of issuance of appropriate regulations by the defendants would prevent the alleged harm of foreclosure, plaintiffs lacked standing and had not shown the possibility of success required for the issuance of a preliminary injunction.).

In point of fact, there is absolutely no precedent for the issuance of an injunction under the factual circumstances presented here. The Nevada case relied upon by the Plaintiff, Wal-Mart Stores, Inc. v. County of Clark, 125 F. Supp. 2d 420 (D. Nev. 1999), is easily distinguished as it did not involve a lease and Plaintiff has not at this point and will not for a year and a half even risk the loss of any rights to use the premises. Plaintiff's strained effort to make this Nevada case applicable to the facts presented here fails.

Similarly, the Stuhlbarg International Sales Co., Inc., v. John D. Brush and Company, Inc., 240 F.3d (9th Cir. 2001) case invoked by the Plaintiff for the proposition that "threatened loss of prospective customers or good will" is ". . . analogous to intangible damages that Plaintiff faces absent the Port taking the necessary steps to renew the Master Lease" is completely inapposite. In fact, Plaintiff has never alleged or argued that it will experience a loss of prospective customers or good will, and such an argument would be entirely premature given that Plaintiff has not even obtained the necessary permits and approvals for construction of an LNG facility at this time. Rather, Plaintiff asserts without any supporting evidence that without the immediate assumption of a 30-year independent lease payment obligation by the Port that it has insufficient site control and that insufficiency will deter financiers or liquid natural gas producers to "invest the time and money necessary for this project to continue." This is an

---

renewal will not be effective without state action, and until that issue is resolved the supposed injury will continue.

Page 8 -   DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR INJUNCTION

utterly unsubstantiated claim and is exactly what the Plaintiff concedes that it is -- "intangible" i.e., without any substance.

### E. The Balance of Hardships Does Not Favor Plaintiff.

A plaintiff seeking an injunction also must establish that the injunction sought is in the public interest through the application of a balance of hardships analysis. Winter, 129 S. Ct. at 381-82; Internet Specialties West, Inc. v. Milon-Digiorgio Enterprises, Inc., 559 F.3d 985, 993 (9th Cir. 2009). The balance of hardships here favors the Port. Plaintiff argues that given the millions of dollars that it has invested thus far in the project, that a claim for relief seeking damages against the Port would be futile because "It is unlikely that the Port would be able to compensate Plaintiff such damages, and the Port would be bankrupt in the process." Significantly, this is precisely the same concern that the Port has with regard to the independent thirty-year lease obligation Plaintiff seeks to compel it to undertake, i.e., the Port is concerned that the Plaintiff will be unable to compensate the Port if it does not obtain the necessary governmental approvals for its proposed project in the months and years ahead, thereby saddling the Port with a thirty-year Master Lease payment obligation with no solvent tenant.

The Master Lease and Sublease provide for a total "pass through" of Sublease rent payments whereby the Port's lease payments to DSL are paid *in toto* by the Plaintiff as Sublease payments with no direct benefit to the Port. Nevertheless, as the Master Lease makes clear and was repeated by DSL in approving the initial Sublease, the Port's obligations to make payments on the lease are wholly independent of that of the sublessee. See Plaintiff's Amended Complaint Exhibit 2, p. 1 and Exhibit 1, p. 21, Article 12 § 12.2 (j). If Plaintiff is unsuccessful in obtaining the approvals it must secure in order to construct and operate an LNG import facility and consequently breaches or defaults on the Sublease, the Port nonetheless would be obligated to continue to make payments for the duration of the 30-year Master Lease renewal period. Plaintiff's status as an LLC makes it unlikely the Port ever would be able to recoup lost rents from Plaintiff. As set forth above, it was because of these concerns that the Port successfully

sought a guarantee from the Plaintiff's parent corporation for the lease payments for the first five-year period. That guarantee has now expired.

As the Plaintiff states, it is unlikely that more than one LNG import facility will be approved by FERC to operate in the State or Oregon (See Hansen Declaration ¶ 5). Thus, the two-year extension embodied in the amended Master Lease entered into between the Port and DSL helps protect the Port, a public body, from significant financial harm with little if any negative impact on Plaintiff, particularly given the Port's assurance that it will immediately exercise its 30-year renewal if the Plaintiff is successful earlier in obtaining requisite approvals. The balance of hardships here clearly favors the Port.

Second, respecting the amendment of the Master Lease protects the integrity of the public contracting system and the intent of the contracting parties in both allowing and enforcing a contractual amendment process that was expressly contemplated by the terms of the Master Lease.

Third, given that the amendment was entered into at a time when there was a state criminal investigation pending regarding the circumstances under which the Master Lease and Sublease were entered into, and that the pending investigation was expressly indentified by the Port as a factor in its decision to seek a two-year extension of the initial lease period, giving force and effect to the two-year amendment serves to protect the public's interest in insuring that such public contracts, ultimately underwritten by the public treasury, were entered into legally, transparently and non-fraudulently with prior disclosure of all material facts to its elected representatives and the affected public citizenry.

Contrarily, the public benefits identified by Plaintiff in support of its Motion center entirely on the financial benefits that will only occur if the Plaintiff is successful in obtaining all governmental approvals and project financing. There are no benefits indentified from the issuance of the injunction itself. Moreover, the benefits it identifies – future job creation and financial benefits to other taxing districts, provide no benefit to the Port and no immediate

benefit to anyone other than the Plaintiff.  There is nothing in the record to allow this Court to fairly conclude that failure to grant the Plaintiff's Motion for Injunctive Relief will jeopardize this purported benefit -- only unfounded speculation.  Thus, any public benefit accruing to Plaintiff from the grant of injunctive relief is at best speculative and is outweighed by the detriment to the Port and to the public.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion for Injunction.

DATED this 30th day of December 2009.

LANDYE BENNETT BLUMSTEIN LLP

By:   /s/ Thane W. Tienson
    Thane W. Tienson, OSB No. 773741
    Jennifer L. Gates, OSB No. 050578
    Counsel for Defendants