Thane W. Tienson, OSB No. 773741
*ttienson@landye-bennett.com*
Jennifer L. Gates, OSB No. 050578
*jgates@landye-bennett.com*
LANDYE BENNETT BLUMSTEIN, LLP
1300 SW 5th Avenue, Ste. 3500
Portland, Oregon  97201
Phone: 503.224.4100
Fax: 503.224.4133

*Counsel for Defendants*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON AT PORTLAND

| | |
|---|---|
| **LNG DEVELOPMENT COMPANY, LLC d/b/a OREGON LNG,**<br><br>Plaintiff,<br><br>v.<br><br>**PORT OF ASTORIA**, an Oregon Port; **DAN HESS**; an individual, **LARRY PFUND**; an individual, **WILLIAM HUNSINGER**, an individual, **JACK BLAND**, an individual, and **FLOYD HOLCOM**, an individual,<br><br>Defendants. | Case No. 3:09-CV-847JE<br><br><br>**DECLARATION OF J. DAVID BENNETT IN SUPPORT OF DEFENDANTS' MOTION FOR PROTECTIVE ORDER** |

**UNDER PENALTY OF PERJURY:**

**I, J. DAVID BENNETT,** do hereby declare the following:

1.    I make this Declaration on the basis of personal knowledge and belief and in further support of Defendants' Motion for Protective Order.

2.    I have been an attorney licensed to practice in the State of Oregon for almost 40 years.  I am a partner in the law firm of Landye Bennett Blumstein LLP, counsel for defendants in this litigation.

Page 1 -    DECLARATION OF J. DAVID BENNETT IN SUPPORT OF DEFENDANTS' MOTION FOR PROTECTIVE ORDER

*560085.doc 08881-003*

3.     The primary focus of my practice is in real property and condominium law.

4.     At the suggestion of my partner, Thane Tienson, I provided advice to the Port of Astoria and its Commissioners related to the so-called "Master Lease" and "Sublease" which are the subject of this litigation.

5.     I am the author of the May 18, 2009 letter which was an attorney-client privileged communication that was somehow leaked to Astoria radio station KAST. A copy of the May 18, 2009 letter is attached to this Declaration as Exhibit "A".

6.     I have no knowledge of how the leak occurred, and it was very upsetting to me, both personally and professionally.

7.     I supplemented the advice that I provided to the defendants in an Executive Session that I attended, together with two other attorneys retained by the Port, Tim Ramis and Andy Jordan, both partners in the Jordan, Schrader law firm. Mr. Jordan participated by telephone. Mr. Tienson was on vacation out-of-the-country at the time.

8.     In that Executive Session, I impressed upon the Port Commissioners that it was my strong advice that the Port should not decline to renew the Master Lease because of the risk of adversely affecting the renewal rights of the Sublessee, which had been assigned to Oregon LNG.

9.     I understood that there was concern by several of the Commissioners about the consequences of immediately voting to exercise the first 30-year renewal option for the Master Lease. Specifically, there was concern that because the Master Lease represented an independent obligation of the Port of Astoria to DSL, a subsequent default by the Sublessee would impose a significant financial obligation on the part of the Port because of the "pass through" lease payment arrangement that the Master Lease and Sublease collectively established to satisfy the lease payment obligation of both the Master Lease and Sublease.

10.     The Port Commissioners were concerned that because of the unexpected delays that had been encountered in obtaining approvals to operate an LNG import facility on the Leased

*560085.doc 08881-003*

Property, that the exercise of the first 30-year renewal option, followed by a failure to secure necessary approvals for operation of the LNG import facility, could result in a default with no practical ability to obtain indemnity from the plaintiff LLC after the expiration of the guarantee by its parent corporation for payment of the lease payments in November 2009.

11.     The Port Commissioners were also concerned about the pending criminal investigation conducted by the Oregon Department of Justice of the circumstances surrounding the entry into the Master Lease and Sublease by former Port Executive Director Peter Guerin.

12.     Given their concerns, I suggested that an effort be made to persuade DSL to extend the initial Lease Period by two years, which could be followed then by a 28 or 30-year renewal option.  The additional two years would allow Oregon LNG the additional time that I understood to be necessary in order to determine whether it could secure the necessary permits to operate the LNG import facility, provide time needed to conclude the pending criminal investigation, and provide time for the Port to assure itself that it would have a solvent Subtenant to pay the lease payments that were equal to the lease payments that the Port would be required to make under the terms of the Master Lease.

13.     At the time, it was uncertain whether DSL would agree to such an extension. Following Mr. Tienson's return from his vacation out-of-the-country, he and I conferred.  I explained my advice to the Port, and he concurred.  Later, he informed me that the Department of State Lands had agreed to amend the Master Lease to provide for a two-year extension of the initial five-year Lease Period which I believed would serve to eliminate any risk to the Sublessee, Oregon LNG.

//////

//////

//////

//////

//////

Page 3 -   DECLARATION OF J. DAVID BENNETT IN SUPPORT OF DEFENDANTS'
           MOTION FOR PROTECTIVE ORDER
                                                                    *560085.doc 08881-003*

14.    I make this Declaration without any intent to waive any attorney-client privilege but to address any contention that there was no "objectively reasonable basis for a claim, defense or ground for appeal," the basis for the plaintiff's claim for attorney fees pursuant to ORS 20.105.

DATED this 19th day of January, 2010.

/s/ J. David Bennett
J. David Bennett



J. DAVID BENNETT, P.C.
*dbennett@landye-bennett.com*
Admitted in Oregon and Washington

May 19, 2009

**VIA EMAIL (*admin@portofastoria.com*)**
**AND FIRST CLASS MAIL**

Mr. Jack Crider
Executive Director
Port of Astoria
422 Gateway Ave., Ste. 100
Astoria, OR 97103

Re:     *Port of Astoria*

Dear Jack:

On behalf of the Port Commissioners, you have asked us to briefly describe the risk to which the Port would be exposed if it failed to exercise its option to renew the lease between the Port and the Oregon Department of State Lands ("DSL") in respect to the Skipanon Peninsula ("DSL Lease"). That lease was for a period of five years with two options of 30 years each. The option for the first 30-year option was to be exercised at least 180 days before the expiration of the initial five year term, which I believe was May 12, 2009. You have asked for, and DSL has granted a short extension for the Port Commissioners to discuss further what decision the Port will make.

Coterminous with the DSL Lease the Port entered into a sublease of the entire leasehold to a subtenant, which is now Oregon Liquefied Natural Gas LLC ("OLNG") on parallel terms to the DSL Lease and for identical rent ("OLNG Sublease"). There is no override rent from the rent the Port owes to DSL and the rent OLNG owes to the Port. Making a profit on the sublease to OLNG's predecessor apparently was not the motivation for the Port to enter into the OLNG Sublease; rather the motivation seemed to have been providing an opportunity for economic development and jobs.

OLNG plans to develop a liquefied natural gas terminal on the leasehold, and is in the process of applying for permits to do so and determining the economic feasibility of such a development, if it is permitted. Clearly OLNG, and its predecessors, have spent a great deal of money on its efforts to develop the Skipanon Peninsula leasehold site. We understand the OLNG has exercised its option for the first 30-year renewal period.

If the Port does not exercise its option with DSL, then the Port does not have a leasehold it can sublease to OLNG, and OLNG would have no right to occupy the leasehold property and continue with its quest to develop its planned facility. OLNG could always negotiate with DSL for a direct lease, but the political environment may not be conducive to such negotiations, and


Oregon: 1300 Southwest Fifth Avenue, Suite 3500 • Portland, Oregon 97201 • Tel: 503.224-4100 • Fax: 503.224-4133
Alaska:  701 West Eighth Avenue, Suite 1200 • Anchorage, Alaska 99501 • Tel: 907.276-5152 • Fax: 907.276-8433
             1981 East Palmer-Wasilla Highway, Suite 220 • Wasilla, Alaska 99654 • Tel: 907.376-5955 • Fax: 907.376-5979

*490985.doc*



EXHIBIT
PAGE ___ OF ___



LANDYE BENNETT
BLUMSTEIN LLP
A T T O R N E Y S

Port of Astoria
May 19, 2009
Page 2

even if it were, there is no guarantee that OLNG could get as favorable terms under a new lease as it has with the OLNG Sublease. It is likely that OLNG would be successful in a suit against the Port if the Port prevents OLNG from obtaining a new 30-term. The damages OLNG would suffer would be subject to proof, but its initial thrust would be its out of pocket expenses (which could be in the millions of dollars) and loss of profits (which would be more difficult to show, since it is not currently permitted and the economic feasibility is not known).

There is, of course, a risk that OLNG will default on the OLNG Sublease, leaving the Port to hold the bag on the DSL Lease. However, it would seem far better to be exposed to paying the lease to the DSL, with its obligation to mitigate the damages by trying to re-let to another party and/or for the Port to find another tenant. It will also probably be easier both from a business standpoint and politically to deal with DSL on damages issue than to deal with a private party.

It is our strong recommendation that the Port exercise its option with DSL and extend the OLNG sublease. This does not preclude the continued discussion with DSL concerning the Port's claim that it hold partially or total title to the Skipanon Peninsula, and the notice exercising the option could make that point.

Please let us know if you would like to discuss this matter further.

Sincerely,

J. David Bennett, P.C.

/jgz

08881-001



490985.doc
EXHIBIT A
PAGE 2 OF 2