FILED'10 FEB 03 15:16 USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| LNG DEVELOPMENT COMPANY, LLC, dba OREGON LNG, | ) ) ) | Civil No. 09-847-JE |
| Plaintiff, | ) ) ) | FINDINGS AND RECOMMENDATION |
| v. | ) ) | |
| PORT OF ASTORIA, an Oregon Port; DAN HESS, an individual; LARRY PFUND, an individual; WILLIAM HUNSINGER, an individual; JACK BLAND, an individual; and FLOYD HOLCOM, an individual, | ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

Gregory A. Chaimov
William D. Miner III
Davis Wright Tremaine LLP
1300 S.W. 5th Avenue, Suite 2300
Portland, OR 97201

FINDINGS AND RECOMMENDATION - 1

Kelly P. Corr
Meredith Moroney
William H. Walsh
Corr Cronin Michelson Baumgardner & Preece LLP
1001 Fourth Avenue, Suite 3900
Seattle , WA 98154-1051

       Attorneys for Plaintiff


Thane W. Tienson
Jennifer L. Gates
Landye Bennett Blumstein, LLP
1300 S.W. 5th Avenue, Suite 3500
Portland, OR 97201

       Attorneys for Defendant

JELDERKS, Magistrate Judge:

Plaintiff LNG Development Company, LLC (LLG), brings this action against defendants Port of Astoria (the Port) and Port Commissioners Dan Hess, Larry Pfund, William Hunsinger, Jack Bland, and Floyd Holcom (the Commissioners).  Plaintiff moves for a preliminary mandatory injunction requiring defendants to immediately take the steps necessary to renew a Master Lease between the Port and the Oregon Department of State Lands (DSL) for the land that is the subject of this action, and to make this land available to plaintiff LNG for its use.

The motion should be granted in a manner that reflects the Honorable Michael Mosman's Opinion and Order dated January 28, 2010 (# 125), which is discussed below.

FINDINGS AND RECOMMENDATION - 2

### Factual Background[1]

Plaintiff LNG seeks to site a facility for importing liquified natural gas on the land that is subject to certain leases giving rise to this action.

Defendant the Port is located in Astoria, Oregon. It is governed by a Board of Commissioners comprised of the individual defendants.

This action arises from the lease and sublease of approximately 94 acres of land (the premises) owned by the State of Oregon in Clatsop County, Oregon. On November 1, 2004, the State of Oregon, acting through the DSL, leased the premises to the Port in a document entitled "Upland Lease Agreement." That agreement will be referred to as the "Master Lease" in this Findings and Recommendation. Article 3.1 of the Master Lease provides for an initial lease period of five years, and Article 3.2 provides the Port with options to extend the Lease for two additional thirty-year terms, if it is a tenant in good standing and "is not in material default of the lease" at the time of the renewal. Article 12.2 of the Master Lease provides that, with the State of Oregon's written consent, the Port may sublease, and extend or renew the sublease, of the premises.

On November 5, 2004, the Port subleased the premises to Skipanon Natural Gas, LLC (Skipanon), a subsidiary of Calpine Corporation (Calpine), through an agreement captioned "Sublease Agreement." Acting through the DSL, the State of Oregon approved the sublease.

---

[1]The factual background to this action is set out more fully in a Findings and Recommendation concerning plaintiff's motion for partial summary judgment. See LNG Development Company, LLC v. Port of Astoria, CV No. 09-847-JE, slip op (D. Or. November 17, 2009).

The Sublease Agreement includes terms very similar to the terms of the Master Lease Agreement. As with the Master Lease, Article 3.1 of the Sublease provides for an initial term of five years, and Article 3.2 provides that, as long as it is in good standing and not in material default under the Sublease, a sublessee "shall have additional options to extend the sublease for **two (2)** additional terms of **thirty (30)** years each . . . ." [Emphasis in original.] The Master Lease and the Sublease Agreement specify identical rental rates and set out identical terms providing for periodic redetermination of the annual rent payable by the Port and the sublessee. The Sublease Agreement requires the sublessee to give the Port written notice, at least 180 days before the expiration of the current sublease period, if it is exercising its option to extend the sublease period.

Calpine and Skipanon filed for bankruptcy protection in New York in 2006, and the Sublease was assigned to plaintiff LNG in bankruptcy proceedings on December 29, 2006. On that day, Leucadia National Corporation, which owns 80.1% of LNG, entered into an agreement with the Port guaranteeing timely payment of taxes and rent due on the premises under the terms of the Sublease Agreement through November 4, 2009, and the Port withdrew its objection to assignment of the Sublease.

On April 24, 2009, plaintiff LNG gave the Port timely notice that it was exercising its option to extend the sublease for an additional thirty-year term. The Port did not, in turn, exercise its option to extend the Master Lease with the State of Oregon for an additional thirty-year term, and the original term of that lease expired on October 31, 2009. Instead, on August 18, 2009, the defendant Commissioners voted to extend the first term of the Master Lease for a two-year period, until October 31, 2011. On August 24, 2009, the Port and the

FINDINGS AND RECOMMENDATION - 4

DSL executed an amendment of the Master Lease extending the initial term of that lease until October 31, 2011. The Master Lease Amendment explicitly preserved the Port's option to renew the Master Lease for two additional thirty-year periods.

Defendants assert that the initial lease period is now for a seven-year rather than a five-year period, and contend that the Port is not required to exercise its option to renew the Master lease for a thirty-year period at this time. Plaintiff contends that the agreement between the State and the Port to extend the Master Lease for a two-year period does not alter the Port's obligation to renew its Master Lease with the DSL for an additional thirty-year period, following plaintiff's exercise of its option to extend the Sublease Agreement for that period.

## Procedural Background

The present motion for a preliminary injunction follows three dispositive motions filed earlier in this action. Defendants have brought two motions to dismiss, both of which I have recommended denying. The first of these recommendations has been adopted, and the second recommendation is pending.

Plaintiff LNG previously moved for a partial summary judgment establishing that it has renewed its Sublease Agreement with the Port, and that the Port has breached its obligation to LNG by failing to renew its Master Lease with DSL. In a Findings and Recommendation filed on November 17, 2009, I characterized the motion as seeking "a partial summary judgment establishing that plaintiff has renewed its sublease and that the

FINDINGS AND RECOMMENDATION - 5

Port has breached its obligation to LNG by failing to take steps to renew the Master Lease,"
and recommended that the motion be granted.

In an Opinion and Order adopting the Findings and Recommendation signed on
January 28, 2010, Judge Mosman noted that, while the requirement that the Port "take the
steps necessary" to exercise its own option to extend the Master Lease was "the most
practical interpretation" of the defendants' obligation "there could be alternative options, at
least in theory." LNG Development Company, LLC v. Port of Astoria, CV # 09-847-JE,
slip op at 3 (D. Or. January 28, 2010). Judge Mosman added that, though it was up to the
defendants to choose how "to provide the additional thirty-year term," the "end result . . . is
the same–defendants must provide LNG with the properly renewed option to extend the
Sublease for thirty years in order to comply with the terms of the contract."


### Standards for Evaluating Motions for Preliminary Injunctive Relief

In Winter v. Natural Resources Defense Council, Inc., 129 S. Ct. 365 (2008), the
United States Supreme Court clarified the standards for evaluating motions for preliminary
injunctive relief.

> Under Winter, plaintiffs seeking a preliminary injunction must establish that
> (1) they are likely to succeed on the merits; (2) they are likely to suffer
> irreparable harm in the absence of preliminary relief; (3) the balance of
> equities tips in their favor; and (4) a preliminary injunction is in the public
> interest.

Sierra Forest Legacy v. Rey, 577 F.3d 1015, 1021 (9th Cir. 2009) (citing Winter, 129 S. Ct. at
374).

A preliminary injunction is an extraordinary remedy, and courts are required to "pay particular regard for the public consequences" of granting this relief. Winter, 129 S. Ct. at 376.

## Discussion

As noted above, the pending motion asks the court to require defendants to immediately take the steps necessary to renew the Master Lease between the Port and the DSL, and to make the premises subject to that lease "available to Oregon LNG for its use." This motion seeks the relief requested in the fifth claim in the complaint, which alleges that LNG is entitled to injunctive relief requiring the individual defendants "to vote for the Port to exercise its option to renew the Master Lease with DSL."

A. Likelihood of Success on the Merits

Though Judge Mosman's recent adoption of my Findings and Recommendation concerning plaintiff's motion for partial summary judgment makes it unnecessary to do so, I will briefly reiterate the cental questions in this action. These questions are whether plaintiff LNG has effectively renewed its sublease of the premises for a thirty-year period, and whether the Port is required to take steps to make the premises available to LNG for that period. My reasons for concluding that plaintiff has renewed its sublease, and that the Port has breached its obligation to take steps to renew the Master Lease, are fully set out in a Findings and Recommendation filed on November 17, 2009, and those reasons need not be restated in detail here. It is sufficient here to note two primary factors which establish the

FINDINGS AND RECOMMENDATION - 7

correctness of plaintiff LNG's legal position in this litigation: 1) the record supports only the conclusion that plaintiff LNG was in compliance with the terms of the sublease when it gave timely notice of its intention to renew for a thirty-year period; and 2) the Master Lease and the Sublease Agreement are intended to function in tandem, and can logically co-exist only if the sublessee's renewal of a sublease for a thirty-year period triggers the Port's absolute obligation to take the steps necessary to make the property available for sublease for that period. As to the later of these factors, I have noted that "any other conclusion would be legally and practically untenable." LNG Development Company, LLC v. Port of Astoria, CV No. 09-847-JE, slip op at 11 (D. Or. November 17, 2009).

In his Opinion adopting my Findings and Recommendation, Judge Mosman concluded that, though they might choose to provide plaintiff LNG an additional thirty-year sublease in a variety of ways, "defendants must provide LNG with the properly renewed option to extend the Sublease for thirty years in order to comply with the terms of the contract." LNG Development Company, LLC v. Port of Astoria, CV # 09-847-JE, slip op at 3 (D. Or. January 28, 2010).

With Judge Mosman's adoption of my Findings and Recommendation concerning the motion for partial summary judgment, plaintiff's likelihood of success on the merits is virtually assured. At the District Court level, plaintiff will prevail unless my recommendation that the second motion to dismiss be denied is not adopted. That result is unlikely.

FINDINGS AND RECOMMENDATION - 8

B. <u>Whether Plaintiff Will Likely Suffer Irreparable Harm If Injunctive Relief Is Not Granted</u>

In my second Findings and Recommendation, I noted that the Port "cannot seriously

contend" that a two-year extension of the lease is "of equivalent value to the thirty-year

extension provided for in that agreement." <u>LNG Development Company, LLC v. Port of</u>

<u>Astoria</u>, CV No. 09-847-JE, slip op at 18 (D. Or., Nov. 17, 2009). I also noted that, if

plaintiff's renewal of the Sublease did not require the Port to take steps to renew the Master

Lease for the same period, plaintiff's option to renew "could be worthless, or worse than

worthless if LNG invested substantial sums in constructing a facility only to have its renewal

denied." <u>Id.</u> at 10.

In my third Findings and Recommendation, I found that

> The right to a thirty-year sublease extension is a bargained-for contractual
> term of obvious benefit to any entity seeking to construct and operate a facility
> that defendants acknowledge will cost hundreds of millions of dollars, and the
> importance of securing control of the premises for a long period of time is of
> obvious value to a business that seeks financing for such an investment.
> Plaintiff's assertion that it cannot obtain the "financing, permits, and long-term
> contracts that a project of this type requires" in the absence of long-term site
> control is only reasonable, and is supported by material submitted earlier in
> this action, including the declaration of Peter Hansen, plaintiff's CEO.

<u>LNG Development Company, LLC v. Port of Astoria</u>, CV No. 09-847-JE, slip op at 8

(D. Or., Dec. 28, 2009).

Mr. Hansen's declaration, including his assertions that plaintiff LNG has already

invested $23-25 million dollars in the project, and that delay is causing LNG to lose "critical

competitive advantages" over other competitors, is uncontroverted. Also uncontroverted is

plaintiff LNG's assertion that the Port might not be capable of fully compensating it for the

losses that could result from further delay in securing long-term control of the premises.

FINDINGS AND RECOMMENDATION - 9

Plaintiff LNG has established that it will likely suffer irreparable harm if the injunctive relief that it seeks is not granted.

C. Balance of Equities/Hardships

As the Winter Court noted, in considering whether injunctive relief is appropriate, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Winter, 129 S. Ct. at 376 (quoting Amoco Production Company v. Village of Gambell, Alaska, 480 U.S. 531, 542 (1987)).

My conclusion that plaintiff LNG will likely suffer irreparable financial harm if a preliminary injunction is not issued is set out above. Against this likely harm, I must balance any harm that the Port might suffer if it is required to take the steps needed to make the premises available to plaintiff LNG for a renewed thirty-year sublease.

Defendants assert that, if the relief LNG seeks is granted and LNG is not able to secure the necessary permits to construct a liquified natural gas facility, the Port may be saddled with "a thirty-year Master Lease payment lease obligation with no solvent tenant." Defendants' mem. in opposition to motion for injunction at 9. They further argue that "respecting the amendment of the Master Lease protects the integrity of the public contracting system and the intent of the contracting parties. . . ." Id. at 10. Citing a recently-concluded investigation by the Oregon Department of Justice, defendants also contend that "giving force and effect to the two-year amendment serves to protect the public's interest in insuring that

FINDINGS AND RECOMMENDATION - 10

such public contracts . . . were entered into legally, transparently and non-fraudulently . . . ."
Id.

These arguments fail for several reasons. The risk that a tenant will not perform is inherent in every lease agreement, and was a risk that the Port assumed when it negotiated the Master Lease and Sublease agreements. The Port's argument concerning LNG's possible default assumes that LNG will not be able to obtain permits for the project, and that LNG will become insolvent as a result. The risk of these failures is speculative, and is a risk against which the Port could have protected itself by negotiating different terms in the lease agreements or by seeking an ongoing guarantee from LNG's parent company when LNG assumed the sublease. That it did not take these steps does not provide an equitable basis for excusing its performance now. In addition, damages for which the Port might be liable if it fails to make the premises available for a thirty-year period could far exceed the $38,500 in annual rent the Port would need to provide if LNG became insolvent. In this regard, the Port could risk a substantially greater financial hardship if this court denied LNG's request for injunctive relief.

Denying the injunctive relief sought here by "respecting the amendment" extending the Master Lease for a two-year period would not protect the integrity of the public contracting system or respect the intent of the contracting parties. The integrity of the public contracting system would be better protected by requiring the Port to take the steps necessary to make the premises available to plaintiff LNG for a thirty-year period, because that would reflect the intent of the parties to the Master Lease and Sublease agreements. The Master Lease Amendment explicitly preserved the Port's option to renew the Master Lease for two

FINDINGS AND RECOMMENDATION - 11

additional thirty-year periods, and the underlying lease and sublease are clearly intended to allow the sublessee the option to renew the sublease for two thirty-year periods.

Defendants' contention that the State DOJ's investigation of the former Port Executive Director favors denial of the request for injunctive relief has been effectively addressed in my Findings and Recommendation concerning plaintiff's earlier motion for partial summary judgment. As I noted in that recommendation, there is no evidence that impropriety by the former Port Executive Director affected the Port's negotiation of the leases in question or that the execution of the leases was in any way affected by deceit or fraud, and "the DOJ's investigation provides no basis for the Port to avoid its clear contractual obligations." LNG Development Company, LLC v. Port of Astoria, CV No. 09-847-JE, slip op at 20 (D. Or., Nov. 17, 2009).

The balance of hardships here clearly favors the granting of plaintiff LNG's request for injunctive relief. Granting the relief sought could lessen the significant harm to which plaintiff LNG is now exposed. Granting this relief could also reduce the hardship to which the Port is exposed, because taking steps to make the premises available now for the renewed thirty-year period could reduce the damages, if any, for which the Port is potentially liable.


D. Public Interest

Plaintiff LNG contends that preliminary injunctive relief is in the public interest because of the economic impact of the construction of a liquified natural gas facility, because the Port may be subject to increased liability if its breach of contract is not readily cured, and because failure to redress the Port's breach of contract "undermines the public confidence in

FINDINGS AND RECOMMENDATION - 12

certainty of contract with public entities such as the Port." Plaintiff's reply in support of motion for injunction at 14-15.

The record before the court does support the conclusion that construction of the facility would have substantial economic benefits, including providing jobs and producing millions of dollars in property tax revenue for the City of Warrenton and Clatsop County. However, in evaluating the pending motion for injunctive relief, I do not reach the question of the potential economic impact of construction of a liquified natural gas facility on the leased premises. Consideration of this issue would require the court to speculate as to the likelihood that the project will actually be constructed. Any analysis of the potential economic effects of the project would also require the court to consider any potential negative economic impacts, and the record as to this issue has not been developed.

Though I do not reach the question of the potential economic effects of plaintiff LNG's proposed project, I am satisfied that the public interest favors the granting of injunctive relief. As Judge Mosman noted in his recent Opinion and Order adopting my recommendation that plaintiff LNG's motion for partial summary judgment be granted, "defendants are obligated to provide LNG with the thirty-year extension under the Sublease." LNG Development Company, LLC v. Port of Astoria, CV # 09-847-JE, slip op at 2 (D. Or. January 28, 2010). Defendants present failure to meet that obligation is contrary to the public interest in at least two important ways. This failure subjects the Port, a public entity, to potential liability for substantial damages that plaintiff LNG might incur because the premises are not available for the additional thirty-year renewal period provided for in the sublease. This failure also undermines the confidence of the public and business in the certainty of contracts concluded by public entities such as the Port. The public has an interest in knowing that public entities

FINDINGS AND RECOMMENDATION - 13

are bound by the contracts they conclude, and the public has an interest in businesses having confidence that they can rely on their contractual agreements with public entities. In the absence of such mutual confidence, the public cannot trust in the finality of agreements concluded with public entities, and businesses might rightly be hesitant to conclude agreements with, or require more favorable terms from, public entities.

## Conclusion

Plaintiff LNG's motion for preliminary injunctive relief (# 101) should be GRANTED. To be consistent with Judge Mosman's Opinion and Order dated January 28, 2010, that injunctive relief should require defendants to immediately take the steps necessary "to provide the additional thirty-year term" specified in the Sublease, and to make the land subject to that sublease available to plaintiff LNG for its use.

## Scheduling Order

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due February 22, 2010. If no objections are filed, the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 3rd day of February, 2010.

John Jelderks
U.S. Magistrate Judge

FINDINGS AND RECOMMENDATION - 14